**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**BALTIMORE DIVISION**

| | |
|---|---|
| IN RE CTP INNOVATIONS, LLC PATENT LITIGATION ACTIONS | Case No. 14-md-02581-MJG (Lead Action) |
| CTP INNOVATIONS, LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>AMERICAN PRINTING COMPANY, INC.,<br><br>　　　　Defendant. | Case No. 14-cv-03890-MJG |
| CTP INNOVATIONS, LLC,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>ARANDELL CORPORATION,<br><br>　　　　Defendant. | Case No. 15-cv-01693-MJG |
| CTP INNOVATIONS, LLC,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>CENVEO CORPORATION,<br><br>　　　　Defendant. | Case No. 15-cv-03124-MJG |

CTP INNOVATIONS, LLC,

       Plaintiff,

v.

COMMAND WEB OFFSET COMPANY, INC.

       Defendant.

Case No. 15-cv-01470-MJG

---

CTP INNOVATIONS, LLC,

       Plaintiff,

v.

DIRECTMAIL.COM,

       Defendant.

Case No. 15-cv-01975-MJG

---

CTP INNOVATIONS, LLC,

       Plaintiff,

v.

EBSCO INDUSTRIES, INC.,

       Defendant.

Case No. 14-cv-03884-MJG

---

CTP INNOVATIONS, LLC,

       Plaintiff,

v.

ENNIS, INC.,

       Defendant.

Case No. 15-cv-02391-MJG

CTP INNOVATIONS, LLC,

        Plaintiff,

v.

F.C.L. GRAPHICS, INC.,

        Defendant.

Case No. 15-cv-01550-MJG

---

CTP INNOVATIONS, LLC,

        Plaintiff,

v.

GEO GRAPHICS, INC.,

        Defendant.

Case No. 14-cv-03888-MJG

---

CTP INNOVATIONS, LLC,

        Plaintiff,

v.

INDEXX, INC.,

        Defendant.

Case No. 14-cv-03889-MJG

---

CTP INNOVATIONS, LLC,

        Plaintiff,

v.

JET PRINTING, LLC,

        Defendant.

Case No. 14-cv-03893-MJG

| | |
|---|---|
| CTP INNOVATIONS, LLC, | Case No. 15-cv-03123-MJG |
|        Plaintiff, | |
| v. | |
| JOURNAL GRAPHICS, INC., | |
|        Defendant. | |
| CTP INNOVATIONS, LLC, | Case No. 15-cv-02016-MJG |
|        Plaintiff, | |
| v. | |
| MIDLAND INFORMATION RESOURCES, | |
|        Defendant. | |
| CTP INNOVATIONS, LLC, | Case No. 15-cv-01469-MJG |
|        Plaintiff, | |
| v. | |
| PUBLICATION PRINTERS CORPORATION, | |
|        Defendant. | |
| CTP INNOVATIONS, LLC, | Case No. 15-cv-01471-MJG |
|        Plaintiff, | |
| v. | |
| SANDY ALEXANDER, INC., | |
|        Defendant. | |

CTP INNOVATIONS, LLC,

        Plaintiff,

v.

SCHUMANN PRINTERS, INC.,

        Defendant.

Case No. 15-cv-01813-MJG

---

CTP INNOVATIONS, LLC,

        Plaintiff,

v.

SPECIALTY PROMOTIONS, INC.,

        Defendant.

Case No. 15-cv-01692-MJG

---

TAYLOR PUBLISHING COMPANY,

        Plaintiff,

v.

CTP INNOVATIONS, LLC,

        Defendant.

Case No. 14-cv-03894-MJG

---

CTP INNOVATIONS, LLC,

        Plaintiff,

v.

TIMES PRINTING CO., INC.,

        Defendant.

Case No. 15-cv-02052-MJG

CTP INNOVATIONS, LLC,                                  Case No. 15-cv-02389-MJG

       Plaintiff,

v.

TREND OFFSET PRINTING SERVICES, INC.,

       Defendant.

---

CTP INNOVATIONS, LLC,                                  Case No. 15-cv-01807-MJG

       Plaintiff,

v.

VALASSIS COMMUNICATIONS, INC.,

       Defendant.

---

CTP INNOVATIONS, LLC,                                  Case No. 15-cv-02682-MJG

       Plaintiff,

v.

VERSA PRESS, INC.,

       Defendant.

---

CTP INNOVATIONS, LLC,                                  Case No. 14-cv-03887-MJG

       Plaintiff,

v.

WALTON PRESS INC.,

       Defendant.

CTP INNOVATIONS, LLC,

        Plaintiff,

v.

WORLDWIDE TICKETS AND LABELS, INC.,

        Defendant.

Case No. 14-cv-03886-MJG

CTP INNOVATIONS, LLC,

        Plaintiff,

v.

WORZALLA PUBLISHING COMPANY,

        Defendant.

Case No. 15-cv-01646-MJG

**DEFENDANTS' CONSOLIDATED MEMORANDUM IN SUPPORT OF THEIR RULE 12(b)(1) MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION DUE TO PLAINTIFF'S LACK OF STANDING**

## TABLE OF CONTENTS

I.    INTRODUCTION ...........................................................................................1

II.   BACKGROUND ...........................................................................................1

III.  ARGUMENT ................................................................................................3

      A.    Legal Analysis ...............................................................................3

      B.    The Complaints Must Be Dismissed Because CTP Lacked Title
            to the Asserted Patents at the Time the Complaints Were Filed..........................5

            1.    Title to the '155 and '349 Patents Has Never Passed to
                  CTP ...................................................................................5

            2.    The *Nunc Pro Tunc* Provision in Assignment #4 Does
                  Not Retroactively Confer Standing on CTP ............................8

            3.    CTP's Lack of Standing Cannot Be Cured by an
                  Assignment of the Asserted Patents Subsequent to
                  Initiation of the Lawsuits ............................................9

      C.    CTP Cannot Cure Its Lack of Standing by Filing Amended
            Complaints or Joining a Party with Standing .......................................10

      D.    Defendants Will Be Substantially Prejudiced If CTP's
            Complaints and Amended Complaints Are Not Dismissed...............................11

IV.   CONCLUSION..............................................................................................13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abraxis Bioscience, Inc. v. Navinta LLC,*
    625 F.3d 1359 (Fed. Cir. 2010)................................................................ *passim*

*Alps South, LLC v. Ohio Willow Wood Co.,*
    787 F.3d 1379 (Fed. Cir. 2015)....................................................................4, 6

*Dole Food Co. v. Patrickson,*
    538 U.S. 468 (2003)........................................................................................7

*Enzo APA & Son, Inc. v. Geapag A.G.,*
    134 F.3d 1090 (Fed. Cir. 1998).................................................................8, 12

*Gaia Techs., Inc. v. Reconversion Techs., Inc.,*
    93 F.3d 774 (Fed. Cir. 1996)........................................................................10

*Glynne v. Wilmed Heathcare,*
    699 F.3d 380 (4th Cir. 2012) .........................................................................9

*Keene Corp. v. United States,*
    508 U.S. 200 (1993)........................................................................................4

*Lans v. Digital Equip. Corp.,*
    252 F.3d 1320 (Fed. Cir. 2001)......................................................................4

*Mentor HIS, Inc. v. Med. Device Alliance, Inc.,*
    240 F.3d 1016 (Fed. Cir. 2001)......................................................................4

*Paradise Creations, Inc. v. UV Sales, Inc.,*
    315 F.3d 1304 (Fed. Cir. 2003)..................................................................4, 10

*Quantum Corp. v. Riverbed Tech., Inc.,*
    2008 U.S. Dist. LEXIS 11348 (N.D. Cal. Feb. 4, 2008) ..............................4

*RAD Data Commc'ns, Inc. v. Patton Elecs. Co.,*
    882 F. Supp. 351 (S.D.N.Y. 1995).................................................................5

*Schreiber Foods, Inc. v. Beatrice Cheese, Inc.,*
    402 F.3d 1198 (Fed. Cir. 2005)..............................................................4, 10, 11

*Tasini v. New York Times Co., Inc.,*
    184 F. Supp. 2d 350 (S.D.N.Y. 2002).............................................................3

*Toxgon Corp. v. BNFL, Inc.*,
    312 F.3d 1379 (Fed. Cir. 2002)................................................................................3

*U.S. v. Hays*,
    515 U.S. 737 ...................................................................................................................5

**Rules and Statutes**

Federal Rule of Civil Procedure 12(b)(1) ......................................................................3

Rule 12(b)(l)....................................................................................................................3

Defendants identified below[1] collectively submit this Memorandum in Support of Defendants' Consolidated Rule 12(b)(1) Motion to Dismiss on the grounds that Plaintiff CTP Innovations, LLC ("CTP") lacks constitutional standing to sue for patent infringement of U.S. Patent Nos. 6,738,155 ("the '155 patent") and 6,611,349 ("the '349 patent") (collectively, "Asserted Patents").

## I.     INTRODUCTION

CTP did not (and still does not) have legal title or the necessary "substantial rights" in either the '155 patent or the '349 patent to confer standing, which is required *at the time these multi-district actions were filed*.  Therefore, CTP lacked the standing constitutionally required to sue for patent infringement at the time CTP filed its original complaints against Defendants, which ranged from June 14, 2013 to July 13, 2015.  Since May 24, 2013 to this day, the Asserted Patents have been owned by R.R. Donnelley & Sons Company ("R.R. Donnelley")—an interested corporation, but absent party, to these actions [*see, e.g.*, Lead action, ECF No. 88]—and not CTP.  Defendants respectfully request an Order dismissing CTP's Complaints and First Amended Complaints against each Defendant.

## II.     BACKGROUND

The applications for both Asserted Patents were filed on July 30, 1999.  [Lead Action, ECF Nos. 347-1 & 347-2.]  On September 21, 1999, while the applications were still pending at the United States Patent & Trademark Office ("USPTO"), all the inventors for each patent

---

[1]   American Printing Company, Inc., Arandell Corporation, Cenveo Corporation, Command Web Offset Company, Inc., Directmail.com, EBSCO Industries, Ennis, Inc., F.C.L. Graphics, Inc., Geo Graphics, Inc., Indexx, Inc., Jet Printing, LLC, Journal Graphics, Inc., Midland Information Resources, Publication Printers Corporation, Sandy Alexander, Inc., Schumann Printers, Inc., Specialty Promotions, Inc., Taylor Publishing Company, Times Printing Co., Inc., Trend Offset Printing Services, Inc., Valassis Communications, Inc., Versa Press, Inc., Walton Press, Inc., Worldwide Tickets and Labels, Inc., and Worzalla Publishing Company.

executed assignment agreements transferring title and all rights in the patents to Banta

Corporation ("Banta"). [Exs. A & B (Assignments from inventors to Banta).] Subsequently, the

'349 patent issued on August 26, 2003, and the '155 patent issued on May 18, 2004. R.R.

Donnelley acquired Banta in January 2007, which continued to operate, as a subsidiary

corporation, under the umbrella of R.R. Donnelley management. [Ex. C (R.R. Donnelley

acquiring Banta); Ex. D (R.R. Donnelley 2013 Annual Report) at 161.] Although no assignment

was made from Banta to R.R. Donnelley, on February 12, 2013, R.R. Donnelley assigned its

purported title and rights in both patents to Media Innovations, LLC ("Media") and recorded that

assignment with the USPTO. [Ex. E.] As of the date of this assignment, R.R. Donnelley in fact

possessed no rights to assign any interest in the Asserted Patents because Banta remained in sole

possession of all legal title to both patents. On March 5, 2013, Media assigned its purported title

and rights in both patents to CTP and recorded that assignment with the USPTO. [Ex. F.] As of

this date of this assignment, Media similarly possessed no rights to assign any interest in the

Asserted Patents as Banta continued to be in sole possession of all legal title to both patents.

Two months later, on May 24, 2013, Banta assigned title and all of its rights in the

Asserted Patents to R.R. Donnelley. [Ex. G.] Though the assignment was executed on May 24,

2013 and recorded with the USPTO even later on August 2, 2013, the parties included a *nunc

pro tunc* provision to attempt retroactive effect back to January 3, 2013, before the two

assignments were executed from R.R. Donnelley to Media and Media to CTP. [*Id.* at 2.] While

the *nunc pro tunc* provision shows that Banta and R.R. Donnelley were fully aware of the

defective assignments, such band-aids are ineffective to cure defective legal title and

consequently ineffective to confer the required constitutional standing where it does not exist.

2

The assignment history is concisely laid out in the following table [Lead Action, ECF Nos. 347-1 & 347-2]:

| # | Date | Assignor | Assignee |
|---|------|----------|----------|
| 1 | 09/21/1999 | All inventors | Banta Corporation |
| 2 | 02/12/2013 | R.R. Donnelley & Sons Company | Media Innovations, LLC |
| 3 | 03/05/2013 | Media Innovations, LLC | CTP Innovations, LLC |
| 4 | 05/24/2013 | Banta Corporation | R.R. Donnelley & Sons Company |

CTP began filing suits as Plaintiff (or counterclaim-Plaintiff)[2] in these multi-district litigations on June 14, 2013, with its latest original complaint to date filed on July 13, 2015. CTP is the sole Plaintiff (or sole counterclaim-Plaintiff) in all of these litigations. A timeline showing the significant events in the chain of ownership for the patents-in-suit is provided below:



## III.   ARGUMENT

### A.   Legal Analysis

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action on the basis of lack of subject matter jurisdiction. Where, as here, a defendant seeks to dismiss a complaint for lack of subject matter jurisdiction, the plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Toxgon Corp. v. BNFL, Inc.*, 312 F.3d 1379, 1383 (Fed. Cir. 2002). "An objection to standing is properly made on a Rule 12(b)(l)

---

[2]   In Case No. 1:14-cv-3894-MJG, Taylor Publishing Company actually initiated its case on June 13, 2013 by requesting a declaratory judgment of non-infringement. But CTP filed patent infringement counterclaims shortly thereafter.

motion." *Tasini v. New York Times Co., Inc.*, 184 F. Supp. 2d 350, 354-355 (S.D.N.Y. 2002)

(citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1998)).  And the issue of

whether a party "has sufficient rights in a patent to bring suit in its own name is jurisdictional."

*Mentor HIS, Inc. v. Med. Device Alliance, Inc.*, 240 F.3d 1016, 1018 (Fed. Cir. 2001).

If a party lacks title or all substantial rights to a patent, that party has no standing to bring

an infringement action as sole plaintiff.  *Alps South, LLC v. Ohio Willow Wood Co.*, 787 F.3d

1379, 1382-83 (Fed. Cir. 2015); *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1328 (Fed. Cir.

2001).  And "in order to assert standing for patent infringement, the plaintiff must demonstrate

that it held enforceable title to the patent *at the inception of the lawsuit*." *Paradise Creations,

Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003) (emphasis added); *see also Keene

Corp. v. United States*, 508 U.S. 200, 207 (1993) (acknowledging a "longstanding principle that

the jurisdiction of the Court depends upon the state of things at the time of the action brought").

A plaintiff lacking enforceable rights in the patent at the time it filed suit lacks a cognizable

injury necessary to assert standing under Article III of the Constitution.  Such a defect in standing

cannot be cured after the inception of the lawsuit.  *Paradise Creations*, 315 F.3d at 1310.  "[I]f the

original plaintiff lacked Article III initial standing, the suit must be dismissed, and the

jurisdictional defect cannot be cured" after inception of the lawsuit.  *Schreiber Foods, Inc. v.

Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005).  Indeed, as one court aptly noted:

> In light of the proliferation of patent-infringement actions, it is not too much to
> ask sophisticated patent litigants to be careful when it comes to the threshold
> issue of standing... [courts] cannot overlook a defect in the chain of title, for the
> entirety of massive litigation might wind up being vacated years later, for lack of
> threshold standing**.**  *As carpenters say, it is wise to 'measure twice and cut once.'*

*Quantum Corp. v. Riverbed Tech., Inc.*, 2008 U.S. Dist. LEXIS 11348, at *10 (N.D. Cal. Feb. 4,

2008) (citations omitted).

**B.    The Complaints Must Be Dismissed Because CTP Lacked Title to the Asserted Patents at the Time the Complaints Were Filed**

CTP filed its complaints for patent infringement against Defendants between June 14, 2013 and July 13, 2015.  CTP accused each Defendant of infringing either the '349 patent, or the '155 patent, or both Asserted Patents.  However, CTP did not have title to or substantial rights in the Asserted Patents between June 14, 2013 and July 13, 2015 when all of the actions comprising this multi-district litigation began.  In fact, based on the assignment history of the Asserted Patents, CTP never had and still does not have title to or substantial rights in the Asserted Patents.  Consequently, CTP lacks constitutional standing, one of the most important jurisdictional requirements.  *U.S. v. Hays*, 515 U.S. 737, 742 ("The federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines." (alteration in original) (internal quotes omitted)).

**1.    Title to the '155 and '349 Patents Has Never Passed to CTP**

At the time the Asserted Patents issued—between 2003 and 2004—Banta owned "the full and exclusive right, title, and interest" in the Asserted Patents under the terms of Assignment #1. [Exs. A & B (Assignments from inventors to Banta).]  But when R.R. Donnelley "agreed by a Patent Purchase Agreement . . . that [it] shall sell, transfer, assign and set over unto [Media] and [Media] shall accept, all rights, title and interest in and to the Patents" on February 12, 2013 under Assignment #2, R.R. Donnelley had no patents to sell, transfer, assign, or set over.  An agreement attempting to sell, transfer, assign, and set over all rights, title, and interest in the Asserted Patents is ineffective when the assignor does not own the patents.  *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1367 (Fed. Cir. 2010).  In other words, the assignment was a nullity.  *RAD Data Commc'ns, Inc. v. Patton Elecs. Co.*, 882 F. Supp. 351, 353 (S.D.N.Y. 1995)

5

("Since Develcon had nothing to assign, the purported assignment from Develcon to plaintiff of the Develcon patents is a nullity." (citing *FilmTec Corp. v. Allied-Signal, Inc.*, 939 F.2d 1568, 1572 (Fed. Cir. 1991))).  Therefore, R.R. Donnelley transferred no rights or title in the Asserted Patents under Assignment #2 to Media.  And consequently, CTP took no rights or title in the Asserted Patents under Assignment #3.

CTP has never had any rights in the Asserted Patents because Banta continued to own all rights in the Asserted Patents until May 24, 2013, when Assignment #4 was executed.  At that point, Banta agreed to "irrevocably assign, sell, transfer, and set over to" R.R. Donnelley its title, rights, and interest in the Asserted Patents.  [Ex. G.]  Thus, R.R. Donnelley only took ownership of the Asserted Patents on May 24, 2013, which was several months after the purported assignments from R.R. Donnelley to Media (Assignment #2, February 12, 2013) and Media to CTP (Assignment #3, March 5, 2013).  Since R.R. Donnelley never executed a subsequent assignment to CTP (or Media), R.R. Donnelley—and not CTP—has been the true patent owner since May 24, 2013, and was the only entity with legal title and substantial rights in the patents at the time the lawsuits were filed.  Even today, R.R. Donnelley remains the only entity with the requisite rights to bring claims for infringement of the '155 and '349 patents.  CTP has never held such rights and it had no standing to bring these infringement actions.  *Alps*, 787 F.3d at 1382-83.

In a factual scenario remarkably similar to the R.R. Donnelley/CTP assignment history, the Federal Circuit overturned a District Court's finding that the purported assignee did have standing.  *Abraxis*, 625 F.3d at 1368.  In that case, Astra L and AZ-AB—both corporate affiliates of AZ-UK—owned the asserted patents.  *Id.* at 1361.  In a June 2006 IP Assignment Agreement, AZ-UK executed an assignment of the asserted patents to Abraxis, even though Astra L and AZ-

AB still possessed the title to the patents.  *Id.*  Nearly a year later, on March 15, 2007, AZ-UK finally obtained legal title to the asserted patents through executed assignments from Astra L and AZ-AB.  *Id.* at 1362.  That same day, Abraxis initiated an action for patent infringement of the asserted patents.  *Id.* at 1361.  Because the first purported assignment from AZ-UK to Abraxis was ineffectual to assign the asserted patents, "a subsequent written agreement [was] necessary to consummate the assignment" from AZ-UK to Abraxis.  *Id.* at 1365.  "It is clear from the record that AZ–UK did not have legal title when it executed the June 28, 2006 IP Assignment Agreement and it did not obtain legal title to the patents until March 15, 2007."  *Id.*  Because the March 15, 2007 assignments from Astra L and AZ-AB to AZ-UK did not automatically assign the patents to Abraxis, Abraxis had no legal title to the asserted patents and, therefore, no standing to sue at the inception of the lawsuit.  *Id.*

Just as in *Abraxis*, the original patent holder here (Banta) legally assigned the patents to R.R. Donnelley well after R.R. Donnelley purportedly assigned title in the Asserted Patents—which it did not possess—to Media (and subsequently Plaintiff CTP).  The assignment from Banta to R.R. Donnelley does not automatically assign the patents to CTP and, therefore, CTP had no standing to sue at the inception of these lawsuits.  *Id.*

Moreover, CTP cannot assert that R.R. Donnelley acquired title to the Asserted Patents at the time it purchased Banta.  While a subsidiary corporation, Banta remained a separate corporate entity.  "A corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary."  *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003); *see also Abraxis*, 625 F.3d at 1366 ("Common corporate structure does not overcome the requirement that even between a parent and subsidiary, an appropriate written assignment is necessary to transfer legal title from one to the other.").  CTP

7

never had, and remains without, standing to sue Defendants for infringement of the Asserted Patents.

## 2.  The *Nunc Pro Tunc* Provision in Assignment #4 Does Not Retroactively Confer Standing on CTP

The *nunc pro tunc* provision in Assignment #4 is insufficient to retroactively predate Assignments #2 and #3 and confer standing on CTP.  "As has been aptly stated, nunc pro tunc assignments are not sufficient to confer retroactive standing . . . ." *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998); *see also Abraxis*, 625 F.3d at 1365 ("Whether, as the dissent argues, the March 15, 2007 assignments from Astra L and AZ–AB to AZ–UK contained *nunc pro tunc* provisions is irrelevant.").

Banta needed to assign title to the Asserted Patents prior to February 12, 2013 when Assignment #2 was executed.  The *nunc pro tunc* provision in Assignment #4 (executed May 24, 2013) from Banta to R.R. Donnelley appears to be a clear recognition that R.R. Donnelley knew it had futilely assigned away title it did not possess in the Asserted Patents on February 12, 2013.[3]  [Ex. G ("This Assignment of Patents ("*Assignment*") is made and entered *nunc pro tunc* as of <u>January 3, 2013</u> . . . .").]  R.R. Donnelley inserted the *nunc pro tunc* provision, presumably in the erroneous belief that such a provision could retroactively move the May 24, 2013 assignment to January 3, 2013, before Assignments #2 and #3 were executed.  However, this is legally impermissible.  In *Abraxis*, the Federal Circuit noted that *nunc pro tunc* provisions in the assignments from Astra L and AZ-AB to AZ-UK *were irrelevant.  Abraxis*, 625 F.3d at 1365.

---

[3]    If R.R. Donnelley and CTP actually believed CTP owned title to and all substantial rights in the Asserted Patents after Assignment #3, then Assignment #4 is pointless because Banta wouldn't have had any title or rights to assign away to R.R. Donnelley.  CTP would have been the exclusive owner rendering Assignment #4 impuissant window dressing.  The fact that Assignment #4 was executed clearly shows that R.R. Donnelley and CTP realized Assignments #2 and #3 were inoperative.  The *nunc pro tunc* provisions, however, do not cure this fatal mistake.

Indeed, the Federal Circuit's approach to this issue is unsurprising because *nunc pro tunc* provisions only correct mistakes; they do not operate to record events intended to be made but which, in fact, never occurred.  *Glynne v. Wilmed Heathcare*, 699 F.3d 380, 383-84 (4th Cir. 2012) ("The purpose of an order entered nunc pro tunc is to correct mistakes or omissions in the record so that the record properly reflects the events that actually took place.  It may not be used to retroactively record an event that never occurred or have the record reflect a fact that never existed.").

The law did not leave R.R. Donnelley without a way to properly confer standing on CTP.  Subsequent to Assignment #4 and before CTP initiated its first lawsuits on June 14, 2013, R.R. Donnelley could have executed another assignment with CTP (via Media, if it so chose).  Within that window, R.R. Donnelley would have legally owned title to the Asserted Patents and been able to properly assign them to CTP before CTP initiated any lawsuits.  However, that window has closed, and these cases must be dismissed because there is no retroactive way to confer standing on CTP now that these lawsuits have begun.  *Abraxis*, 625 F.3d at 1366 ("Abraxis was required to have legal title to the patents on the day it filed the complaint and that requirement can not be met retroactively.").

### 3.     CTP's Lack of Standing Cannot Be Cured by an Assignment of the Asserted Patents Subsequent to Initiation of the Lawsuits

Even if R.R. Donnelley were to assign title in the Asserted Patents to CTP now, it would not cure this Court's lack of subject matter jurisdiction due to CTP's lack of standing.  The case law is overwhelming that "'if the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured' after the inception of the lawsuit."  *Abraxis*, 625 F.3d at 1364 (quoting *Schreiber Foods*, 402 F.3d at 1203); *see also*

*Paradise Creations*, 315 F.3d at 1309; *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 780 (Fed. Cir. 1996).

In *Abraxis*, AZ-UK executed a subsequent written assignment with Abraxis on November 12, 2007, several months after Abraxis initiated the lawsuit. *Abraxis*, 625 F.3d at 1365-66. That assignment did properly transfer legal title in the asserted patents to Abraxis, since by then AZ-UK had true ownership. But the Court concluded that Abraxis still did not have standing because the transfer occurred after initiation of the lawsuit, despite the presence of another *nunc pro tunc* provision. *Id.* at 1366 ("Even if the November 12, 2007 agreement is considered to be a *nunc pro tunc* assignment, for purposes of standing, Abraxis was required to have legal title to the patents on the day it filed the complaint and that requirement cannot be met retroactively.").

At this point in the multi-district litigation, any assignment made between R.R. Donnelley and CTP would be "a futile attempt by the parties to correct a critical error by a *nunc pro tunc* assignment." *Id.*

**C.    CTP Cannot Cure Its Lack of Standing by Filing Amended Complaints or Joining a Party with Standing**

For similar reasons stated in Part III.B.2, CTP cannot cure its lack of standing by executing an assignment with R.R. Donnelley and filing amended complaints. Constitutional standing is temporally constrained to the time when the original complaints were filed. *Schreiber Foods*, 402 F.3d at 1202 n.3 ("The initial standing of the original plaintiff is assessed at the time of the original complaint, even if the complaint is later amended."). No amended complaint will change the filing date of the original complaints in these cases comprising this multi-district litigation. Therefore, CTP's filing of several amended complaints against Defendants in this multi-district litigation have no effect on the standing analysis. And no future amended complaints will either even if R.R. Donnelley assigns the Asserted Patents to CTP

10

before then. *Abraxis* confirms this conclusion. *Abraxis*, 625 F.3d at 1366 n.3 ("While Abraxis

filed an amended complaint on November 16, 2007, we look to the date of the original

Complaint, March 15, 2007 because 'the jurisdiction of the Court depends on the state of things

at the time of the action brought.'" (quoting *Keene*, 508 U.S. at 207)).

Additionally, CTP cannot join R.R. Donnelley to cure the standing defect. "In the area of

patent infringement, this court has held that if the original plaintiff lacked Article III initial

standing, the suit must be dismissed, and the jurisdictional defect cannot be cured by the addition

of a party with standing nor by the subsequent purchase of an interest in the patent in suit."

*Schreiber Foods*, 402 F.3d at 1203 (citations omitted). Thus, any motion to join R.R. Donnelley

as co-Plaintiff would be moot as to standing.

### D.   Defendants Will Be Substantially Prejudiced If CTP's Complaints and Amended Complaints Are Not Dismissed

R.R. Donnelley is clearly an interested party to this multi-district litigation. [*See, e.g.*,

Case 15-cv-01807-MJG, ECF No. 25.] It was founded in 1864, has several billion dollars in

yearly revenues, and several more in assets, which it would probably like to remain isolated from

this multi-district litigation. [*See, e.g.*, Ex. H (R.R. Donnelley 2015 Annual Report) at 32.] CTP,

and its parent Media, appear to be corporations established for the purpose of holding patents.

[Exs. I & J (showing Media's incorporation date of 11/29/2012 and CTP's incorporation date of

3/1/2013, just 4 days prior to CTP's purported assignment of the Asserted Patents).] However,

due to various incorporations and non-public organizational structuring, Defendants do not know

the full extent of the true patent owner's (i.e. R.R. Donnelley's) involvement in this multi-district

litigation. The only thing Defendants do know is that CTP initiated this multi-district litigation

and CTP alone carries the title of Plaintiff. But because Banta, R.R. Donnelley, Media, and CTP

failed to assign the Asserted Patents in a legally effectual manner to confer standing on CTP,

Defendants were unfairly prejudiced by superficially (and it turns out vainly) defending against CTP when they should be defending against patent owner R.R. Donnelley.

The differences between CTP and R.R. Donnelley as named plaintiff are substantial and real. First, under post-*Octane Fitness* jurisdiction, patent plaintiffs face a real risk of having to pay attorneys fee awards in unsuccessful cases found to have been litigated unreasonably. As CTP appears to be a litigation-created entity, there are obvious questions about whether CTP could ever satisfy a judgment for attorneys fees if one were awarded. R.R. Donnelley, as a multi-billion dollar corporation would of course be able to satisfy such a judgment and would have to conduct its litigation strategy with that risk in mind. Second, as a non-party, R.R. Donnelley can hide behind the more limited discovery devices that apply to third parties and cannot be compelled to appear at trial with live witnesses. Third, R.R. Donnelley faces reputational risk from an unsuccessful lawsuit. In contrast, CTP was apparently created for the purposes of bringing these lawsuits and thus will simply dissolve itself if the litigation is unsuccessful.

Moreover, the Federal Circuit has recognized the fundamental unfairness and chaos that would result from permitting standing to be cured in the middle of the lawsuit:

> As a general matter, parties should possess rights before seeking to have them vindicated in court. Allowing a subsequent assignment to automatically cure a standing defect would unjustifiably expand the number of people who are statutorily authorized to sue. Parties could justify the premature initiation of an action by averring to the court that their standing through assignment is imminent. Permitting non-owners and licensees the right to sue, so long as they eventually obtain the rights they seek to have redressed, would enmesh the judiciary in abstract disputes, risk multiple litigation, and provide incentives for parties to obtain assignment in order to expand their arsenal and the scope of litigation. Inevitably, delay and expense would be the order of the day.

*Enzo*, 134 F.3d at 1093-94 (quoting *Procter & Gamble Co. v. Paragon Trade Brands, Inc.*, 917 F. Supp. 305, 310 (D. Del. 1995)). Because CTP lacked constitutional standing to sue when it

initiated these now consolidated lawsuits against Defendants, which cannot be retroactively cured, CTP's complaints for patent infringement must be dismissed.

## IV.   CONCLUSION

For all the above reasons, Defendants respectfully request that this Court dismiss this multi-district litigation for lack of subject matter jurisdiction and dismiss each of CTP's Complaints and Amended Complaints against each Defendant.

Dated:  March 25, 2016                    Respectfully submitted,

*/s/ Andrew B. Campbell*
Andrew B. Campbell (PHV No. 802757)
WYATT, TARRANT & COMBS, LLP
2525 West End Ave., Suite 1500
Nashville, TN  37203
Telephone:  (615) 244-0020
Facsimile:   (615) 256-1726
acampbell@wyattfirm.com

Stephen C. Hall (PHV No. 802768)
WYATT, TARRANT & COMBS, LLP
500 West Jefferson Street, 26th Floor
Louisville, KY  40202
Telephone:  (502) 562-7355
Facsimile:   (502) 589-0309
schall@wyattfirm.com

*Counsel for American Printing Co., Inc.*

*/s/ Thomas P. Heneghan*

Thomas P. Heneghan (PHV No. 803566)
Maria C. Rivera-Lupu (PHV No. 803565)
WHYTE HIRSCHBOECK DUDEK S.C.
P.O. Box 1379
Madison, WI  53701-1379
Telephone:  (608) 255-4440
Facsimile:  (608) 258-7138
theneghan@whdlaw.com
mrivera@whdlaw.com

*Counsel for Arandell Corporation, Schumann Printers, Inc., and Times Printing Co., Inc.*

*/s/ Gene S. Winter*

Gene S. Winter (MD Bar ID:  804199)
Benjamin C. White (MD Bar ID:  97368)
Jonathan A. Winter (MD Bar ID:  804200)
ST. ONGE STEWARD JOHNSTON &
REENS LLC
986 Bedford Street
Stamford, CT  06905-5619
Telephone:  (203) 324-6155
Facsimile:  (203) 327-1096
gwinter@ssjr.com
bwhite@ssjr.com
jwinter@ssjr.com
litigation@ssjr.com

*Counsel for Cenveo Corporation*

14

/s/ Eric W. Schweibenz
Eric W. Schweibenz (admitted *pro hac vice*)
Scott A. McKeown (admitted *pro hac vice*)
Christopher Ricciuti (admitted *pro hac vice*)
OBLON, McCLELLAND, MAIER &
NEUSTADT, L.L.P.
1940 Duke Street
Alexandria, VA  22314
Telephone:  (703) 413-3000
Facsimile:   (703) 413-2220
eschweibenz@oblon.com
smckeown@oblon.com
cricciuti@oblon.com

*Counsel for Command Web Offset Company,
Inc., Sandy Alexander, Inc., Specialty
Promotions, Inc., and Worzalla Publishing
Company*

/s/ Steven E. Tiller
Steven E. Tiller (Bar No. 11085)
Peter J. Davis (Bar No. 14069)
WHITEFORD, TAYLOR & PRESTON, LLP
7 St. Paul Street, Suite 1300
Baltimore, MD  21202-1626
Telephone:  (410) 347-9425
Facsimile:   (410) 223-4325
stiller@wtplaw.com
pdavis@wtplaw.com

*Counsel for Directmail.com*

*/s/ Robert J. Veal*

Robert J. Veal
VEAL INTELLECTUAL PROPERTY, LLC
11555 Medlock Bridge Road, Suite 100
Johns Creek, GA  30097
Telephone:  (678) 653-4758
Facsimile:   (678) 597-1101
rjveal@veal-ip.com

*Counsel for EBSCO Industries, Inc.*

*/s/ Dan Gus*

Dan Gus (State Bar No. 24007288)
GUS & GILBERT LAW FIRM, A
PROFESSIONAL CORPORATION
209 East Main Street
Waxahachie, TX  75165
Telephone:  (214) 960-4116
Facsimile:   (214) 960-4140
dan@gus-gilbert.com

*Counsel for Ennis, Inc.*

*/s/ Michael J. Curley*

Michael J. Curley (AZ Bar No. 025972)
(*Pro Hac Vice* MDL ID No. 803492)
QUARLES & BRADY LLP
One South Church Avenue, Suite 1700
Tucson, AZ  85701
Telephone:  (520) 770-8700
Facsimile:   (520) 770-2206
michael.curley@quarles.com

*Counsel for F.C.L. Graphics, Inc.*

16

*/s/ Derek S. Neilson*
_____
Derek S. Neilson
MD Bar ID No. 97260 (*pro hac vice*)
ALSTON AND BIRD LLP
2828 North Harwood Street, Suite 1800
Dallas, TX  75201
Telephone:  (214) 922-3400
Facsimile:   (214) 922-3899
derek.neilson@alston.com

Doug Scribner
MD Bar ID No. 802845 (*pro hac vice*)
Emily Chambers
MD Bar ID No. 802810 (*pro hac vice*)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA  30309-3424
Telephone:  (404) 881-7000
Facsimile:   (404) 881-7777
doug.scribner@alston.com
emily.chambers@alston.com

*Counsel for Geo Graphics Inc.*

*/s/ Anthony F. Blum*
_____
Anthony F. Blum (PHV No. 802725)
David B. Jinkins (PHV No. 802805)
Matthew A. Braunel (PHV No. 802727)
THOMPSON COBURN LLP
One US Bank Plaza
St. Louis, MO  63101-1693
Telephone:  (314) 552-6000
Facsimile:   (314) 552-7000
ablum@thompsoncoburn.com
djinkins@thompsoncoburn.com
mbraunel@thompsoncoburn.com

*Counsel for Jet Printing, LLC*

17

*/s/ Elizabeth Tedesco Milesnick*

Elizabeth Tedesco Milesnick
MILLER NASH GRAHAM & DUNN LLP
Fax:   503-224-0155
E-mail: Elizabeth.milesnick@millernash.com
*Counsel for Journal Graphics, Inc.*




*/s/ April A. Price*

April A. Price (Maryland Bar No. 803756)
LANE & WATERMAN LLP
220 North Main Street, Suite 600
Davenport, IA  52801
Telephone:  (563) 324-3246
Facsimile:  (563) 324-1616
aprice@l-wlaw.com

*Counsel for Midland Information Resources
a/k/a Elanders Americas*




*/s/ Robert R. Brunelli*

Robert R. Brunelli (admitted *pro hac vice*)
SHERIDAN ROSS P.C.
1560 Broadway, Suite 1200
Denver, CO  80202-5141
Telephone:  (303) 863-9700
Facsimile:   (303) 863-0223
rbrunelli@sheridanross.com
litigation@sheridanross.com

*Counsel for Publication Printers Corporation*

18

/s/ John M. Jackson
John M. Jackson (TX Bar No. 24002340)
(PHV No. 802739)
Nathaniel St. Clair, II (TX Bar No. 24071564)
(PHV No. 802745)
Matthew C. Acosta (TX Bar No. 24032577)
(PHV No. 802740)
Blake T. Dietrich (TX Bar No. 24087420)
(PHV No. 802752)
JACKSON WALKER L.L.P.
2323 Ross, Suite 600
Dallas, TX  75201
Telephone:  (214) 953-6000
Facsimile:   (214) 953-5822
jjackson@jw.com
nstclair@jw.com
macosta@jw.com
bdietrich@jw.com

*Counsel for Taylor Publishing, Worldwide Tickets and Labels, Inc., Indexx, Inc. and Versa Press, Inc.*

/s/ Jonathan P. Hersey
Jonathan P. Hersey (CA Bar No. 189240)
(PHV No. 803974)
Scott B. Lieberman (CA Bar No. 208764)
(PHV No. 803975)
Neil J. Cooper (CA Bar No. 277997)
(PHV No. 803980)
SLATER HERSEY & LIEBERMAN LLP
18301 Von Karman Avenue, Suite 1060
Irvine, CA  92612
Telephone:  (949) 398-7500
Facsimile:   (949) 398-7501
jhersey@slaterhersey.com
slieberman@slaterhersey.com
ncooper@slaterhersey.com

*Counsel for Trend Offset Printing Services, Inc.*

*/s/ Ahmed J. Davis*

Ahmed J. Davis (Bar No. 17812)
FISH & RICHARDSON P.C.
1425 K Street, NW, 11th Floor
Washington, DC  20005
Telephone:  (202) 783-5070
Facsimile:   (202) 783-2331
davis@fr.com

David M. Barkan (CA Bar No. 160825)
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA  94063
Telephone:  (650) 839-5070
Facsimile:   (650) 839) 5071
barkan@fr.com

*Counsel for Valassis Communications, Inc.*

*/s/ Robert W. Hughes, Jr.*

Robert W. Hughes, Jr. (GA Bar No. 376311)
(PHV No. 802755)
ROBERT W. HUGHES & ASSOCIATES, PC
390 West Crogan Street, Suite 230
Lawrenceville, GA  30046
Telephone:  (770) 469-8887
Facsimile:   (678) 690-6095
robby@hughespclaw.com

*Counsel for Walton Press, Inc.*

20

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the attached **Defendants' Consolidated Memorandum In Support of Their Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction due to Plaintiff's Lack of Standing** was served by means of the Court's CM/ECF system on all counsel of record who have consented to electronic service on this 25th day of March, 2016.

_/s/  Ahmed J. Davis_