**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**BALTIMORE DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **MDL 1:14-MD-02581-MJG** |
| **CTP INNOVATIONS, LLC,** | § | **(LEAD ACTION)** |
| **PATENT LITIGATION** | § | |

---

| | | |
|---|---|---|
| **CTP INNOVATIONS, LLC** | § | |
| | § | |
| **v.** | § | **Case No.:  1:14-cv-03890-MJG** |
| | § | |
| **AMERICAN PRINTING COMPANY** | § | |

---

| | | |
|---|---|---|
| **CTP INNOVATIONS, LLC** | § | |
| | § | |
| **v.** | § | **Case No.:  1:15-cv-01693-MJG** |
| | § | |
| **ARANDELL CORPORATION** | § | |

---

| | | |
|---|---|---|
| **CTP INNOVATIONS, LLC** | § | |
| | § | |
| **v.** | § | **Case No.:  1:15-cv-03124-MJG** |
| | § | |
| **CENVEO CORPORATION** | § | |

---

| | | |
|---|---|---|
| **CTP INNOVATIONS, LLC** | § | |
| | § | |
| **v.** | § | **Case No.:  1:15-cv-01470-MJG** |
| | § | |
| **COMMAND WEB OFFSET COMPANY,** | § | |
| **INC.** | § | |

---

| | | |
|---|---|---|
| **CTP INNOVATIONS, LLC** | § | |
| | § | |
| **v.** | § | **Case No.:  1:15-cv-01975-MJG** |
| | § | |
| **DIRECTMAIL.COM** | § | |

| | | |
|---|---|---|
| **CTP INNOVATIONS, LLC** | § | |
| | § | |
| **v.** | § | Case No.: **1:14-cv-03884-MJG** |
| | § | |
| **EBSCO INDUSTRIES, INC.** | § | |

| | | |
|---|---|---|
| **CTP INNOVATIONS, LLC** | § | |
| | § | |
| **v.** | § | Case No.: **1:15-cv-02391-MJG** |
| | § | |
| **ENNIS, INC.** | § | |

| | | |
|---|---|---|
| **CTP INNOVATIONS, LLC** | § | |
| | § | |
| **v.** | § | Case No.: **1:15-cv-01550-MJG** |
| | § | |
| **F.C.L. GRAPHICS, INC.** | § | |

| | | |
|---|---|---|
| **CTP INNOVATIONS, LLC** | § | |
| | § | |
| **v.** | § | Case No.: **1:14-cv-03888-MJG** |
| | § | |
| **GEO GRAPHICS, INC.** | § | |

| | | |
|---|---|---|
| **CTP INNOVATIONS, LLC** | § | |
| | § | |
| **v.** | § | Case No.: **1:14-cv-03889-MJG** |
| | § | |
| **INDEXX, INC.** | § | |

| | | |
|---|---|---|
| **CTP INNOVATIONS, LLC** | § | |
| | § | |
| **v.** | § | Case No.: **1:14-cv-03893-MJG** |
| | § | |
| **JET PRINTING, LLC** | § | |

**CTP INNOVATIONS, LLC**
§
§
**v.**
§   **Case No.:  1:15-cv-03123-MJG**
§
**JOURNAL GRAPHICS, INC.**
§

---

**CTP INNOVATIONS, LLC**
§
§
**v.**
§   **Case No.:  1:15-cv-02016-MJG**
§
**MIDLAND INFORMATION**
§
**RESOURCES**
§

---

**CTP INNOVATIONS, LLC**
§
§
**v.**
§   **Case No.:  1:15-cv-01469-MJG**
§
**PUBLICATION PRINTERS**
§
**CORPORATION**
§

---

**CTP INNOVATIONS, LLC**
§
§
**v.**
§   **Case No.:  1:15-cv-01471-MJG**
§
**SANDY ALEXANDER, INC.**
§

---

**CTP INNOVATIONS, LLC**
§
§
**v.**
§   **Case No.:  1:15-cv-01813-MJG**
§
**SCHUMANN PRINTERS, INC.**
§

---

**CTP INNOVATIONS, LLC**
§
§
**v.**
§   **Case No.:  1:15-cv-01692-MJG**
§
**SPECIALTY PROMOTIONS, INC.**
§

---

| | | |
|---|---|---|
| **TAYLOR PUBLISHING COMPANY** | § | |
| | § | |
| **v.** | § | **Case No.:  1:14-cv-03894-MJG** |
| | § | |
| **CTP INNOVATIONS, LLC** | § | |

| | | |
|---|---|---|
| **CTP INNOVATIONS, LLC** | § | |
| | § | |
| **v.** | § | **Case No.:  1:15-cv-02052-MJG** |
| | § | |
| **TIMES PRINTING CO., INC.** | § | |

| | | |
|---|---|---|
| **CTP INNOVATIONS, LLC** | § | |
| | § | |
| **v.** | § | **Case No.:  1:15-cv-02389-MJG** |
| | § | |
| **TREND OFFSET PRINTING SERVICES, INC.** | § § | |

| | | |
|---|---|---|
| **CTP INNOVATIONS, LLC** | § | |
| | § | |
| **v.** | § | **Case No.:  1:15-cv-01807-MJG** |
| | § | |
| **VALASSIS COMMUNICATIONS, INC.** | § | |

| | | |
|---|---|---|
| **CTP INNOVATIONS, LLC** | § | |
| | § | |
| **v.** | § | **Case No.:  1:15-cv-02682-MJG** |
| | § | |
| **VERSA PRESS, INC.** | § | |

| | | |
|---|---|---|
| **CTP INNOVATIONS, LLC** | § | |
| | § | |
| **v.** | § | **Case No.:  1:14-cv-03887-MJG** |
| | § | |
| **WALTON PRESS INC.** | § | |

| | | |
|---|---|---|
| **CTP INNOVATIONS, LLC** | § | |
| | § | |
| **v.** | § | **Case No.:  1:14-cv-03886-MJG** |
| | § | |
| **WORLDWIDE TICKETS AND LABELS,** | § | |
| **INC.** | § | |

_____

| | | |
|---|---|---|
| **CTP INNOVATIONS, LLC** | § | |
| | § | |
| **v.** | § | **Case No.:  1:15-cv-01646-MJG** |
| | § | |
| **WORZALLA PUBLISHING COMPANY** | § | |

_____

### CTP INNOVATIONS, LLC'S RESPONSE IN OPPOSITION TO DEFENDANTS' CONSOLIDATED RULE 12 MOTION TO DISMISS OR, ALTERNATIVELY, FOR JUDGMENT ON THE PLEADINGS

_____

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I.      INTRODUCTION ................................................................................................ 1

II.     RELEVANT PROCEDURAL HISTORY ............................................................ 5

    A.      The Previously Filed Motions To Dismiss ............................................... 5

    B.      The Previously Filed Answers .................................................................. 6

III.    LAW AND ARGUMENT ................................................................................... 8

    A.      Legal Standard .......................................................................................... 8

    B.      The Amendments To The Federal Rules Do Not Change Existing Pleading Standards. . 10

    C.      CTP Has Met Its Burden Of Pleading Direct Patent Infringement. ................................. 12

        1.      The Pleading Requirements Set Forth In *K-Tech* Are Consistent With *Twombly* And *Iqbal*. ................................ 12

        2.      CTP's Amended Complaints Allege Sufficient Facts To Provide Notice And Plausibility Of Its Claim For Direct Patent Infringement. ................................ 19

        3.      CTP Satisfied The *K-Tech* Standard By Alleging Infringement Through A General Category Of Products Or Services. ................................ 20

        4.      Defendants' Cited Authority Pre-date *K-Tech* And Ignore Contrary Pre- And Post-*K-Tech* Cases. ................................ 31

    D.      The Answering Defendants Are Precluded From Joining The Consolidated Motion. ...... 37

    E.      Jet Printing Is Precluded From Joining The Consolidated Motion. ................................ 41

    F.      Should This Court Deem CTP Has Fallen Short Of Its Pleading Burden, CTP Requests And Should Be Granted Leave To Amend. ................................ 42

IV.     CONCLUSION ................................................................................................... 43

CERTIFICATE OF SERVICE ....................................................................................... 44

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3rd Eye Surveillance, LLC v. United States*,
124 Fed. Cl. 438 (2015) ....................................................................................................... 11, 39

*Addiction & Detoxification Institute L.L.C. v. Carpenter*,
No. 2014-1797, 2015 WL 4430128 (Fed. Cir. Jul. 21, 2015) (non-precedential) ................... 16, 21, 23

*Adiscov, LLC v. Autonomy Corp.*,
762 F.Supp.2d 826 (E.D. Va. 2011) ....................................................................................... 32

*Applera Corp. v. Thermo Electron Corp.*,
No. Civ. A. 04-1230, 2005 WL 524589 (D. Del. Feb. 25, 2005) ................................................. 30, 37

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................................... 9, 10, 12, 13

*Bell Atlantic Corporation v. Twombly*,
550 U.S. 544 (2007) ................................................................................................................ 10, 12, 13

*Bender v. Integrated Prods., Inc.*,
No. C 09-01152, 2010 WL 2991257 (N.D. Cal. Jul. 29, 2010) ................................................ 31

*Blackbird Tech LLC v. Ledwholesalers.Com Inc.*,
No. CV 15-60-RGA, 2015 WL 10553053 (D. Del. Dec. 3, 2015) ............................................. 11, 39

*CBT Flint Partners, LLC v. Goodmail Sys., Inc.*,
529 F.Supp.2d 1376 (N.D. Ga. 2007) ..................................................................................... 20, 37

*Clouding IP, LLC v. Amazon.com, Inc.*,
C.A. Nos. 12–641–LPS, 12–642–LPS, 12–675, 2013 WL 2293452 (D. Del. May 24, 2013) . 22, 33, 34

*Clouding IP, LLC v. Oracle Corp.*,
Case No. 12-642-LPS, Dkt. 19 at 4, 11 (D. Del.) ................................................................... 34

*Coleman v. Dretke*,
409 F.3d 665 (5th Cir. 2005) .................................................................................................. 25

*CoStar Realty Info., Inc. v. Field*,
612 F. Supp. 2d 660 (D. Md. 2009) ........................................................................................ 14

*Displeigh, LLC v. Samsung Elecs. Am., Inc. et al.*,
No. 3:11-cv-2977-N, Order [Dkt. 38] (N.D. Tex. May 8, 2012) ............................................. 36

*Eaton Veterinary Pharm., Inc v. Wedgewood Vill. Pharmacy, Inc.*,
No. 4:15-CV-687-SRB, 2015 WL 7871055 (W.D. Mo. Dec. 3, 2015) .................................... 39

*Elen IP LLC v. ArvinMeritor, Inc.*,
   Case No. 2:11-cv-00140, 2011 WL 3651113 (W.D. Wash. Aug. 18, 2011)..............................36

*Energy Automation Sys. v. Saxton*,
   618 F.Supp.2d 807 (M.D. Tenn. 2009)..........................................................................................25

*F.T.C. v. Innovative Mktg., Inc.*,
   654 F. Supp. 2d 378 (D. Md. 2009)...............................................................................................42

*Fairchild Semiconductor Corp. v. Power Integrations, Inc.*,
   935 F.Supp.2d 772 (D. Del. 2013)..................................................................................................30

*Foman v. Davis*,
   371 U.S. 178 (1962).......................................................................................................................43

*Gemstar Grp. USA, Inc. v. Ferragamo USA, Inc.*,
   No. H-08-1822, 2008 WL 4858363 (S.D. Tex. Nov. 10, 2008).....................................................25

*Gonzalez v. Kay*,
   577 F.3d 600 (5th Cir. 2009) ..........................................................................................................9

*Hendrickson v. eBay, Inc.*,
   165 F.Supp.2d 1082 (C.D. Cal. 2001) ............................................................................................25

*Hill, By & Through Covington v. Briggs & Stratton*,
   856 F.2d 186 (4th Cir. 1988) ...........................................................................................................8

*Hologram USA, Inc. v. Pulse Evolution Corp.*,
   No. 2:14-CV-0772-GMN-NJK, 2016 WL 199417 (D. Nev. Jan. 15, 2016) ...........................10, 39

*In re Everglades Island Boat Tours, LLC*,
   484 F.Supp.2d 1259 (M.D. Fla. 2007).............................................................................................25

*In re Temporomandibular Joint (TMJ) Implants Products Liab. Litig.*,
   97 F.3d 1050 (8th Cir. 1996) ...........................................................................................................8

*Infineon Tech. AG v. Volterra Semiconductor Corp.*,
   No. C-11-6239, 2012 WL 5988461 (N.D. Cal. Nov. 29, 2012) ...........................................20, 30, 37

*Innovating Mktg.*, 654 F. Supp. 2d..................................................................................................42

*Innovative Automation LLC v. Vudu, Inc.*,
   No. 2:13-CV-1109-JRG, 2014 WL 4090528  (E.D. Tex. Aug. 19, 2014) .........................................33

*Intellicheck Mobilisa, Inc. v. Wizz Sys., L.L.C.*,
   No. C15-0366JLR, 2016 WL 258524 (W.D. Wash. Jan. 21, 2016)............................................11, 39

*Jeandron v. Bd. of Regents of Univ. Sys. of Maryland*,
   510 F. App'x 223 (4th Cir. 2013) ....................................................................................................25

*K Tech.*, 714 F.3d ............................................................................................................................23

*K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*,
   714 F.3d 1277 (Fed. Circ. 2013)................................................................................................passim

*LML Patent Corp. v. Nat'l Bank of Daingerfield*,
No. 2:09-cv-00180-TJW, 2011 WL 1478517 (E.D. Tex. Mar. 24, 2011)...........................36

*Lubrizol Specialty Prods., Inc. v. Flowchem LLC*,
No. CV H-15-2917, 2016 WL 775033 (S.D. Tex. Feb. 29, 2016) ..............................passim

*Menowitz v. Brown*,
991 F.2d 36 (2d Cir. 1993) ...........................................................................8

*Mitchell v. Nix*,
CV 105-2349, 2007 WL 779067 (N.D. Ga. Mar. 8, 2007)..................................25

*Motivation Innovations, LLC v. Express, Inc.*,
Case No. 11-615-SLR-MPT, 2012 WL 1415412 (D. Del. Apr. 24, 2012) ..........................36

*Network Congestion Solutions, LLC v. A T & T Inc.*,
No. 14–894–SLR *et al.*, 2015 WL 3542949 (D. Del. June 4, 2015) ..................................21

*O'Donnell v. Biolife Plasma Servs., L.P.*,
384 F.Supp.2d 971 (S.D.W.V. 2005).......................................................................8

*PanTaurus LLC v. Wells Fargo & Co.*,
No. 1:14-cv-450, Order Denying Defendants' Motion to Dismiss Direct Infringement Claims [Dkt. 24] (E.D. Tex. Mar. 11, 2015) ...........................................................33

*Patterson v. Whitlock*,
392 Fed. App'x 185 (4th Cir. 2010) .........................................................................41

*Potomac Conference Corp. of Seventh-day Adventists v. Takoma Acad. Alumni Ass'n, Inc.*,
2 F. Supp. 3d 758 (D. Md. 2014)...........................................................................14

*Prism Techs., LLC v. Sprint Spectrum L.P.*,
Case No. 8:12-CV-123, 2012 WL 3867983 (D. Neb. Sept. 6, 2012)..................................32

*R+L Carriers, Inc. v. DriverTech LLC (In re Bill of Lading Transmission & Processing Sys. Patent Litig.)* ("*In re Bill of Lading*"),
681 F.3d 1323 (Fed. Cir. 2012) ......................................................................3, 8, 9

*Redd Grp., LLC v. Glass Guru Franchise Sys., Inc.*,
Case No. 12-cv-040702013, 2013 WL 3462078 (N.D. Cal. Jul. 8, 2013) ..........................35

*Rembrandt Patent Innovations LLC v. Apple, Inc.*,
No. 1405093, 2015 WL 8607390 (N.D. Cal. Dec. 13, 2015)....................................11, 12

*Rogers v. Jefferson-Pilot Life Ins. Co.*,
883 F.2d 324 (4th Cir. 1989) ...........................................................................8

*S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*,
713 F.3d 175 (4th Cir. 2013) ...........................................................................9

*Sanchez v. Boston Scientific Corp.*,
Civil Action No. 2:12-cv-05762, 2014 WL 202787 (S.D. West Va.) (Jan. 17, 2014) .........................8

*Seoul Laser Dieboard Sys. Co., Ltd. v. Serviform, S.r.l.*,
   957 F.Supp.2d 1189 (S.D. Cal. 2013) .................................................................... 20

*Various Plaintiffs v. Various Defendants (Oil Field Cases)*,
   673 F.Supp.2d 358 (E.D. Pa. 2009) ......................................................................... 8

*Vlahos v. Schroeffel*,
   CV No. 02-CV-019DLI, 2006 WL 544444 (E.D.N.Y. Mar. 6, 2006) ................................. 25

*VoiceFill, LLC v. W. Interactive Corp.*,
   Case No. 8:11-CV-421, 2012 WL 1949378 (D. Neb. May 29, 2012) ................................. 36

*Wright Mfg. Inc. v. Toro Co.*,
   No. CIV.A. MJG-11-1373, 2011 WL 6211172 (D. Md. Dec. 13, 2011) ............................ 9

*XPoint Tech., Inc. v. Microsoft Corp.*,
   730 F.Supp.2d 349 (D. Del. 2010) ............................................................. 21, 36

*Zoetis LLC v. Roadrunner Pharm., Inc.*,
   No. CV 15-3193, 2016 WL 755622 (D.N.J. Feb. 25, 2016) ............................................ 39

## Other Authorities

Fed. R. Civ. P. 1 ......................................................................................... 40

Fed. R. Civ. P. 10(c) ................................................................................. 4, 24

Fed. R. Civ. P. 12(g)(2) ............................................................................. 4, 41

Fed. R. Civ. P. 15(a) ..................................................................................... 43

Fed. R. Civ. P. 84 (2015 Advisory Committee Note) ................................................. 1, 10

MOORE'S FEDERAL PRACTICE ¶ 8.10[2] (3d ed. 2009) ............................................ 43

Supreme Court of the United States, Order Regarding Amendments to the Federal Rules of Civil
   Procedure (Apr. 29, 2015) ........................................................................... 38

For its response in opposition to Defendants American Printing Company, Inc.; Arandell Corporation; Cenveo Corporation; Command Web Offset Company, Inc.; Directmail.com; EBSCO Industries, Inc.; Ennis, Inc.; F.C.L. Graphics, Inc.; GEO Graphics, Inc.; Indexx, Inc.; Jet Printing, LLC; Journal Graphics, Inc.;[1] Midland Information Resources; Publication Printers Corporation; Sandy Alexander, Inc.; Schumann Printers, Inc.; Specialty Promotions, Inc.; Taylor Publishing Company; Times Printing Co., Inc.; Trend Offset Printing Services, Inc.; Valassis Communications, Inc.; Versa Press, Inc.; Walton Press Inc.; Worldwide Tickets and Labels, Inc.; and Worzalla Publishing Company's (collectively, "Defendants") Consolidated Rule 12 Motion to Dismiss or, Alternatively, for Judgment on the Pleadings [Doc. 345] (the "Consolidated Motion"), Plaintiff CTP Innovations, LLC ("CTP") states as follows:

## I.   **INTRODUCTION**

Defendants' Consolidated Motion must be denied with prejudice for one simple reason: it tries to create a heightened pleading standard that is unsupported by controlling case law. Indeed, although Defendants rely heavily upon the fact that Form 18 and Rule 84 were abrogated from the Federal Rules of Civil Procedure as of December 1, 2015, the Advisory Committee Note associated with this change directly states, "[t]he abrogation of Rule 84 <u>does not alter existing pleading standards</u> or otherwise change the requirements of Civil Rule 8." Fed. R. Civ. P. 84 (2015 Advisory Committee Note) (emphasis added). Thus, unless and until the Federal Circuit holds otherwise, *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277 (Fed. Circ. 2013) remains the controlling Federal Circuit

---

[1] Journal Graphics was not one of the Defendants who filed the Consolidated Motion. *See* Doc. 345. Instead, Journal Graphics subsequently filed a one-paragraph Motion to Dismiss attempting to join the Consolidated Motion by incorporating the Consolidated Motion by reference. *See* Doc. 349. To the extent the Court deems Journal Graphics' incorporation method procedurally proper, CTP includes Journal Graphics in its Response.

authority on the requisite pleading standard for direct patent infringement.  Tellingly, Defendants fail to acknowledge the  Advisory Committee Note at any point in the Consolidated Motion.  Because, as this Court held in its previous Orders, CTP's original Complaints properly alleged direct infringement under *K-Tech*, so too must CTP's Amended Complaints.  The Consolidated Motion must be denied.

Notwithstanding Defendants' improper creation of a new pleading standard and argument that CTP's prior complaints failed to state a claim, the Consolidated Motion simply regurgitates the same arguments as the previously-denied motions to dismiss.  As such, Defendants' Consolidated Motion is a waste of the Court's time and, like the repeated failed *inter partes* review petitions, is intended by Defendants as nothing more than an attempt to drain the resources of a single entity through use of collective resources of many defendants.  CTP has properly alleged infringement against each Defendant under the existing pleading standards, has provided express notice of the asserted claims, and will disclose (and, in some cases, has already disclosed) particularized infringement contentions as the Court instructs.  Indeed, CTP has already provided a particularized set of claims at issue for each Defendant, which is certainly more than is required by the Federal Rules of Civil Procedure.  Given that PTAB has rejected five unsuccessful petitions for *inter partes* review, Defendants have lost several important invalidity defenses and are scrambling for any way out of the present lawsuit.  Left defenseless and desperate to avoid a ruling on infringement (particularly after the largest printing trade association in the country openly admitted that use of the methods claimed in the '349 and '155 is "ubiquitous in the industry" – a stark contrast to Defendants' outside-the-pleadings and unsupported commentary that the claimed technology is "out of date" (Memo. at 7)), Defendants apparently hope to wage a war of attrition by inundating this Court and CTP with unsupported motion after motion.

The Consolidated Motion must be denied.  As with the previous motions to dismiss, Defendants claim that CTP has failed to meet the basic pleading requirements because CTP fails to "identif[y] the instrumentality of each Defendants'] alleged infringement."  Memo. at 5.  However, as mentioned above, Defendants ignore the controlling precedent.  Moreover, rather than accept CTP's allegations as true for purposes of its Motion, Defendants seek to hold CTP to a pleading standard that contravenes the "existing pleading standards." Defendants' argument is wholly without merit, and the Consolidated Motion should be denied because CTP has met its burden of pleading under Federal Rule of Civil Procedure 8 and the Federal Circuit's holdings in *K-Tech*, 714 F.3d 1277 and *R+L Carriers, Inc. v. DriverTech LLC (In re Bill of Lading Transmission & Processing Sys. Patent Litig.)* ("*In re Bill of Lading*"), 681 F.3d 1323 (Fed. Cir. 2012).

Indeed, Defendants completely ignore *K-Tech* in its Memorandum and, in contravention of the clear and unambiguous holding of *K-Tech*, assert that CTP is required to identify a specific service – not a service category generally – in order to properly plead a complaint for patent infringement. Defendants assert that this is true even though the Defendants allegedly "operate different systems with different equipment", and, thus, according to Defendants' logic, CTP can only assert a sufficient level of pleading if it, in effect, attached detailed claim charts matching each different system with each piece of equipment with each different Defendant.  Despite the fact that Defendants' "different system"/"different equipment" statement is completely outside the pleadings (apparently disregarding that requirement when it suits them), Defendants' alleged pleading standard is a completely new and legally unsupported position.

Defendants also implicitly ask the Court to ignore the context of CTP's infringement claims – namely, the patent itself attached as an exhibit to the Complaint – in contravention of the terms of *In re*

*Bill of Lading* and Fed. R. Civ. P. 10(c). Moreover, this Court has already ruled in twelve member cases that CTP has properly pled direct patent infringement. *See* Docs. 233, 275, 276.[2] Because CTP's Amended Complaints adequately allege direct infringement under *K-Tech*, and because the abrogation of Form 18 "does not alter any existing pleading standards," the Consolidated Motion similarly should be denied.

The Consolidated Motion also presents several improper procedural peculiarities that must be addressed. First, several Defendants have jointly filed two separate Rule 12(b)(6) motions.[3] *See* Docs. 345, 346. Fed. R. Civ. P. 12(g)(2) expressly bars defendants from interposing two successive motions raising Rule 12(b) motions if the defense was previously available to the defendant. In addition, Defendants American Printing Company, Inc., EBSCO Industries, Inc., GEO Graphics, Inc., Indexx, Inc., Taylor Publishing Company, and Worldwide Tickets and Labels, Inc. (collectively, the "Answering Defendants") are improperly joined in the Consolidated Motion on Rule 12(b)(6) grounds because they each filed answers prior to consolidation as an MDL proceeding. Although the Answering Defendants attempt to characterize the Consolidated Motion as a Rule 12(c) motion for judgment on the pleadings, the Court's Second Procedural Order expressly states that any 12(b)(6) motions "should not include other grounds for dismissal." Doc. 292 at ¶ 3(b)(i). Because the Answering Defendants did not file any notice of other dismissal grounds and request a scheduling order under ¶ 3(c) of the Second Procedural

---

[2] Citations to the docket shall be to documents filed in Lead Action Case No. 1:14-md-02581 unless specifically noted.

[3] Defendants joining both Doc. 345 and 346 are: Arandell Corporation; Cenveo Corportation; Command Web Offset Company; Directmail.com; EBSCO Industries, Inc.; Ennis, Inc.; F.C.L. Graphics, Inc.; Indexx, Inc.; Midland Information Resources; Publication Printers Corporation; Sandy Alexander, Inc.; Schumann Printers, Inc.; Specialty Promotions, Inc.; Times Printing Co., Inc.; Trend Offset Printing Services, Inc.; Valassis Communications, Inc.; Versa Press, Inc.; Worldwide Tickets and Labels, Inc.; and Worzalla Publishing Company.

4

Order, these defendants should be stricken from the Consolidated Motion and precluded from re-filing a Rule 12(c) motion for their failure to adhere to this Court's Orders.

Finally, Defendant Jet Printing, LLC is similarly prohibited from joining the Consolidated Motion.  Prior to consolidation, Jet Printing previously filed a Rule 12(b)(6) motion to dismiss CTP's willfulness allegations before consolidation.  *See* Member Case No. 1:14-cv-03893-MJG, Docs. 14, 15. Jet Printing did not seek dismissal of CTP's direct infringement claims.  Yet, in contravention of Federal Rule 12(g)'s prohibition on filing multiple motions to dismiss, Jet Printing now joins the Consolidated Motion.  CTP did not amend its pleading, such that Jet Printing could have raised the purported defense in its original motion to dismiss but declined to do so.  Accordingly, Jet Printing should be barred from now joining the Consolidated Motion.

Notwithstanding the entirety of the numerous procedural errors in the Motion and companion Joint Motion [Doc. 346], which alone are good cause to deny the Motion, CTP respectfully requests the Court deny the Motion in its entirety with prejudice.

## II.      RELEVANT PROCEDURAL HISTORY

### A.      The Previously Filed Motions To Dismiss

Defendants Publication Printers Corporation, Command Web Offset Company, Inc., Sandy Alexander, Inc., Worzalla Publishing Company, Schumann Printers, Inc., Arandell Corporation, Times Printing Co., Inc., Specialty Promotions, Inc., F.C.L. Graphics, Inc., and Directmail.com each previously filed a motion to dismiss based on substantively similar grounds as the present Consolidated Motion. *See* Docs. 99, 128, 134, 135, 151-152, 156-157, 170-171, 228; Member Case Nos. 1:15-cv-01550-MJG Doc. 29, 1:15-cv-01975-MJG Doc. 22.  Prior to consolidation as an MDL proceeding, Defendants Walton Press Inc.,  Ennis, Inc., Cenveo Corporation, and Trend Offset Printing Services, Inc. also filed

motions to dismiss on similar grounds.  *See* Member Case Nos. 1:14-cv-03887-MJG Doc. 16; 1:15-cv-02391-MJG Docs. 11-12; 1:15-cv-02389-MJG Doc. 18; 1:15-cv-03124-MJG Doc. 5.  Defendants Versa Press, Inc. and Jet Printing, LLC filed motions to dismiss under Rule 12(b)(6), but limited their motions to the willfulness allegations.  Doc. 235; Member Case No. 1:14-cv-03893-MJG Docs. 14-15;   Neither Versa Press nor Jet Printing requested dismissal of CTP's direct infringement claims.  *Id.*

On October 2, 2015, this Court denied Publication Printers', Command's, Sandy Alexander's, Phoenix's, F.C.L. Graphics', Worzalla's, Arandell's, Schumann's, Times Printing's, Trend Offset's, and Ennis' motions to dismiss related to CTP's direct patent infringement claims.  Doc. 233.  On December 1, 2015, this Court denied Specialty Promotions' motion to dismiss related to CTP's direct patent infringement claim.  Doc. 275.  Prior to consolidation, the Eastern District of Pennsylvania denied Cenveo's motion to dismiss without prejudice.  Member Case No. 1:15-cv-03124-MJG Doc. 24.  On March 7, 2016, Jet Printing filed a Notice of Intent to Continue with its original motion to dismiss CTP willfulness allegations.  Doc. 344.

Pursuant to the Court's leave granted under the Second Procedural Order, CTP filed Amended Complaints against Publication Printers, Times Printing, FCL Graphics, Worzalla, Schumann, Midland Information, Versa Press, Journal Graphics, Command, Sandy, Valassis, DirectMail, Hess Print Solutions, Trend Offset, Cenveo, Arandell, Specialty Promotions, and Ennis.  *See* Docs. 298-315.  CTP also filed individual Notices of Asserted Claims, identifying the specific claims of both the '349 and '155 Patents asserted against each Defendant.  *See* Docs. 316-341.

## B.    The Previously Filed Answers

Prior to consolidation, Defendants American Printing Company, Inc., EBSCO Industries, Inc., GEO Graphics, Inc., Indexx, Inc., Taylor Publishing Company, and Worldwide Tickets and Labels, Inc.

6

(the "Answering Defendants") filed answers to CTP's original complaints.  Some of the complaints have been pending as early as 2013.  Specifically:

- Taylor Publishing Company filed a complaint for declaratory judgment against CTP on June 13, 2013.  Member Case No. 1:14-cv-03894-MJG Doc. 1.  CTP filed its Answer and Counterclaims for Patent Infringement on June 17, 2013.  *Id.* Doc. 6.  Taylor filed an Answer to CTP's Counterclaims on July 8, 2013.  *Id.* Doc. 12.

- CTP filed its Complaint against American Printing Company, Inc. on June 14, 2013. Member Case No. 1:14-cv-03890-MJG Doc. 1.  CTP filed an Amended Complaint against American on February 28, 2014.  *Id.* Doc. 42.  American filed an Answer to the Amended Complaint on March 21, 2014.  *Id.* Doc. 46.  CTP's Answer to American's Counterclaims are due March 31, 2016.  *See* Doc. 353.

- CTP filed its Complaint against Worldwide Tickets and Labels, Inc. on April 24, 2014. Member Case No. 1:14-cv-03886-MJG Doc. 1.  Worldwide filed its Answer on June 26, 2014.  *Id.* Doc. 16.  CTP filed its Answer to Worldwide's Counterclaims on July 21, 2014.  *Id.* Doc. 20.

- CTP filed its Complaint against EBSCO Industries, Inc. on April 30, 2014.  Member Case No. 1:14-cv-03884-MJG Doc. 1. EBSCO filed its Answer on June 30, 2014.  *Id.* Doc. 8.  CTP filed its Answer to EBSCO's Counterclaims on July 24, 2014.  *Id.* Doc. 11.

- CTP filed its Complaint against Indexx, Inc. on May 1, 2014.  Member Case No. 1:14-cv-03889-MJG Doc. 1.  Indexx filed its Answer on July 9, 2014.  *Id.* Doc. 17.  CTP filed its Answer to Indexx's Counterclaims on July 30, 2014.  *Id.* Doc. 23.

- CTP filed its Complaint against GEO Graphics, Inc. on May 8, 2014.  Member Case No. 1:14-cv-03888-MJG Doc. 1.  GEO Graphics filed its Answer on July 2, 2014. *Id.* Doc. 10.  CTP filed its Answer to GEO Graphics' Counterclaims on July 28, 2014.  *Id.* Doc. 28.

CTP did not seek leave to amend its Complaints against the Answering Defendants under the Second Procedural Order.

After consolidation, Defendants  Valassis  and Midland Information Resources filed answers to CTP's original Complaints. Doc. 188; Member Case No. 1:15-cv-02016-MJG Doc. 10.  Pursuant to the Court's leave granted under the Second Procedural Order, CTP subsequently amended its Complaints against Valassis and Midland.  *See* Docs. 303, 308.

### III.   LAW AND ARGUMENT

#### A.   Legal Standard

The Federal Circuit applies the law of the regional circuit when deciding procedural matters.  *In re Bill of Lading*, 681 F.3d at 1323 (citing *McZeal v. Sprint Nextel Corp.,* 501 F.3d 1354, 1355-56 (Fed. Cir. 2007)).   "In multidistrict litigation cases, the choice-of law determination for pre-trial motions hinges upon whether federal or state law governs." *Sanchez v. Boston Scientific Corp.*, Civil Action No. 2:12-cv-05762, 2014 WL 202787, at *3 (S.D. West Va.) (Jan. 17, 2014).   "[A] transferee federal court should apply its interpretations of federal law, not the constructions of federal law of the transferor circuit." *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993); *see also*, *In re Temporomandibular Joint (TMJ) Implants Products Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) ("When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located."); *Various Plaintiffs v. Various Defendants (Oil Field Cases)*, 673 F.Supp.2d 358, 362 (E.D. Pa. 2009) ("In matters requiring the interpretation of the Constitution, a federal law or a federal rule of procedure, a transferee court applies the law of the circuit where it sits.").

The Fourth Circuit has noted that "a rule 12(b)(6) motion should be granted only in very limited circumstances." *Rogers v. Jefferson-Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir. 1989).   Indeed, "[t]he motion to dismiss for failure to state a claim is viewed with disfavor, and is rarely granted." *Hill, By & Through Covington v. Briggs & Stratton*, 856 F.2d 186, at *1 (4th Cir. 1988) (unpublished) (citing 5 WRIGHT & MILLER § 1357 p. 598 (1969)); *O'Donnell v. Biolife Plasma Servs., L.P.*, 384 F.Supp.2d 971, 973 (S.D.W.V. 2005).   When a complaint is challenged for failure to state a claim, a court must construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and determine whether the complaint states a plausible claim for relief. *Philips v.*

*Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).[4]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Fourth Circuit takes a liberal view of what matters fall within the pleadings, holding that the Court may "consider exhibits attached to the complaint in addition to the complaint itself."  *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 182 (4th Cir. 2013) (citing Fed. R Civ. P. 10(c), *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011)).

To survive a motion to dismiss for direct patent infringement, a complaint must contain:

(1)    an allegation of jurisdiction;

(2)    a statement that the plaintiff owns the patent;

(3)    a statement that defendant has been infringing the patent 'by making, selling, and using [the device] embodying the patent;

(4)    a statement that the plaintiff has given the defendant notice of its infringement; and

(5)    a demand for injunction and damages.

*K-Tech,* 714 F.3d at 1283 (citing *McNeal*, 501 F.3d at 1357 and Form 18).  A plaintiff that meets these requirements is effectively immunized from attack regarding the sufficiency of its pleading.  *Id.* Moreover, "while a claim for direct patent infringement is comprised of five elements, the plaintiff is not required to explicitly identify each element in its complaint." *Wright Mfg. Inc. v. Toro Co.*, No. CIV.A. MJG-11-1373, 2011 WL 6211172, at *2 (D. Md. Dec. 13, 2011) (citing *McZeal*, 501 F.3d at 1357).

---

[4] Within the Federal Circuit, the law of the regional circuit governs purely procedural matters such as the pending motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6).  *See In re Bill of Lading*, 681 F.3d at 1331 (citing *McZeal,* 501 F.3d at 1355-56).

As noted by *K-Tech*, a claim for direct patent infringement must meet the touchstones of "notice and facial plausibility." *K-Tech*, 714 F.3d at 1286 (internal citations omitted herein). A complaint that contains the foregoing allegations shall suffice and survive a Rule 12(b)(6) motion to dismiss under *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) and *Iqbal*, 556 U.S. 662 (both articulating a "plausibility" standard for pleading of claims). *See K-Tech*, 714 F.3d at 1283 ("[T]he forms in the Appendix suffice under [the Federal Rules of Civil Procedure] and <u>illustrate the simplicity and brevity that these rules contemplate</u>.") (quoting *In re Bill of Lading*, 681 F.3d at 1334) (emphasis added)).

**B.      The Amendments To The Federal Rules Do Not Change Existing Pleading Standards.**

The Court should deny Defendants' Consolidated Motion because it is premised upon a fundamental misunderstanding: that the abrogation of Rule 84 and Form 18 created a different pleading standard than that set forth in controlling Federal Circuit precedent. This is not the case. Indeed, what Defendants fail to mention anywhere in their Consolidated Motion is that the Advisory Committee Note accompanying the abrogation of Rule 84 expressly provides that "[t]he abrogation of Rule 84 <u>does not alter existing pleading standards</u> or otherwise change the requirements of Civil Rule 8." Fed. R. Civ. P. 84 (2015 Advisory Committee Note) (emphasis added). Since the enactment of the amended Rules, neither the Federal Circuit nor the Supreme Court have directly held that *K-Tech* has been overruled. Defendants do not (and, indeed, cannot) assert that any consensus has been reached among the handful of district courts that have addressed the "existing pleading standard" after December 1, 2015. Accordingly, *K-Tech* remains the controlling authority on the required elements to state a claim for direct patent infringement. *See Hologram USA, Inc. v. Pulse Evolution Corp.*, No. 2:14-CV-0772-GMN-NJK, 2016 WL 199417, at *2 (D. Nev. Jan. 15, 2016) ("Though Form 18 and Rule 84 were abrogated from the Federal Rules of Civil Procedure as of December 1, 2015, the Advisory Committee

note associated with this change directly states, 'The abrogation of Rule 84 does not alter existing pleading standards or otherwise change the requirements of Civil Rule 8.' Fed. R. Civ. P. 84 (2015 Advisory Committee Note). Thus, the Court refers to previously existing standards in ruling upon the instant Motion."); *Blackbird Tech LLC v. Ledwholesalers.Com Inc.*, No. CV 15-60-RGA, 2015 WL 10553053, at *1 n.2 (D. Del. Dec. 3, 2015) ("My understanding is that <u>former Form 18 continues to control</u> the plausibility of direct infringement allegations.") (emphasis added); *see also*, *Lubrizol Specialty Prods., Inc. v. Flowchem LLC*, No. CV H-15-2917, 2016 WL 775033, at *1 (S.D. Tex. Feb. 29, 2016); (applying Form 18 to complaint filed after December 1, 2015); *Intellicheck Mobilisa, Inc. v. Wizz Sys., L.L.C.*, No. C15-0366JLR, 2016 WL 258524, at *4 (W.D. Wash. Jan. 21, 2016) (applying Form 18 and *In re Bill of Lading*); *3rd Eye Surveillance, LLC v. United States*, 124 Fed. Cl. 438, 442 n.6 (Dec. 17, 2015) ("The court therefore need not address whether the recent abrogation of Form 18, which occurred six and one-half months after the complaint in this case was filed, raises a retroactivity question. The "notice and plausibility" standard of *K–Tech* continues to govern."). Because the Court has previously held CTP's Complaints to be sufficient under "existing pleading standards," it must similarly find the Amended Complaints to be sufficient.

Indeed, the only case cited by Defendants to support its position, *Rembrandt Patent Innovations LLC v. Apple, Inc.*, is distinguishable. Although Defendants parenthetically explain that *Rembrandt* "required [plaintiff] to file a new complaint complying with *Iqbal*, to address new allegations" (Memo. at 3), this is misleading. The *Rembrandt* court did not order the plaintiff to file a new complaint to supersede the existing complaint after the abrogation of Rule 84, nor was there any motion to dismiss pending. *Rembrandt*, No. 1405093, 2015 WL 8607390 (N.D. Cal. Dec. 13, 2015). Rather, <u>in context</u>, the plaintiff had amended its infringement contentions five times and sought to amend the contentions a

sixth time.  *Id.* at *1-2.  The court found that allowing the sixth amendment would add new products not alleged in the existing complaint.  *Id.* at *2.  The court found that the "repeated amendments . . . has already made this case increasingly unmanageable" and that "[t]here must be some reasonable cut-off date after which Rembrandt cannot further expand the case[.]"  *Id.*  Accordingly, the court did not "require" the plaintiff to file a new complaint as Defendants claim, but simply denied leave to amend its infringement contentions and instructed the plaintiff that, should it wish to sue for those new products, it could "fil[e] a new complaint (complying with *Iqbal*) for follow-on products, paying the filing fee, and seeking to relate the new case to the undersigned judge."  *Id.*  *Rembrandt* is neither controlling on this Court nor upon the Federal Circuit's holding in *K-Tech* and should be disregarded.

**C.**     **CTP Has Met Its Burden Of Pleading Direct Patent Infringement.**

> **1.**     **The Pleading Requirements Set Forth In *K-Tech* Are Consistent With *Twombly* And *Iqbal*.**

Even though Form 18 has been abrogated and yet, the standard has not changed, CTP's Amended Complaints still meet the requirements of *K-Tech* – the controlling Federal Circuit precedent setting forth the existing pleading standard.  Moreover, the pleading standard articulated in *K-Tech* (based upon Form 18) is not incompatible with the so-called "heightened" requirements of *Twombly* and *Iqbal*.  As noted by the Federal Circuit, "Form 18 in no way relaxes the clear principle of Rule 8[.]"  *K-Tech*, 714 F.3d at 1284. Indeed, both *K-Tech* and *Twombly/Iqbal* are rooted in the principle of requiring "notice and plausibility" in a pleading.  *See K-Tech*, 714 F.3d at 1286 ("The touchstones of an appropriate analysis under Form 18 are <u>notice and facial plausibility</u>.") (emphasis added); *Twombly*, 550 U.S. at 570 ("we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."); *Iqbal*, 556 U.S. at 663 ("'[D]etailed factual allegations' are

not required . . . but the Rule does call for sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").

The two purported standards are not irreconcilable.  Indeed, the better reading of Form 18 and *K-Tech*, as noted by the concurring opinion in *K-Tech*, is that complying with Form 18 and *K-Tech* states a plausible claim for relief under *Twombly* and *Iqbal*.  "The significance of Form 18 is that, pursuant to Rule 84, it illustrates the 'simplicity and brevity' adequate to state a plausible claim for relief in cases alleging direct patent infringement." *K-Tech*, 714 F.3d at 1287 (Wallach, J. concurring).  As explained by Judge Wallach, the pleading requirements set forth Form 18 (and, consequently, *K-Tech*, which has not been abrogated) and *Twombly/Iqbal* can be harmonized:

> *Twombly* suggests a path to reconciliation. *Twombly* <u>expressly recognized the adequacy of the</u> <u>allegations in former Form 9</u>. *Twombly*, 550 U.S. at 565 n. 10, 127 S.Ct. 1955 (citing Form 9, Complaint for Negligence, modified and renumbered as Form 11) (hereinafter "Form 9") . . . . <u>Comparison of Form 9 with Form 18 shows each alleges as much "factual matter" as the other.</u> . . . Form 9 alleges some facts, such as "that the defendant struck the plaintiff with his car while plaintiff was crossing a particular highway at a specified date and time...." *Twombly*, 550 U.S. at 565 n. 10, 127 S.Ct. 1955. Nonetheless, it contains "conclusory allegations" in equal measure, alleging simply that the defendant's conduct was negligent. *See id.* at 557, 127 S.Ct. 1955 (instructing that "a conclusory allegation" alone is inadequate to state a claim). Similarly, Form 18 contains factual allegations, like the issuance of a valid patent, plaintiff's ownership of that patent, and that the defendant is "making, selling, and using electric motors that embody the patented invention." Although the allegation that defendant "is infringing" seems to be a legal conclusion of the type we are instructed to disregard under *Twombly*, it is no more conclusory than Form 9's allegation of "negligence." <u>Following this guidance, the *Iqbal* and *Twombly*</u> <u>standard and Rule 84 may both be given effect by holding that plausible allegations paralleling</u> <u>Form 18 are adequate to satisfy Rule 8(a).</u>

*Id.* at 1288 (emphasis added).  As noted by the Supreme Court, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.  The analysis conducted in and required by *K-Tech* is precisely the "context-specific task" contemplated by *Iqbal*.  *See K-Tech*, 714 F.3d at 1286 ("The adequacy of the facts pled depends on the breadth and complexity of both the

asserted patent and the accused product or system and on the nature of the defendant's business activities."). Thus, the holding in *K-Tech* "is entirely consistent with the framework presented by this concurring opinion; that plausible allegations conforming to Form 18 are adequate to satisfy the requisite *Iqbal* and *Twombly* standard." *Id.* at 1289 (Wallach, J. concurring).

That *Twombly* and *Iqbal* do not require more than that articulated in *K-Tech* is supported by the required elements for other types of intellectual property infringement actions to which *Twombly/Iqbal* have always been applied. For example, a plaintiff asserting a cause of action for copyright infringement need not perform any analysis describing how the accused work is substantially similar to the copyrighted work at the pleading stage; it need only allege ownership of the copyrighted work and copying by the defendant. *CoStar Realty Info., Inc. v. Field*, 612 F. Supp. 2d 660, 674 (D. Md. 2009) ("to state a prima facie case for copyright infringement, a plaintiff must allege " '(1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original.' "). The plaintiff need not allege "the specific infringing acts" nor "when the infringing acts occurred." *Id.* Simply put, "[t]here is no heightened pleading standard for copyright infringement, and [plaintiff] need only state that it had a valid copyright and the defendant infringed upon an original work." *Id.* (finding complaint sufficient where plaintiff "alleges that [defendants] infringed sixty-seven of its photographs, and ha attached a copy of the registration numbers for each photograph."). Similarly, in trademark infringement complaints, a plaintiff does not need to describe how the two marks are confusingly similar or break down the marks to its component parts for comparison. It is enough to allege ownership of a mark, use of an infringing mark in commerce in connection with the sale or offer for sale of goods or services, and that the infringing mark is likely to cause confusion. *See Potomac Conference Corp. of Seventh-day Adventists v. Takoma Acad. Alumni Ass'n, Inc.*, 2 F. Supp. 3d 758, 768 (D. Md. 2014)

14

(reciting five elements).  *Twombly* and *Iqbal* do not require either a copyright plaintiff or a trademark plaintiff to perform a detailed infringement analysis in its complaint.

Nor should CTP be required to perform an element-by-element claim chart-type analysis in its complaints as Defendants suggest, without fact or expert discovery and without claim construction, to survive a motion to dismiss.  Defendants assert – without citing a single case in support – that "Plaintiff's pleadings [must] discuss these steps [of the method], whether any of the Defendants use these steps or how the claims are infringed by Defendants."  Memo. at 7.  To suggest such is required, even under *Twombly* and *Iqbal* (which has always applied to copyright and trademark complaints) approaches the absurd.  Requiring that level of detail at the pleading stage would render meaningless the purpose of infringement contentions.  "[I]t is not just and practicable to require pleadings in this patent case to contain the same level of specificity regarding direct infringement claims as are to be provided by the preliminary infringement contentions."  *Lubrizol Specialty Prods.*, 2016 WL 775033, at *2.  Defendants are trying to create a heightened pleading standard beyond the bounds of Rule 8, *K-Tech*, or *Twombly/Iqbal*.  This is not the law.

As demonstrated in at least eleven previously filed briefs to date,[5] the Court's Orders, and in greater detail herein, CTP has properly alleged causes of action for direct patent infringement under the existing pleading standard – a standard that, according to the drafters of the revised Rules, has not changed.  Nevertheless, Defendants continue to argue that CTP's Amended Complaints do no more than assert that "because the Defendants are printing companies that presumably use computers to prepare files that are used in the printing process, the must be infringing certain claims of the '349 and '155 Patents."  Memo. at 6.  Not only has CTP properly identified a narrow category of services provided by

---

[5] *See*, *e.g.*, Docs. 142, 166, 167, 180,  187, 191, 195, 196, 197, 237, and 288.

each Defendant (that does not implicate its entire business) and filed a Notice of Asserted Claims against each respective Defendant (*see* Docs. 316-341), but the Court must bear in mind the nature of the accused services – namely, methods that are not accessible to the public, but are conducted privately within Defendants' control.  "Because the complaint in this case is directed to a patent consisting entirely of method claims . . .  it is not possible to identify a particular item as the infringing product. . . . Hence, it is unclear that the plaintiff could do more by way of identifying the accused methods than to identify them as the "activities, methods, and procedures claimed in the Patent.""  *Addiction & Detoxification Institute L.L.C. v. Carpenter*, No. 2014-1797, 2015 WL 4430128, at *4 (Fed. Cir. Jul. 21, 2015) (Bryson, J., dissenting) (non-precedential).  To require CTP to "discuss these steps [of the patented method]" and "whether any of the Defendants use these steps" (Memo. at 7) is impossible without allowing CTP direct, non-public access to each Defendant's facilities to inspect the various employed methods.  CTP has pled more than enough to place Defendants on notice of what has been accused.

Indeed, as admitted by a number of Defendants (including lead liaison counsel who filed the Consolidated Motion on behalf of Defendants), CTP's patents "relate[] to a very specific pre-press process of creating a plate to be used for printing."  *See* Docs. 152 at 1, 157 at 1, 171 at 1.  Lead liaison counsel further admits that CTP's asserted patents "[do] not claim the only possible pre-press process, and CTP does not allege in its Complaint that there are no possible non-infringing pre-press processes in the printing industry."  *Id.*  Accordingly, Defendants, by their own admission, have been placed on proper notice of the "very specific" method of printing and publishing services that are accused of infringement, which does not implicate all printing and publishing services as Defendants now claim.

The Court should view Defendants' assertions that the Amended Complaints are too "vague and uninformative" (Memo. at 2) such that Defendants must "speculate about what Plaintiff is alleging" (*id.* at 6) with considerable skepticism in light of these admissions, and, in particular, Defendants' insistence that the asserted methods are "obsolete."  Specifically, Defendants allege that:

- "It is likely that CTP avoids discussion of the patent claims because the focus of those claims on parsing low-resolution thin PostScript files and creating high-resolution fat PostScript files is an out of date method from a time when computer processing power was significantly limited compared to modern methods and that limitation made the use of high-resolution images in preparing draft page layouts more cumbersome."  (Memo. at 7) (emphasis added);

- "The current availability and commonplace use of high-resolution PDF files, or other high-resolution native files for common desktop publishing applications, make the methods described in the claims of the '349 and '155 Patents obsolete and unlikely to be used by an competitive printer."  (*id.*) (emphasis added); and

- "Plaintiff should plead facts to indicate whether and how the antiquated methods described in the '349 and '155 Patents are still in use in the printing industry generally, and by these Defendants specifically[.]"  (*id.* at 7-8) (emphasis added).[6]

Although completely outside the pleadings (the vague attempt to reference to the patents-at-issue in a general manner does not cure this defect), Defendants' detailed description of the purportedly "antiquated" methods claimed and asserted in the patents at issue demonstrates that Defendants have sufficient notice and understand what they are accused of; they simply disagree that they infringe.[7]  That does not warrant dismissal under Rule 12(b)(6) and undermines their entire argument that they would

---

[6] Moreover, CTP specifically alleges facts that, taken as true (which Defendants have struggled to do in every motion to dismiss despite the requirements of a Rule 12(b)(6) analysis) demonstrate that the methods claimed in the asserted patents "are still in use in the printing industry generally, and by these Defendants specifically" – namely, CTP's inclusion of the Printing Industry of America's Congressional statement that "[t]his method of digital workflow and plate imaging was new in the 1990s when the patent was issued but has become ubiquitous in the industry now."  Am. Compl. Ex. 7 (emphasis added).

[7] CTP does not concede that Defendants' interpretation or construction of the claims is correct, nor that the claimed methods are "out of date," "antiquated," or "obsolete."

have to "guess" or "speculate" as to the accused methods.   This is clearly so because Defendants (excluding Journal Graphics) each joined in the previously-filed motion to dismiss on 35 U.S.C. § 101 grounds [Doc. 343], in which Defendants purportedly had sufficient notice of the asserted claims in order to argue about the disclosed inventions, comment on alleged prior art, and seek a ruling that the patents claim ineligible subject matter.   In addition, some Defendants apparently had sufficient notice to support or be named petitioners in filing a petition for *inter partes* review alleging that certain prior art invalidated the patents-in-suit,[8] all of which begs the question: if Defendants do not know what the invention is, how can they have a good faith basis to file *Alice* motions and a petition for *inter partes* review?  Defendants' feigned ignorance is insufficient to support dismissal.

Defendants cannot have it both ways.   They cannot pretend the Amended Complaints are too "vague" to allow Defendants to determine what services are accused of infringing, while simultaneously arguing that the patented methods are obsolete, invalid, and cannot possibly be practiced by Defendants. Either Defendants have sufficient notice of the claims asserted against them to perform the purported infringement analysis to determine that they cannot possibly infringe (*see* Memo. at 7-8), or they do not. Coupled with the fact that CTP has provided express notice of each individual patent claim asserted against each Defendant on the same day as filing the Amended Complaints (*see* Docs. 316-341), CTP has met, and, in fact, exceeded the "existing pleading standards" for direct patent infringement.   The Consolidated Motion must be denied with prejudice.

---

[8] One day before filing the present Memorandum, PTAB declined to institute *inter partes* review based on Command, Worzalla, Sandy Alexander, Publication Printers, Specialty Promotions, and Trend Offset's petition.  *See* Case IPR2016-00008, Decision Denying Institution of *Inter Partes* Review [Paper 13] (PTAB Mar. 28, 2016).

**2.    CTP's Amended Complaints Allege Sufficient Facts To Provide Notice And Plausibility Of Its Claim For Direct Patent Infringement.**

Despite the Court's Orders finding that CTP has properly alleged direct infringement under the "existing pleading standards," Defendants continue to assert that CTP's original Complaints failed to meet that standard (and, in so doing, ignore this Court's prior rulings), and the Amended Complaints fail to meet the basic pleading requirements under the Federal Rules of Civil Procedure.   In particular, Defendants assert that the Amended Complaints' references to Defendants' infringing "printing and publishing services," including each Defendant's "method of generating a plate-ready file configured for the creation of a printing plate, said plate-ready file being associated with page layouts and being provided in real time from a remote location using a communication network and selling and offering services that include this method" is vague and fails to place Defendants on notice as to what they must defend and CTP must assert a particular infringing product or service.  *See*, *e.g.*, Amended Complaint [Doc. 306] at ¶¶ 47-49, 64-66;[9] Memo. at 2-6.  Defendants assert that CTP's allegations are overly broad because they do not identify "the instrumentality of each Defendant's alleged infringement" or "explain[] in some fashion the connection between the patent and the accused instrumentality."  Memo. at 5.  Defendants do not contest the sufficiency of CTP's Amended Complaints with respect to the remaining elements of *K-Tech*.  Defendants' only alleged ground for dismissal is their contention that CTP ""direct[s] the Defendants to rely on their own knowledge and experience to guess which of their systems and methods might be implicated by Plaintiff's vague allegations." Memo. at 6.

---

[9] To simplify citations, CTP will cite to its Amended Complaint against Command [Doc. 306] as an exemplary pleading asserting both the '155 and '349 Patent.  CTP has not alleged both patents against all Defendants, nor asserted identical patent claims against all Defendants.  Nevertheless, CTP's arguments made herein shall apply to all Amended Complaints [Docs. 298-315].

Defendants' arguments must fail for two reasons.  First, as the Court has already held, CTP has satisfied the *K-Tech* standard by alleging infringement through a general category of products or services and, by implication, Defendants were able to identify the alleged infringement based on the pleading at that time.   Since the Court previously found that Defendants could identify alleged infringement sufficient based on the allegations in the Complaints, it cannot be the case that abrogation of Form 18 has suddenly "cloaked" their infringement from ready determination.  Second, the district court cases upon which Defendants rely were decided before the Federal Circuit's ruling in *K-Tech* and are clearly distinguishable.

### 3.   CTP Satisfied The *K-Tech* Standard By Alleging Infringement Through A General Category Of Products Or Services.

In their rush to assert that the new Rules somehow created a new, heightened pleading standard (despite the Supreme Court acknowledging that its decision in *Twombly* did not create a heightened standard), Defendants misconstrue the "existing pleading standard" for a claim for direct patent infringement.  A plaintiff is not required to identify a specific device or product within a system to meet the "existing pleading standard[]."   *See K-Tech*, 714 F.3d at 1286 ("We do not read Form 18 -- or *R+L Carriers* -- to require that a plaintiff identify an accused device by name.").  A plaintiff may satisfy the *K-Tech* standard by alleging infringement through a general category of product or service.  *Id.*[10]   This is

---

[10] *See also, Seoul Laser Dieboard Sys. Co., Ltd. v. Serviform, S.r.l.*, 957 F.Supp.2d 1189, 1196 (S.D. Cal. 2013) ("Defendants suggest that Plaintiff must identify the particular claims that are being infringed as well as specific products accused on infringement.  The Court disagrees.  Form 18 does not require either.") (citing *In re Bill of Lading* and *K-Tech*) (internal quotations omitted); *Infineon Tech. AG v. Volterra Semiconductor Corp.*, No. C-11-6239, 2012 WL 5988461, at *2 (N.D. Cal. Nov. 29, 2012) (citing *In re Bill of Lading* and approving identification of "master controller products" as accused devices, and noting that, "to the extent the [complaint] identified specific products, [Plaintiff] 'provide[d] detail *beyond* that required by Form 18.'") (emphasis in original); *CBT Flint Partners, LLC v. Goodmail Sys., Inc.*, 529 F.Supp.2d 1376, 1378-80 (N.D. Ga. 2007)  (consistent with *K-Tech* and *In re Bill of Lading*, district court referred to form for direct patent infringement in Appendix to the Federal

especially true where operation of a method or system is not fully ascertainable without discovery.  *Id.*

"A defendant cannot shield itself from a complaint for direct infringement by operating in such secrecy

that the filing of a complaint itself is impossible."  *Id.*; *see also*, *XPoint Tech., Inc. v. Microsoft Corp.*,

730 F.Supp.2d 349, 353 (D. Del. 2010) ("all a plaintiff ordinarily has access to at this stage of litigation

is public information and knowledge.") (citing *McZeal*, 501 F.3d at 1358).

The District of Delaware has noted the unique difficulties presented when the asserted patent is a

method claim (and not "a product or a service sold to consumers and available for public inspection by

plaintiff").  *Network Congestion Solutions, LLC v. A T & T Inc.*, No. 14–894–SLR *et al.*, 2015 WL

3542949, at *2 (D. Del. June 4, 2015).  In such cases, "[a] rational query is whether there is any way for

a patent holder, such as plaintiff, to present—in a complaint—the kind of factual detail defendants

suggest is required under the *Iqbal/Twombly* standard."  *Id.* (reasoning that "[d]rawing on my judicial

experience and common sense, I would say 'no.'").  "Indeed, if the practices identified by plaintiff

operate through defendants' proprietary software, then it is reasonable to conclude that the notice

requirements have been met, based on the quantity and quality of publicly available information."  *Id.*

Rather, to follow Defendants' reasoning here "<u>would deny an entire class of patent holders the</u>

<u>opportunity to even get before a court to test the strength of their intellectual property rights through</u>

<u>discovery</u>, let alone to enforce such rights." *Id.* (emphasis added).[11]

---

Rules of Civil Procedure and held that the following was sufficient: "[Defendant] makes, uses, offers to
sell, and/or sells within the United States and this judicial district products and/or services, including but
not limited to <u>email certification services</u>, which include and/or practice one or more of the inventions
claims in the [patents]."") (emphasis added).

[11] *See also*, *Addiction & Detoxification Institute*, 2015 WL 4430128, at *4 (Bryson, J., dissenting) (non-
precedential) ("Because the complaint in this case is directed to a patent consisting entirely of method
claims (including several 'therapy' claims), it is not possible to identify a particular item as the
infringing product. . . . Hence, <u>it is unclear that the plaintiff could do more by way of identifying the</u>

CTP has alleged facts sufficient to meet the element of *K-Tech* requiring "a statement that defendant has been infringing the patent by making, selling, and using [the device] embodying the patent." *K-Tech*, 714 F.3d at 1283. CTP has identified the "device" at issue for the '349 and '155 Patents, namely, Defendants' "method of generating a plate-ready file configured for the creation of a printing plate, said plate-ready file being associated with page layouts and being provided in real time from a remote location using a communication network and selling and offering services that include this method (the "Infringing Services")." Am. Compl. ¶ 47.[12] The "device" in this case is a specific subset of each Defendant's printing and publishing services, which is an accurate and permissible general category of services. *See, e.g.*, *Clouding IP, LLC v. Amazon.com, Inc.*, C.A. Nos. 12–641–LPS, 12–642–LPS, 12–675, 2013 WL 2293452 (D. Del. May 24, 2013) ("products and/or services for distributed computing," "products and/or services for cloud computing," and "cloud computing products and/or services" found to be sufficient to satisfy Form 18 standard). In fact, the identification of "printing and publishing services" is used repeatedly in the '349 and '155 Patent. *See* Am. Compl. Exs. 8, 9.

Indeed, CTP has even gone beyond providing notice of the general category of each Defendant's infringing services by adding modifiers to the services. The Amended Complaints state that each Defendant's "[e]xemplary Infringing Services include, without limitation, systems and methods used by [Defendants] in connection with, at least, its <u>offset sheet-fed and web printing services that involve</u>

---

<u>accused methods than to identify them as the "activities, methods, and procedures claimed in the Patent.""</u>) (emphasis added).

[12] While there is no pleading requirement to specifically include each element of the claims of the asserted patent, CTP also provided notice that has been infringed, *see* Compl. ¶ 28. *See K-Tech*, 714 F.3d at 1284 (citing *Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000) ("[A] plaintiff in a patent infringement suit is not required to specifically include each element of the claims of the asserted patent.")).

workflows related to plate-ready files and/or the generation of such files." *Id.* at ¶¶ 49, 66 (emphasis added). The Amended Complaints also narrow the category of Infringing Services for each Defendant, by identifying those services that would <u>not</u> infringe the Patents-in-Suit, including, "variable data printing because that type of printing does not involve the generation of plate-ready file." *Id.* at ¶ 50. The '349 Patent and '155 Patent, attached to the Amended Complaints, do not purport to cover all areas involving printing and publishing services, which provides each Defendant with additional notice of its accused services. It is very clear that the patents cover computer-to-plate technology (a narrow area) related to the generation of plate-ready files through use of a communication network (an even narrower area). *See, e.g.*, Am. Compl. Ex. 8, 9. The Amended Complaints further explain such technology and the types of services that would incorporate systems and methods disclosed in the patent. *See id.* at ¶¶ 9-18.[13]

Further, the Amended Complaints expressly state the reason why CTP has not alleged the name of a specific product or service that infringes the '349 and/or '155 Patents by stating, "[each Defendant] has not given the Infringing Services a specific and publicly-available name. Accordingly, [CTP] cannot provide the name used by [each Defendant] for such services without the benefit of discovery." *Id.* at ¶¶ 48, 65; *see also*, *K Tech.*, 714 F.3d at 1286 (finding that naming a device or service was not

---

[13] In a recent non-precedential opinion, the Federal Circuit held that a single allegation that the defendants infringe by "making, using, selling, offering for sale in the United States activities, methods and procedures claimed in the Patent" was insufficient under Form 18. *Addiction & Detoxification Institute*, 2015 WL 4430128, at *3 (non-precedential). However, as demonstrated throughout the Amended Complaint, CTP alleges significantly more factual detail about Defendants' specific subset of infringing services – namely, those services that involve computer-to-plate technology used to generate plate-ready files through use of a communication network and prepress workflow. Such allegations are proper under *K-Tech* and *Addiction & Detoxification Institute*. *See id.* ("There must be <u>some</u> allegation of specific services or products of the defendants which are being accused.") (emphasis added).

required "especially when the operation of those systems is not ascertainable without discovery."). Based on the foregoing, CTP goes above and beyond the pleading requirements of *K-Tech*.

The patents at issue in this case deal with certain technologies involved in the prepress workflow, and specifically, computer-to-plate technology.  *See* Am. Compl. Ex. 8, 9.  Defendants have admitted that this prepress workflow is "very specific."  *See* Docs. 152 at 1, 157 at 1, 171 at 1.  Computer-to-plate technology is an imaging technology used in modern printing processes in the process of creating a printing plate.  These terms are well-known and have an established meaning within the printing industry.  As Michael Makin, president and CEO of Printing Industries of America ("PIA"), the largest trade association representing the printing and graphic communications industry in the United States, testified before the Senate Committee on the Judiciary, the inventions in the '349 and '155 Patents

> relate[] to how a digital file, like a PDF file, is handled and manipulated in a print production operation up until the time it is used to image a printing plate.  This method of digital workflow and plate imaging was new in the 1990s when the patent was issued but has become <u>ubiquitous in the industry now</u>.

Am. Compl. ¶ 43, Ex. 7 (Statement of Michael F. Makin, MBA, President & CEO of Printing Industries of America, Before the Senate Committee on the Judiciary, titled "Protecting Small Business and Promoting Innovation by Limiting Patent Troll Abuse," dated December 17, 2013, at 4-5) (emphasis in original).   In addition to attaching a copy of the '349 and/or '155 Patent to the Amended Complaint (which is part of the pleading for all intents and purposes, *see* Fed. R. Civ. P. 10(c)), CTP further explained the technology disclosed in the '349 and '155 Patents and the types of services that would incorporate the systems and methods disclosed in the patent at issue (*see* Compl. ¶¶ 9-18, Exs. 8, 9).

Notwithstanding CTP's identification of each Defendant's general services (printing and publishing services) and specific services ("offset sheet-fed and web printing services that involve workflows related to plate-ready files and/or the generation of such files"), and explanation of the

technology at issue, Defendants still argue that it will have to resort to "speculation" or "guesswork" to determine which of its services utilize infringing methods and systems. Memo. at 6. Such an argument attempts to blur the line among the different types of printing processes, and essentially amounts to Defendants "playing dumb." As noted above, Defendants both claim ignorance as to the claims asserted against it, then unequivocally state that they do not practice the "antiquated" methods of the patents at issue. Moreover, Defendants claim to be sophisticated printing providers. CTP has already provided to the Court various examples of each Defendant's claims regarding their technological prowess and experience, and CTP expressly incorporates by reference its previous responses to each motion to dismiss as though fully stated herein.

By means of example and not limitation, according to Specialty Promotion's website located at www.specialtyprintcomm.com (of which the Court may take judicial notice),[14] Specialty Promotion was "[f]ounded on decades of print innovation" and is a "single-source provider of printed products." *See* Specialty Promotion's "Printing" webpage at http://specialtyprintcomm.com/printing.html (last accessed March 29, 2016). Indeed, Specialty Promotion boasts that it "continues to push forward breaking new

---

[14] "A court may take judicial notice of information publicly announced on a party's web site, so long as the web site's authenticity is not in dispute and 'it is capable of accurate and ready determination.'" *Jeandron v. Bd. of Regents of Univ. Sys. of Maryland*, 510 Fed. App'x 223, 227 (4th Cir. 2013) (citing Fed. R. Evid. 201(b); *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) (holding that "it is not uncommon for courts to take judicial notice of factual information found on the world wide web")); *see also*, *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (holding that a district court could take judicial notice of a state agency website); *Gemstar Grp. USA, Inc. v. Ferragamo USA, Inc.*, No. H-08-1822, 2008 WL 4858363, at *7 n.40 (S.D. Tex. Nov. 10, 2008) (taking judicial notice of defendant's website); *In re Everglades Island Boat Tours, LLC*, 484 F.Supp.2d 1259, 1261 (M.D. Fla. 2007) (taking judicial notice of a state agency website); *Mitchell v. Nix*, CV 105-2349, 2007 WL 779067, at *4 (N.D. Ga. Mar. 8, 2007) (taking judicial notice of a state agency website); *Vlahos v. Schroeffel*, CV No. 02-CV-019DLI, 2006 WL 544444, at *5 (E.D.N.Y. Mar. 6, 2006) (taking judicial notice of a university hospital's website); *Hendrickson v. eBay, Inc.*, 165 F.Supp.2d 1082, 1084 (C.D. Cal. 2001) (taking judicial notice of a defendant business's website); *Energy Automation Sys. v. Saxton*, 618 F.Supp.2d 807, n.1 (M.D. Tenn. 2009).

ground and bringing new technologies to market" and that "[t]his bedrock of printing knowledge is the backbone of an execution platform that can match virtually any need with an efficient production method." *Id.* Similarly, American claims to be "an infinite resource for information on printing matters of all kinds." *See* American's "About Us" webpage at http://americanprintingco.net/about-us/ (last accessed March 29, 2016). Arandell considers itself to be "a leading catalog printing and direct marketing company," boasting that it "has grown to be . . . one of the top three catalog printers in the country[.]" *See* Arandell's "Home" and "Company History" webpages, at http://arandell.com/ and http://arandell.com/about/company-history/ (last accessed March 29, 2016). Cenveo considers itself to be the "world leader in the management and distribution of print and related offerings." *See* Cenveo's "ABOUT US/HISTORY" webpage at http://www.cenveo.com/about-us-history (last accessed March 29, 2016). Command considers itself to be "[a] national leader in the book manufacturing industry." *See* Command's "Fast Facts" page at http://www.commandweb.com/facts.htm (last accessed March 29, 2016). DirectMail considers itself to be "an industry leader providing Intelligent Marketing Solutions to the nation's leading brands, fundraisers and midmarket enterprises" that has "spent over forty years making sure that our capabilities are perfectly aligned with your print communications demands." *See* DirectMail's "Home" webpage and "Production Distribution" webpage, located at http://www.directmail.com/ and http://www.directmail.com/solutions/production-distribution/, respectively (last accessed December 14, 2015). EBSCO touts itself as "an international corporation producing products and services for consumers and businesses." *See* EBSCO's "About" webpage at http://www.ebscoind.com/about/ (last accessed March 29, 2016). Ennis considers itself to "industry leader" and "a leading manufacturer and supplier of print and apparel products for the wholesale trade." *See* Ennis' "About" webpage at http://www.ennis.com/about/ (last accessed March 29, 2016). FCL

Graphics considers itself to be "on top of all of the processes and procedures that go on between the creation of a print layout through production – with prepress affecting every one of them." *See* FCL's "Digital Prepress" webpage at http://www.fclgraphics.com/services-solutions/digital-prepress/ (last accessed March 29, 2016). GEO Graphics advertises its "stellar reputation for award-winning web printing and sheet-fed printing." *See* GEO Graphics' "About Us" webpage at http://www.geographicsinc.com/about.asp (last accessed March 29, 2016). Indexx "prides itself on being the best commercial printer in the Upstate of South Carolina." *See* Indexx's "Home" webpage located at http://www.indexx.com (last accessed March 29, 2016). Jet Printing claims that it offers "leading edge technology." *See* Jet Printing "Home" webpage located at http://www.jetprintingtn.com (last accessed March 29, 2016). Journal Graphics considers itself to be "the leading web printer in the Pacific Northwest." *See* Journal Graphics' "What We Do" webpage located at http://www.journalgraphics.com/what-we-do/ (last accessed March 29, 2016). Midland boasts about its "[u]nmatched experience, state-of-the-art equipment, and passionate attention to detail." *See* Midland's "Offset Printing" webpage at https://www.elandersamericas.com/productsandservices/pages/offsetprint.aspx (last accessed March 29, 2016). Publication Printers considers itself to be an "one of the leading web printers in the Western United States." *See* Publication Printers' "About Us" webpage at http://www.publicationprinters.com/about.html (last accessed March 29, 2016). Taylor advertises that its "state-of-the-art production facility is equipped with the latest technology. " *See* Taylor's "About Us" webpage at http://taylorspecialtybooks.com/about-us/ (last accessed March 29, 2016). Sandy Alexander considers itself to be "a marking communications leader" and who is "[l]eading and inspiring our industry in sustainable practices." *See* Sandy Alexander's "Home" and "About" webpages at

http://www.sandyinc.com/ and http://www.sandyinc.com/about/ (last accessed March 29, 2016) (capitalization omitted). Schumann claims that it "delivers superior skills and the latest technology in printing" and offers "the most advanced thermal computer to plate electronic prepress services in the industry." *See* Schumann's "About Us" and "Prepress" webpages, at http://www.spiweb.com/aboutUs.html and http://www.spiweb.com/Prepress.html (last accessed March 29, 2016). Times Printing claims that it "[u]tilizes prepress technology and capabilities that are absolute cutting-edge. We can efficiently work with virtually any workflow a client may be using." *See* Times Printing's "Did You Know?" webpage, located at http://www.timesprintingco.com/did_you_know.html (last accessed March 29, 2016). Trend advertises its "continued investment in equipment and technology." *See* Trend's homepage at http://www.trendoffset.com (last accessed March 29, 2016). Valassis considers itself to be "a leader in intelligent media delivery." *See* Valassis' "What We Do" webpage http://www.valassis.com/about-us.aspx (last accessed March 29, 2016). Versa Press considers itself to be "a leading manufacturer of trade, religious, educational, medical, university, and commercial publications." *See* Versa Press' "About" webpage at https://www.versapress.com/about/ (last accessed March 29, 2016). Walton Press claims to "offer a full range of digital pre-press services that can be tailored to your company's individual requirements and needs." *See* Walton's "Pre-press Services" webpage at http://www.waltonpress.com/PrePressServices-20 (last accessed March 29, 2016). Worldwide considers itself to be "a customer-focused, service-driven leader in the ticket design and printing business." *See* Worldwide's About Us" webpage at http://www.worldwideticketcraft.com/aboutus.htm (last accessed March 29, 2016). Worzalla considers itself to be "a state-of-the-art, full-service printing and binding facility that has been operating for over 100 years." *See* Worzalla's "Our Company" webpage at

http://www.worzalla.com/our-company/general-info.html (last accessed March 29, 2016).  There is no shortage of claims made by Defendants touting their alleged expertise.  Thus, it is unlikely that Defendants, with their "decades of print innovation," would not be able to differentiate between its proffered services that use this "ubiquitous" technology to generate a plate-ready file, and those services that do not.

Using just one commonly used "printing services" as an example, variable data printing ("VDP") demonstrates Defendants' willful blindness to the subject matter at issue in this lawsuit.  For example, on Specialty Promotion's website, Specialty Promotions advertises its "variable data", "variable hybrid imaging", "variable data imaging" and direct mail and personalization capabilities, wherein "your messages are tailored, relevant and powerful" and customers can "[m]atch individual consumer interests" because ""[d]ifferent images speak to different people." *See* Specialty Promotions' 4 Color Hybrid Imaging" webpage at http://specialtyprintcomm.com/4CHI.html, "SPC: An Overview" video, available on Specialty Promotions' homepage at www.specialtyprintcomm.com, and "SPC: From Paper to People" video, available on Specialty Promotions' "Printing" webpage at http://specialtyprintcomm.com/printing.html (all pages last accessed March 29, 2016).  The ability to change or customize the text and image on each piece of direct mail through VDP is the polar opposite of a system or method that generates a plate-ready file.  A plate-ready file, such as that used to create printing plates, does not permit the ability to change or customize the text and image on each piece of direct mail.  Contrary to Defendants' claims, CTP's Amended Complaints do not implicate all of Defendants' services, but rather, a specific subset of services.

It strains credulity for Defendants to assert that they are unable to distinguish which of their services are subject to the infringement claims.  Memo. at 2-8.  As noted above, Defendants are not

mom-and-pop shops.  Instead, they each claim to be sophisticated enterprises that pride themselves on their capabilities and expertise, meaning each Defendant is able to understand the technology at issue here and the technology that it uses.  Defendants' assertion that they cannot tell which of their respective services are at issue is the equivalent to a multisport professional athlete representing to this Court that he or she cannot tell the difference between a baseball and a football.  CTP has adequately identified each Defendant's accused instrumentalities beyond what is required by *K-Tech*, such that Defendants can determine which of its products are "baseballs" and which are "footballs."

Even if Defendants' claim that they are unable to distinguish which "systems and methods might be implicated by Plaintiff's vague allegations" (Memo. at 6) was not disingenuous, CTP's Amended Complaint is not Defendants' only means to identify and investigate the claims against it.  CTP has filed Notices of Asserted Claims that specifically identify the precise patent claims asserted against each individual Defendant.  *See* Docs. 316-341.  Moreover, during the course of discovery, details regarding the bases of CTP's allegations will be supplied.  *See Lubrizol Specialty Prods.*, 2016 WL 775033, at *2 ("it is not just and practicable to require pleadings in this patent case to contain the same level of specificity regarding direct infringement claims as are to be provided by the preliminary infringement contentions."); *Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, 935 F.Supp.2d 772, 776 (D. Del. 2013) (disregarding defendant's concern that it could not identify accused devices among more than 20,000 products because topic would be the subject of discovery); *Infineon Tech.*, 2012 WL 5988461 at *3 (court not persuaded by defendant's assertion that it lacks adequate notice where the identified general categories of products constitute virtually every one of the more than 100 different products defendant has developed because plaintiff would serve infringement contentions); *Applera Corp. v. Thermo Electron Corp.*, No. Civ. A. 04-1230, 2005 WL 524589, at *1 (D. Del. Feb. 25, 2005)

(finding allegation of infringement of patent "by making, using, offering for sale and selling mass spectrometer systems that are encompassed by or the use of which is encompassed by one or more claims of the [patent]" sufficient, rejecting argument that said pleading was too vague and ambiguous for defendant to frame a response, and observing that the goal of narrowing the issues of the litigation as early as possible is best achieved through traditional means of discovery).

Finally, as a practical matter, each Defendant's accused instrumentality is a service that utilizes a system or process to generate a plate-ready file, not a product that can be reverse engineered.[15]  Not only is it impractical to expect a patentee to "reverse engineer" a service offered by an infringing party, but it is also unnecessary to create a basis for CTP's Amended Complaint in light of PIA's statements that computer-to-plate technology is "ubiquitous" throughout the printing industry.  Moreover, as a purported leaders in the industry, it is reasonable to infer that Defendants would be familiar with this "ubiquitous" technology.  Thus, CTP's identification of each Defendant's infringing services is neither generic nor vague, especially in the context of the attached patent.  Accordingly, CTP's Amended Complaints meet the burden set by Federal Circuit case law, and the Consolidated Motion should be denied.

**4.    Defendants' Cited Authority Pre-date *K-Tech* And Ignore Contrary Pre- And Post-*K-Tech* Cases.**

In the Consolidated Motion, Defendants ignore *K-Tech* and rely upon two non-controlling district court cases, both of which were decided before *K-Tech* (and the effective date of the amended Rules).  The decisions were rendered prior to *K-Tech*'s clear decree that the Federal Circuit "does not read Form 18 -- or *R+L Carriers* -- to require that a plaintiff identify an accused device by name."  *K-*

---

[15] "There is no absolute requirement that a plaintiff engage in reverse engineering of an accused product prior to filing an infringement claim."  *Bender v. Integrated Prods., Inc.*, No. C 09-01152, 2010 WL 2991257, at *5 (N.D. Cal. Jul. 29, 2010).

*Tech*, 714 F.3d at 1286.  Accordingly, Defendants' cited authorities apply an incorrect legal standard. *Compare id. with Adiscov, LLC v. Autonomy Corp.*, 762 F.Supp.2d 826, 831-32 (E.D. Va. 2011)[16] (ignoring *K-Tech* and dismissing complaint because plaintiff "never identifies any particular products or services that are alleged to be infringing").[17]

Additionally, Defendants' reliance upon *Prism Techs., LLC v. Sprint Spectrum L.P.*, Case No. 8:12-CV-123, 2012 WL 3867983 (D. Neb. Sept. 6, 2012) is misplaced because the findings in that case is distinguishable on the facts.  There, the court found the patentee's identification of "various wireless products and data services" to be too broad because it arguably implicated "Sprint's entire wireless service" without explanation of any "specific portions of those services."  *Sprint*, 2012 WL 3867983, at *5.  Here, CTP's Amended Complaints do not implicate each Defendant's entire printing business, but instead specifies and restricts infringement to only those printing and publishing services that involve the generation of a plate-ready file – in other words, a "specific portion of [Defendant's] services."

Defendants' failure to cite any post-*K-Tech* authority – or recognize that the abrogation of Rule 84 "does not alter existing pleading standards" – is significant because district courts post *K-Tech* have largely rejected the very same arguments made by Defendants.  These pre- and post-*K-Tech* cases

---

[16] Memo. at 3-6.

[17] Moreover, *Adiscov* is factually distinguishable from the allegations of CTP's Amended Complaint. For example, unlike the plaintiff in *Adiscov* who alleged infringement of a vague, broad category of "legal discovery software and services" by a broad category of infringing "products and services," (762 F.Supp.2d at 830), CTP has detailed the specific, narrow category of patented technology (*i.e.*, method of generating plate-ready file configured for creation of printing plate) as well as the technology that is allegedly infringing (*i.e.*, systems and methods concerning offset sheet-fed and web printing services that involve workflows related to plate-ready files) and that it not infringing (*i.e.*, variable data printing). Defendants also rely on *Adiscov* for the purported proposition that accused instrumentalities must be particularized with each defendant when a patent owner sues multiple defendants.  Not only does *Adiscov* not reach this finding, but *Adiscov* involved multiple defendants in the same case, whereas there is a single defendant in each member case, which have been consolidated only for pretrial purposes.  *See generally id.*

rejecting Defendants' arguments were decided and made available prior to Defendants' filing of the Consolidated Motion (and specifically referenced by CTP in its Prior Responses), yet were not referenced anywhere in its motion or memorandum. For instance, the Eastern District of Texas rejected Defendants' precise argument, holding that a claim for direct patent infringement need only specify: (1) the asserted patent; and (2) a general description of the allegedly infringing product. *Innovative Automation LLC v. Vudu, Inc.*, No. 2:13-CV-1109-JRG, 2014 WL 4090528, at \*2 (E.D. Tex. Aug. 19, 2014) (citing *Rmail Ltd. v. Right Signature, LLC*, No. 2:11-CV-300-JRG, 2012 WL 2595305, at \*1 (E.D. Tex. July 5, 2012)). There, the complaint alleged infringement by "the Vudu content delivery product and service" and cited to Vudu's website, which the court noted generally described "a set of web-based services for streaming movies over the internet." *Id.* The court found that this was sufficient under existing pleading standards, and denied the defendant's motion to dismiss. *See also*, *PanTaurus LLC v. Wells Fargo & Co.*, No. 1:14-cv-450, Order Denying Defendants' Motion to Dismiss Direct Infringement Claims [Dkt. 24] (E.D. Tex. Mar. 11, 2015) (unpublished) (finding identification of infringing services as "digital computer systems comprising one or more Hadoop-compatible file systems" and describing "components of these instrumentalities as 'including without limitation buses, processors, a data storage device, and a switch'" sufficient under Form 18 and *K-Tech*) (true and correct copy attached hereto as **Exhibit 1**).

The District of Delaware similarly rejected Defendants' arguments in the context of allegations of infringement related to general product and services categories. *Clouding IP*, 2013 WL 2293452. There, Clouding IP filed several lawsuits against multiple defendants that ultimately were consolidated, including one against Oracle Corporation, wherein Clouding IP asserted infringement of numerous patents covering methods and systems generally related to cloud-based computing. *Id.* at \*1. Oracle

filed a motion to dismiss, asserting that Clouding IP's allegations that Oracle infringed the patents-in-suit by making, using, selling, and offering for sale, among other general areas, "products and/or services for distributed computing," "products and/or services for cloud computing," and "cloud computing products and/or services" failed to sufficiently plead claims for direct infringement because such allegations were "generalizations about the field of technology to which the patent purportedly relates" and failed "to identify any particular commercial product or service" that directly infringes the patents-in-suit. *Clouding IP, LLC v. Oracle Corp.*, Case No. 12-642-LPS, Dkt. 19 at 4, 11 (D. Del.) (consolidated with *Clouding IP, LLC v. Amazon.com, Inc.*, Case No. 12-641-LPS, after filing) (copy with exhibits omitted attached hereto as **Exhibit 2**). Oracle argued, "Clouding also does not provide the level of factual detail contemplated by Form 18, which requires the plaintiff to identify a specific patented invention, a hypothetical 'electric motor,' and to allege that the defendant has used the same patented electric motor." *Id*. at 9. Oracle further asserted that Clouding IP's claims should be dismissed because Clouding did not allege "*what* functionality infringes, or any facts that show how it performs even one step of a claimed method." *Id*. at 12.

The District of Delaware rejected both arguments. The court held that, "[a]s it related to accused products, [the existing pleading standard] requires only identification of a general category of products for example 'electrical motors.' Accordingly, complaints frequently survive a motion to dismiss when they accuse a general category of products." *Clouding IP*, 2013 WL 2293452 at *2. Further, the court held, "[the existing pleading standard] does not require Clouding to specify what functionality infringed, or any facts that show how [Oracle] performs even one step of a claimed method." *Id*.

The Northern District of California also denied a motion to dismiss that sought to require additional specificity beyond Form 18 in pleading a claim for patent infringement. In *Redd Grp., LLC v.*

*Glass Guru Franchise Sys., Inc.*, Case No. 12-cv-040702013, 2013 WL 3462078 (N.D. Cal. Jul. 8, 2013), the plaintiff asserted infringement of a certain patent entitled "Glass Grinding System and Method" against the defendants. *Id.* at *1. In response, the defendants moved to dismiss, asserting that the plaintiff was required to plead allegations that the defendant performed each step of the method claimed in the patent-at-issue. Relying on *In re Bill of Lading*, the court rejected such additional specificity and stated

> Defendants do not point to any authority that imposes the additional pleading requirement they rely upon here. Though a plaintiff alleging infringement of a method patent must ultimately prove that the infringer performed each step of the claimed method, *see Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1328 (Fed. Cir. 2008), the ultimate burden of proof does not apply at the pleading stage. Indeed, the Federal Circuit's decision in *Bill of Lading* squarely forecloses Defendants' argument. There, the Federal Circuit held, based on Form 18, that patent plaintiffs need not "plead facts establishing that each element of an asserted [patent] claim is met." *In re Bill of Lading*, 681 F.3d at 1335. "Indeed, a plaintiff need not even identify which claims it asserts are being infringed." *Id.* Nor must a plaintiff identify the specific product that infringes the patent. *K-Tech*, 714 F.3d at 1286. Thus, while a method patent plaintiff must ultimately prove infringement of each step in the claimed order, "nothing in *Twombly* or *Iqbal* demands this level of factual specificity at the pleading stage. Such a requirement would be dangerously close to requiring a plaintiff to prove he is entitled to relief at the pleading stage." *In re Bill of Lading*, 681 F.3d at 1342. "[W]hat is necessary is that facts, when considered in their entirety and in context, lead to the common sense conclusion that a patented method is being practiced." *Id.* at 1343.

*Id.* at *3 (emphasis added).

Not only have Defendants once again cited only to pre-*K-Tech* cases, but Defendants also presents a one-sided handful of cases dismissing claims of infringement without setting forth any contrary pre-*K-Tech* case law. Defendants omit the numerous pre-*K-Tech* cases where courts found pleading a general category of products or services is sufficient to meet the pleading standard for direct patent infringement. For example, the Eastern District of Texas has rejected Defendants' exact argument that a plaintiff must identify at least one product or service that it accuses of infringing. *See*

35

*LML Patent Corp. v. Nat'l Bank of Daingerfield*, No. 2:09-cv-00180-TJW, 2011 WL 1478517, at *2 (E.D. Tex. Mar. 24, 2011).   There, the plaintiff alleged only that "Defendants provide products and services for *payment services* that fall within one or more claims of the 220 Patent."   *Id.* (emphasis in original).   The court found that the identification of "payment services" is "similar to the electric motor example provided in Form 18," such that the complaint "contains enough detail to allow Defendants to answer and thus meets the notice pleading required to survive a Rule 12(b)(6) motion."   *Id.* (internal citations omitted).   *See also*, *e.g.*, *Displeigh, LLC v. Samsung Elecs. Am., Inc. et al.*, No. 3:11-cv-2977-N, Order [Dkt. 38] (N.D. Tex. May 8, 2012) (denying motion to dismiss and finding allegation of "devices . . . that operate as picture frames configured to electronically display digital images, [specifically] Samsung's touchscreen interface smartphones and tablets" sufficient) (true and correct copy attached hereto as **Exhibit 3**); *Xpoint Tech.*, 730 F.Supp.2d at 355 (denying motion to dismiss and finding that allegation "manufactures, uses, sells and offers to sell, and/or imports . . . products and services that infringe, directly and/or  indirectly . . . one or more claims of the '028 patent in violation of 35 U.S.C. § 271" satisfied Form 18 requirement for the identification of a "general category of products."); *VoiceFill, LLC v. W. Interactive Corp.*, Case No. 8:11-CV-421, 2012 WL 1949378, at *6-7 (D. Neb. May 29, 2012) (denying motion to dismiss claims that did not provide specific products, services, or methods related to interactive voice response technology); *Motivation Innovations, LLC v. Express, Inc.*, Case No. 11-615-SLR-MPT, 2012 WL 1415412, at *3 (D. Del. Apr. 24, 2012) (denying motion to dismiss claims involving "a general class of allegedly infringing products or methods" - namely, "coupon and discount programs and systems"); *Elen IP LLC v. ArvinMeritor, Inc.*, Case No. 2:11-cv-00140, 2011 WL 3651113, at *3-4 (W.D. Wash. Aug. 18, 2011) (denying motion to dismiss claims involving "at least electronic stability systems and methods for warning of a tip over condition in

a motor vehicle carrying a cargo load"); *CBT Flint Partners, LLC*, 529 F.Supp.2d at 1378-80 (finding "email certification services, which include and/or practice one or more of the inventions claims in the [patents]" was sufficient identification of the accused services); *Applera Corp.*, 2005 WL 524589, at *1 (finding sufficient allegation of infringement of patent "by making, using, offering for sale and selling mass spectrometer systems that are encompassed by or the use of which is encompassed by one or more claims of the [patent]"); *Infineon Tech.*, 2012 WL 5988461 at *2 ("[T]o the extent the [complaint] identified specific products, [Plaintiff] 'provide[d] detail *beyond* that required by Form 18.'") (emphasis in original).

As demonstrated herein, Defendants have cherry-picked two previously unsuccessful pre-*K-Tech* decisions to support their request for dismissal.  Neither of Defendants' cited authority was decided under the "existing pleading standard" that is binding upon this Court, and CTP respectfully submits that neither should persuade this Court to grant Defendants' Consolidated Motion.

**D.    The Answering Defendants Are Precluded From Joining The Consolidated Motion.**

The Answering Defendants should be precluded from joining the Consolidated Motion on Rule 12(b)(6) grounds because they have each filed Answers.  It is black letter law that a 12(b)(6) motion "must be made before pleading is a responsive pleading is allowed."  Fed. R. Civ. P. 12(b).  To get around this hurdle, the Answering Defendants attempt to characterize the joint motion as one for judgment on the pleadings under Rule 12(c).  *See* Memo. at 1 n.1.  However, pursuant to the Court's Second Procedural Order [Doc. 292], Defendants were expressly prohibited from including grounds for dismissal other than under Rule 12(b)(6).  Rather, the Court instructed Defendants to file a separate notice to "identify any grounds for dismissal not included in the *Alice* (§ 101) and Rule 12(b)(6) motions that they intend to assert by motion" by March 8, 2016.  Although some Defendants noticed their intent

to file motions to dismiss under Rule 12(b)(1) [Doc. 347], none of the Answering Defendants filed any notice with the Court of its intent to assert "other dismissal grounds" under Rule 12(c). Accordingly, the answering Defendants should be stricken from the Consolidated Motion [Doc. 345] and barred from re-filing a motion under Rule 12(c).

The Answering Defendants likely will argue that the amendments to the Federal Rules comprise an "intervening change in law" to excuse their disregard of proper procedure and this Court's Second Procedural Order. This argument is merely misdirection. As demonstrated above, the abrogation of Rule 84 does not change existing pleading standards, and CTP has not amended its Complaints against them. The Answering Defendants did not challenge the existing Complaints under the "existing pleading standards" and should not be permitted to do so now, more than two years after answering the original Complaints.

To the extent the Court determines that the amended Rules do create some different pleading standard (which CTP disputes), such amendments may only be applied to existing cases if the Court finds it is "just and practicable." *See Lubrizol Specialty Prods.*, 2016 WL 775033, at *1 ("the new pleading requirements apply to this case only if the Court finds that it is 'just and practicable.'"). As stated in the Supreme Court's April 2015 order that accompanied the transmittal of the amendments to Congress, the new rules "shall govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings then pending." Supreme Court of the United States, Order Regarding Amendments to the Federal Rules of Civil Procedure (Apr. 29, 2015), available at http://www.supremecourt.gov/orders/courtorders/frcv15(update)_1823.pdf.

CTP's Complaints against the Answering Defendants were filed between June 2013 and May 2014. Importantly, Defendants do not cite to a single case supporting retroactively applying a purported

new pleading standard to an existing complaint.  Rather, other courts have continued to apply Form 18 to complaints filed before the effective date of the amendments.  *See Hologram USA*, 2016 WL 199417, at *2 ("the Court refers to previously existing standards in ruling upon the instant Motion."); *Lubrizol Specialty Prods.*, 2016 WL 775033, at *1 ("it is not just and practicable to require pleadings in this patent case to contain the same level of specificity regarding direct infringement claims as are to be provided by the preliminary infringement contentions"); *Zoetis LLC v. Roadrunner Pharm., Inc.*, No. CV 15-3193, 2016 WL 755622, at *5 (D.N.J. Feb. 25, 2016) (applying Form 18 and *In re Bill of Lading* to pending complaint); *Intellicheck Mobilisa, Inc.*, 2016 WL 258524, at *4 (applying Form 18 to pending complaint); *3rd Eye Surveillance*, 124 Fed. Cl. at 442 n.6 ("The court therefore need not address whether the recent abrogation of Form 18, which occurred six and one-half months after the complaint in this case was filed, raises a retroactivity question. The "notice and plausibility" standard of *K–Tech* continues to govern."); *Blackbird Tech*, 2015 WL 10553053, at *1 ("My understanding is that former Form 18 continues to control the plausibility of direct infringement allegations."); *Eaton Veterinary Pharm., Inc v. Wedgewood Vill. Pharmacy, Inc.*, No. 4:15-CV-687-SRB, 2015 WL 7871055, at *2 (W.D. Mo. Dec. 3, 2015) (applying Form 18 to complaint filed September 9, 2015).  Not applying a pleading standard retroactively to cases in which answers were filed simply makes sense.  If the Answering Defendants were able to file answers, they certainly had sufficient information and knowledge to then ,and cannot now claim to have less information and knowledge.

Applying the amended rules to pending actions makes sense for certain stages of litigation, such as discovery.  When discovery is ongoing, it is perfectly logical to require the parties to adhere to the new Rules' emphasis on proportionality in serving new discovery requests..  Conversely, where discovery has closed, it would not be "just and practicable" to allow the parties to reopen discovery to

argue that the new Rules now apply.  Nor is it "just and practicable" to apply an alleged new pleading standard (which CTP disputes was created by the amendments) retroactively to complaints that were filed and answered <u>two to three years</u> before the effective date of the amendments.  The Answering Defendants do not cite any cases in support likely because they cannot.  It would be manifestly unfair to retroactively penalize a pleading that was appropriately pled (and not challenged) under the existing pleading standards when filed.  Defendants' position is directly contradictory to the mandate of the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.

In addition, Defendants' blanket assertion that the Answering Defendants' actions' "stand in the same procedural posture and no substantive activities have yet occurred (*e.g.*, discovery or claim construction)" (Memo. at 5) is inaccurate at best.  While it is true that Jet Printing and Walton Press had filed Motions to Dismiss prior to consolidation, Defendants' statement ignores the fact that, in the *Taylor Publishing* case, the parties had commenced discovery, exchanged infringement and invalidity contentions, <u>completed</u> claim construction briefing, and engaged in mediation.  In *Indexx*, the parties had similarly commenced discovery, exchanged infringement and invalidity contentions, proposed terms for construction, and had filed opening claim construction briefs.  In *Worldwide*, the parties had exchanged discovery requests and infringement and invalidity contentions and submitted a joint notice of claim terms for construction to the Court.  In *GEO Graphics*, the parties had exchanged discovery requests and CTP had disclosed its infringement contentions. To say these cases "have <u>not</u> advanced beyond the pleading stage" (Memo. at 5, emphasis in original) is willful blindness without careful consideration of the representations being made to this Court.  These cases clearly differ in procedural posture and have

progressed beyond the pleading stage, such that it is not "just and practicable" to apply any purported new pleading standard to existing pleadings.

Notwithstanding the foregoing, as demonstrated above, CTP's Complaints against the Answering Defendants properly state a claim for direct patent infringement under Rule 8, *K-Tech*, and *Twombly* and *Iqbal*. Thus, to the extent the Court determines the Answering Defendants are permitted to join the Consolidated Motion, the motion still should be denied.

**E.      Jet Printing Is Precluded From Joining The Consolidated Motion.**

Finally, Jet Printing is similarly prohibited from joining the Consolidated Motion. Indeed, Jet Printing previously filed a Rule 12(b)(6) motion to dismiss CTP's willfulness allegations before consolidation. *See* Member Case No. 1:14-cv-03893-MJG, Docs. 14, 15. CTP did not amend its complaint against Jet Printing, and Jet Printing notified the Court that it intended to proceed with its original motion on March 7, 2016. Doc. 344. Jet Printing did not seek dismissal of CTP's infringement claims in its original Rule 12(b)(6) motion, only its allegations of willfulness.

Despite having already filed a motion under Rule 12(b)(6), Jet Printing subsequently joined the Consolidated Motion. This is procedurally improper under Rule 12(g)(2), which provides that "a party that makes a motion under this rule must not make another motion under this rule raising a defense that was available to the party by omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). "[S]ince the Federal Rules were first adopted in 1938, they have barred a defendant from interposing successive motions raising certain Rule 12(b) defenses . . . if the defense was previously available to the defendant." *Patterson v. Whitlock*, 392 Fed. App'x 185, 192 (4th Cir. 2010). "Rule 12(h)(2) then exempts from this general waiver any Rule 12(b)(6) defenses that are raised (A) in an answer; (B) in a motion for judgment on the pleadings; or (C) at trial." *F.T.C. v. Innovative Mktg., Inc.*, 654 F. Supp. 2d

378, 383 (D. Md. 2009).  Like the improper Answering Defendants, Jet Printing did not file any notice of its intent to assert "other dismissal grounds" under Rule 12(c) as required by the Second Procedural Order.

The Court may accept subsequent 12(b) motions on discretionary grounds, to "comport[] with the general spirit of the rules and as promoting the interests of efficiency." *Innovating Mktg.*, 654 F. Supp. 2d at 383.  However, no such efficiency is gained by allowing a defendant whose action has been pending for almost <u>three years</u> a second bite at the apple.  Although Jet Printing likely will argue that the enactment of the new Rules provides some intervening change in the law that warrants a late-filed and successive Rule 12(b)(6), as demonstrated above, the amendments do not change existing pleading standards.  As such, Jet Printing <u>could</u> have raised the purported defense in its original motion but declined to do so.  Jet Printing should not be permitted to "jump on the bandwagon" when it failed to assert the defense in its first filing.  Accordingly, Jet Printing should be barred from now joining the Consolidated Motion.  To the extent the Court permits Jet Printing to join the Consolidated Motion, notwithstanding the procedural impropriety, as demonstrated above, (1) CTP's Complaint against Jet Printing properly alleges a claim for direct patent infringement; (2) the amended Rules do not change existing pleading standards; and (3) even assuming, *arguendo*, that the amended Rules do create a different pleading standard (which CTP disputes), it is not "just and practicable" to retroactively apply such rules to a Complaint that has been pending since June 2013 and that was not previously challenged by the Jet Printing.

**F.      Should This Court Deem CTP Has Fallen Short Of Its Pleading Burden, CTP Requests And Should Be Granted Leave To Amend.**

CTP respectfully submits that the Consolidated Motion should be denied for all of the reasons set forth above.  Nevertheless, should the Court determine otherwise, the appropriate remedy would be an

Order granting CTP leave to amend any claim found by the Court to be deficient. *See* Fed. R. Civ. P. 15(a) (leave to amend a pleading shall be freely given when justice so requires); MOORE'S FEDERAL PRACTICE ¶ 8.10[2] (3d ed. 2009) ("Dismissal will usually be without prejudice, so that pleaders will be given an opportunity to amend the defective pleading under Rule 15."). As the Court is aware, CTP's original claims for direct patent infringement were found to be proper under the existing pleading standards. CTP only amended its direct patent infringement claims to include additional claims under the '155 Patent, which was under *inter partes* review. Thus, although CTP has amended its complaints, there has been no "failure to cure deficiencies by amendments previously allowed" with regard to its direct infringement claims, and leave to amend should be granted. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## IV.    <u>CONCLUSION</u>

Defendants' Consolidated Motion is replete with procedural errors, references to facts outside the pleadings, inaccurate "facts" (such as ignoring previous discovery and briefing), ignorance of this Court's Orders and prior determinations, and attempts to import a new (albeit legally unsupportable) standard for pleading claims for direct patent infringement. Any one of the foregoing reasons is sufficient to deny the Consolidated Motion with prejudice. The combination of the foregoing, however, is sufficient to deny the Consolidated Motion in its entirety with prejudice and award CTP such other and further relief that the Court deems just and proper under the circumstances.

Respectfully submitted,

/s/ Samuel F. Miller
Samuel F. Miller, TN BPR No. 22936
Maia T. Woodhouse, TN BPR No. 30438
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
Baker Donelson Center
211 Commerce Street, Suite 800
Nashville, Tennessee 37201
Telephone: (615) 726-5753
Fax: (615) 744-5753
Email: smiller@bakerdonelson.com
        mwoodhouse@bakerdonelson.com

L. Clint Crosby, GA Bar No. 197877
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
Monarch Plaza, Suite 1600
3414 Peachtree Road, N.E.
Atlanta, Georgia 30326
Telephone: (678) 406-8702
Fax: (678) 406-8802
Email: ccrosby@bakerdonelson.com

*Attorneys for CTP Innovations, LLC*

## CERTIFICATE OF SERVICE

On March 29, 2016, the foregoing document was electronically filed.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. mail, postage prepaid.  Parties may access this filing through the Court's electronic filing system.

/s/ Samuel F. Miller
Samuel F. Miller