**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**BALTIMORE DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **MDL 1:14-MD-02581-MJG** |
| **CTP INNOVATIONS, LLC,** | § | **(LEAD ACTION)** |
| **PATENT LITIGATION** | § | |

| | | |
|---|---|---|
| **CTP INNOVATIONS, LLC** | § | |
| | § | |
| **v.** | § | **Case No.: 1:14-cv-03890-MJG** |
| | § | |
| **AMERICAN PRINTING COMPANY,** | § | |
| **INC.** | § | |

| | | |
|---|---|---|
| **CTP INNOVATIONS, LLC** | § | |
| | § | |
| **v.** | § | **Case No.: 1:15-cv-01693-MJG** |
| | § | |
| **ARANDELL CORPORATION** | § | |

| | | |
|---|---|---|
| **CTP INNOVATIONS, LLC** | § | |
| | § | |
| **v.** | § | **Case No.: 1:15-cv-03124-MJG** |
| | § | |
| **CENVEO CORPORATION** | § | |

| | | |
|---|---|---|
| **CTP INNOVATIONS, LLC** | § | |
| | § | |
| **v.** | § | **Case No.: 1:15-cv-01470-MJG** |
| | § | |
| **COMMAND WEB OFFSET COMPANY,** | § | |
| **INC.** | § | |

| | | |
|---|---|---|
| **CTP INNOVATIONS, LLC** | § | |
| | § | |
| **v.** | § | **Case No.: 1:15-cv-01975-MJG** |
| | § | |
| **DIRECTMAIL.COM** | § | |

| | | |
|---|---|---|
| **CTP INNOVATIONS, LLC** | § | |
| | § | |
| **v.** | § | **Case No.:  1:14-cv-03884-MJG** |
| | § | |
| **EBSCO INDUSTRIES, INC.** | § | |

| | | |
|---|---|---|
| **CTP INNOVATIONS, LLC** | § | |
| | § | |
| **v.** | § | **Case No.:  1:15-cv-02391-MJG** |
| | § | |
| **ENNIS, INC.** | § | |

| | | |
|---|---|---|
| **CTP INNOVATIONS, LLC** | § | |
| | § | |
| **v.** | § | **Case No.:  1:15-cv-01550-MJG** |
| | § | |
| **F.C.L. GRAPHICS, INC.** | § | |

| | | |
|---|---|---|
| **CTP INNOVATIONS, LLC** | § | |
| | § | |
| **v.** | § | **Case No.:  1:14-cv-03888-MJG** |
| | § | |
| **GEO GRAPHICS, INC.** | § | |

| | | |
|---|---|---|
| **CTP INNOVATIONS, LLC** | § | |
| | § | |
| **v.** | § | **Case No.:  1:14-cv-03889-MJG** |
| | § | |
| **INDEXX, INC.** | § | |

| | | |
|---|---|---|
| **CTP INNOVATIONS, LLC** | § | |
| | § | |
| **v.** | § | **Case No.:  1:14-cv-03893-MJG** |
| | § | |
| **JET PRINTING, LLC** | § | |

ii

**CTP INNOVATIONS, LLC**                §
                                        §
**v.**                                  §        Case No.:  **1:15-cv-03123-MJG**
                                        §
**JOURNAL GRAPHICS, INC.**              §

---

**CTP INNOVATIONS, LLC**                §
                                        §
**v.**                                  §        Case No.:  **1:15-cv-02016-MJG**
                                        §
**MIDLAND INFORMATION**                 §
**RESOURCES**                           §

---

**CTP INNOVATIONS, LLC**                §
                                        §
**v.**                                  §        Case No.:  **1:15-cv-01469-MJG**
                                        §
**PUBLICATION PRINTERS**                §
**CORPORATION**                         §

---

**CTP INNOVATIONS, LLC**                §
                                        §
**v.**                                  §        Case No.:  **1:15-cv-01471-MJG**
                                        §
**SANDY ALEXANDER, INC.**               §

---

**CTP INNOVATIONS, LLC**                §
                                        §
**v.**                                  §        Case No.:  **1:15-cv-01813-MJG**
                                        §
**SCHUMANN PRINTERS, INC.**             §

---

**CTP INNOVATIONS, LLC**                §
                                        §
**v.**                                  §        Case No.:  **1:15-cv-01692-MJG**
                                        §
**SPECIALTY PROMOTIONS, INC.**          §

---

| TAYLOR PUBLISHING COMPANY, | § | |
| | § | |
| v. | § | Case No.: 1:14-cv-03894-MJG |
| | § | |
| CTP INNOVATIONS, LLC | § | |

| CTP INNOVATIONS, LLC | § | |
| | § | |
| v. | § | Case No.: 1:15-cv-02052-MJG |
| | § | |
| TIMES PRINTING CO., INC. | § | |

| CTP INNOVATIONS, LLC | § | |
| | § | |
| v. | § | Case No.: 1:15-cv-02389-MJG |
| | § | |
| TREND OFFSET PRINTING SERVICES, INC. | § | |

| CTP INNOVATIONS, LLC | § | |
| | § | |
| v. | § | Case No.: 1:15-cv-01807-MJG |
| | § | |
| VALASSIS COMMUNICATIONS, INC. | § | |

| CTP INNOVATIONS, LLC | § | |
| | § | |
| v. | § | Case No.: 1:15-cv-02682-MJG |
| | § | |
| VERSA PRESS, INC. | § | |

| CTP INNOVATIONS, LLC | § | |
| | § | |
| v. | § | Case No.: 1:14-cv-03887-MJG |
| | § | |
| WALTON PRESS INC. | § | |

| | | |
|---|---|---|
| **CTP INNOVATIONS, LLC** | § | |
| | § | |
| **v.** | § | **Case No.:  1:14-cv-03886-MJG** |
| | § | |
| **WORLDWIDE TICKETS AND LABELS, INC.** | § | |
| | § | |

---

| | | |
|---|---|---|
| **CTP INNOVATIONS, LLC** | § | |
| | § | |
| **v.** | § | **Case No.:  1:15-cv-01646-MJG** |
| | § | |
| **WORZALLA PUBLISHING COMPANY** | § | |

---

### CTP INNOVATIONS, LLC'S RESPONSE IN OPPOSITION TO JOINT RULE 12(b)(1) MOTION TO DISMISS [DOC. 354]

---

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ vii

I. INTRODUCTION ......................................................................................................... 1

II. LAW AND ARGUMENT ............................................................................................ 2

      A.     CTP Has Standing as the Owner of All Right, Title, and Interest in the Patents-In-Suit... 2

      1.     CTP Has Valid Right, Title, and Interest in the Asserted Patents. .................................... 3

      2.     CTP Acquired Right, Title and Interest Prior to the First Lawsuit Filing Date................. 7

      3.     This Present Case is Nothing Like Abraxis. .................................................................... 7

      4.     This Case Fits Within the Exception in Abraxis.............................................................. 10

      5.     Nunc Pro Assignments Occurring Prior to the Filing Date Effect Valid Transfer Rights.11

      B.     Defendants' "Prejudice" Assertion Is Unavailing. ........................................................ 14

III.    CONCLUSION..................................................................................................... 15

CERTIFICATE OF SERVICE .......................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Abraxis Bioscience, Inc. v. Navinta LLC,
  625 F.3d 1359 (Fed. Cir. 2010)..................................................................... passim

American Cyanamid Co. v. Ring,
  248 Ga. 673, 286 S.E.2d 1 (1982).........................................................................12

BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.,
  No. 09-00181, DAE-KSC, 2011 U.S. Dist. LEXIS 56665 (D. Hawaii 2011)......................6, 9

C.R. Daniels, Inc. v. Naztec Int'l Grp., LLC,
  No. CIV.A. ELH-11-01624, 2012 WL 1268623 (D. Md. Apr. 13, 2012)....................4, 5, 6, 9

DDB Techs. LLC v. MLB Advanced Media, L.P.,
  517 F.3d 1284 (Fed. Cir. 2008)........................................................................6, 9

Filmtec Corp. v. Allied-Signal Inc.,
  939 F.2d 1568 (Fed. Cir. 1991).........................................................................4, 6

Israel Bio–Eng'g Project v. Amgen, Inc.,
  475 F.3d 1256 (Fed. Cir. 2007)............................................................................2

Mas-Hamilton Group v. LaGard, Inc.,
  156 F.3d 1206 (Fed. Cir. 1998)........................................................................9, 11

Mitchell v. Winslow,
  17 F.Cas. 527 (C.C.D.Me.1843) ...........................................................................4

Morrow v. Microsoft Corp.,
  499 F.3d 1332 (Fed. Cir. 2007)............................................................................3

Perrin v. United States,
  444 U.S. 37 (1979)........................................................................................13

RAD DATA Commc'ns, Inc. v. Patton Elecs. Co.,
  882 F.Supp. 351 (S.D.N.Y. 1995) ........................................................................5

Sicom Sys., Ltd. v. Agilent Techs., Inc.,
  427 F.3d 971 (Fed. Cir. 2005).............................................................................2

Speedplay, Inc. v. Bebop, Inc,
  211 F.3d 1245 (Fed. Cir. 2000)............................................................................4

Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.,
    620 F.3d 1305 (Fed. Cir. 2010).................................................................................2

Stemcells, Inc. v. Neuralstem, Inc.,
    115 F. Supp. 3d 623, 638 (D. Md. 2015) ...............................................................4

Sunrise Med. HHG, Inc. v. AirSep Corp.,
    95 F. Supp. 2d 348 (W.D. Pa. 2000).............................................................9, 11, 12

Taylor Publishing Company v. CTP Innovations, LLC,
    Case No. 3:13-cv-02222 (N.D. Tx. 2013) ...............................................................7

**STATUTES**

35 U.S.C. § 100(d) ...........................................................................................................3

35 U.S.C. § 261..........................................................................................................3, 12

35 U.S.C. § 281.................................................................................................................3

35 U.S.C. § 285...............................................................................................................14

**OTHER AUTHORITIES**

Rule 12(b)(1)......................................................................................................................1

For its response in opposition to Defendants' Joint Rule 12(b)(1) Motion to Dismiss [Doc. 354] (the "Joint Motion"), Plaintiff CTP Innovations, LLC ("CTP") states as follows:

## I. INTRODUCTION

Defendants assert that CTP does not have rights to the patents-in-suit because, according to Defendants, R.R. Donnelly and Media Innovations failed to assign such rights to CTP prior to the filing of the lawsuits in this consolidated action.  Defendants' assertion depends <u>entirely</u> on the theory that R.R. Donnelly's rights to the Asserted Patents were <u>not</u> immediately and automatically transferred to Media Innovations at the time R.R. Donnelly acquired the rights and, likewise, Media Innovations' rights to the patents-in-suit were <u>not</u> immediately and automatically transferred to CTP at the time Media Innovations acquired the rights.[1]  If Defendants' are incorrect on this theory, the Joint Motion must fail as a matter of law because Media Innovations and then CTP would have acquired the rights months prior to filing of the first lawsuit in this consolidated action.

Defendants' theory is legally and factually incorrect.  The Federal Circuit has consistently held that one may assign an expectant interest and that such assignment can be a valid assignment.  The assignments executed by R.R. Donnelly and Media Innovations prior to the first lawsuit filing date clearly state an assignment of an expectant interest.  Both assignment agreements from R.R. Donnelly to Media Innovations and Media Innovations to CTP express a present, automatic conveyance where they state, "Assignor <u>hereby sells, transfers, assigns</u> and sets over all rights, title and interest"  to the patents-in-suit.  Both assignment agreements then define "rights, title and interest" to include "the rights assigned or <u>to be assigned hereunder</u>."  The phrase "to be assigned hereunder" expressly covers the

---

[1] The Asserted Patents are U.S. Patent Nos. 6,611,349 and 6,738, 155.  Although CTP has not sued for infringement of both of the Asserted Patents against each and every Defendants, Defendants have referred to the Asserted Patents collectively throughout the Joint Motion and supporting memorandum ("Memo.") and, therefore, CTP shall do the same.

scenario in which such rights come into existence after the signing date of assignment agreements. Under Federal Circuit precedent, a contract that expressly covers the assignment of rights without the need for further action creates an automatic transfer of title to those rights when they arise.  Thus, even if Defendants are correct that R.R. Donnelly had no present rights to the Asserted Patents at the time of the execution of the assignment agreement with Media Innovations (which is disputed), R.R. Donnelly (and Media Innovations) did have an <u>expectant</u> interest by virtue of the foregoing language and the listing of the Assert Patents in the assignment agreement.

When Banta assigned its rights to the Asserted Patents to R.R. Donnelly prior to the first lawsuit filing date, R.R. Donnelly's rights to the patents-in-suit transferred to Media Innovations automatically by operation of law.  Media Innovations' rights then transferred automatically by operation of law to CTP.  Accordingly, CTP had valid ownership and standing at the time of the first lawsuit filing and continues to have valid standing.  Defendants' Joint Motion must be dismissed as a matter of law.

## II.  <u>LAW AND ARGUMENT</u>

**A.      CTP Has Standing as the Owner of All Right, Title, and Interest in the Patents-In-Suit.**

In a patent infringement suit, "[s]tanding to sue for infringement stems from the Patent Act, which provides: '[a] patentee shall have remedy by civil action for infringement of his patent.'" <u>Israel Bio–Eng'g Project v. Amgen, Inc.</u>, 475 F.3d 1256, 1264 (Fed. Cir. 2007) (quoting 35 U.S.C. § 281). "The word 'patentee' includes not only the patentee to whom the patent was issued but also the successors in title to the patentee." <u>Sicom Sys., Ltd. v. Agilent Techs., Inc.</u>, 427 F.3d 971, 976 (Fed. Cir. 2005). "[O]nly a patent owner or an exclusive licensee can have constitutional standing to bring an infringement suit; a non-exclusive licensee does not." <u>Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.</u>, 620 F.3d 1305, 1317 (Fed. Cir. 2010) (quoting <u>Mars, Inc. v. Coin Acceptors, Inc.</u>, 527

F.3d 1359, 1367 (Fed. Cir. 2008)).  In essence, a plaintiff must have sufficient exclusionary rights in order to suffer a Constitutional injury in fact when infringement occurs. See Morrow v. Microsoft Corp., 499 F.3d 1332, 1339–40 (Fed. Cir. 2007).

Under the Patent Act, a "patentee," including all "successors in title to the patentee," has standing to sue for patent infringement. 35 U.S.C. § 100(d); *see also* 35 U.S.C. § 281.  A notarized assignment document is "*prima facie* evidence of the execution of an assignment, grant, or conveyance of a patent." 35 U.S.C. § 261. As demonstrated below, and contrary to the theory espoused by Defendants in the Joint Motion, CTP acquired valid title in the patents-in-suit prior to the first lawsuit filing date and, therefore, has proper standing to pursue its claims against Defendants.

### 1.    *CTP Has Valid Right, Title, and Interest in the Asserted Patents.*

Defendants incorrectly assert that title to the Asserted Patents "never passed to CTP" and that R.R. Donnelly and Media Innovations had to execute new assignment agreements after the Banta assignment to R.R. Donnelly in order to acquire rights.  Memo. at 5.  To the contrary, CTP has standing by virtue of the automatic assignment of R.R. Donnelly's expectant interest in the Asserted Patents to Media Innovations and Media Innovations' assignment of R.R. Donnelly's expectant interest in the patents to CTP.  Such assignments are valid and sufficient to transfer ownership of the patents to CTP.

There can be no question that an expectant interest can transfer automatically through a contract. As explained by Federal Circuit in Abraxis Bioscience, Inc. v. Navinta LLC, "[w]hether an assignment of patent rights in an agreement is automatic or merely a promise to assign depends on the contractual language itself."  625 F.3d 1359, 1364 (Fed. Cir. 2010) (citing DDB Techs. LLC v. MLB Advanced Media, L.P., 517 F.3d 1284, 1290 (Fed. Cir. 2008)). "If the contract expressly conveys rights in future inventions, no further act is required once an invention comes into being, and the transfer of title occurs

by operation of law." Id. (emphasis added).  In contrast, a contract in which a party "agrees to assign" reflects a promise to assign rights in the future, not an immediate transfer of an expectant interest. Id.

If an assignment of rights to a patent is made prior to the existence of such rights, this may be viewed as an assignment of an expectant interest.  Filmtec Corp. v. Allied-Signal Inc., 939 F.2d 1568, 1572 (Fed. Cir. 1991).  "An assignment of an expectant interest can be a valid assignment."  Id. See also Mitchell v. Winslow, 17 F.Cas. 527, 531–32 (C.C.D.Me.1843) (non-existing [personal] property may be the subject of valid assignment); Stemcells, Inc. v. Neuralstem, Inc., 115 F. Supp. 3d 623, 638 (D. Md. 2015), appeal dismissed (Sept. 17, 2015); C.R. Daniels, Inc. v. Naztec Int'l Grp., LLC, No. CIV.A. ELH-11-01624, 2012 WL 1268623, at *11 (D. Md. Apr. 13, 2012).  Moreover, an assignment of a future interest in a patent creates in the assignee an equitable title in the patent.  Cf. Stemcells, 115 F. Supp. 3d 623, 638 n.14 (D. Md. 2015), appeal dismissed (Sept. 17, 2015) (citing Filmtec, 939 F.2d at 1572); Speedplay, Inc. v. Bebop, Inc, 211 F.3d 1245, 1253 (Fed. Cir. 2000) ("Bebop seeks to distinguish between the assignment of a future invention and the assignment of the patent on that invention, implying that the CIA does not cover the latter. Filmtec, which linked title to the invention and title to the ensuing patent, also disposes of that argument.").

Words of present conveyance, such as "hereby conveys, transfers, and assigns," mean that assignment occurs automatically and are not merely a promise to assign.  Speedplay, 211 F.3d at 1253. Moreover, when the language of an assignment agreement makes clear that no further action would be required once rights come into being, both the Federal Circuit and this Court have held this to be an indication that the transfer of title occurs by operation of law. Film Tec, 939 F.2d at 1568; C.R. Daniels, 2012 WL 1268623 at *11 ("In my view, the phrase 'without further consideration' is of key importance

in the analysis, as it indicates that the agreements contemplated that 'no further act would be required once an invention came into being; the transfer of title would occur by operation of law.'").

In the present case, the language of the assignment agreements between R.R. Donnelly and Media Innovations, and then Media Innovations and CTP, contain words of present conveyance and thus automatic transfer: "Assignor <u>hereby sells, transfers, assigns</u> and sets over to Assignee all rights, title and interest (for all countries) in and to the Patents…"  Ex. E ¶ 1; Ex. F ¶ 1 (emphasis added).[2]  The plain language of this provision makes clear that, without any further actions, the assignee owns "all rights, title and interest . . . in and to the Patents."  <u>Id.</u>  "Patents" is defined as the patents listed on Schedule A to the assignment agreements, which includes both of the Asserted Patents.  Ex. E at 6 (Schedule A); Ex. F at 6 (Schedule A).  The agreements define  "rights, title and interest" in the Patents as

> All of the rights, title and interest in and to the patents sold, transferred, assigned and set over to Assignee hereunder include all income, royalties, damages and payments now or hereafter due or payable with respect thereto, and all causes of action (whether in law or equity) and the right to sue, counterclaim, and recover for the past, present and future infringement of the rights assigned <u>or to be assigned hereunder</u>.

Ex. E ¶ 6; Ex. F ¶ 6 (emphasis added).  The words "to be assigned hereunder" clearly indicate an expectant interest in the patents listed in the assignment agreements if such patents were not already owned by the respective assignor.   This language is distinguishable from the language in <u>RAD DATA Commc'ns, Inc. v. Patton Elecs. Co.</u>, 882 F.Supp. 351, 353 (S.D.N.Y. 1995) that did not leave open the possibility of acquisition of the patents on a date after the effective date of the assignment.  Here, the language "of the rights assigned or to be assigned hereunder" unequivocally leaves open the possibility of acquisition of the Asserted Patents.

---

[2] All references to exhibits are those attached to the Joint Motion.

As in <u>C.R. Daniels</u>, nothing in the text of the assignment agreements in the present case contradicts the conclusion that the parties contemplated that the Asserted Patents would automatically become the property of the respective assigns upon acquisition of rights by the assignors.  There, this Court noted that "[c]onspicuously absent from the [agreements] is any language indicating that some other act had to be performed for the assignments to be complete."  2012 WL 1268623, at *12.  As such, this Court applied the *Filmtec* rule and held that the assignment "did not merely obligate [the inventor] to grant future rights, but expressly granted ... rights in any future invention" such that "no further act would be required once an invention came into being; the transfer of title would occur by operation of law." *Id.* at *9.  Like the agreement in <u>C.R. Daniels</u>, there is no language in the R.R. Donnelley and Media Innovations assignments indicating that some other act had to be performed for the assignments to be complete.  <u>See</u> <u>C.R. Daniels</u>, 2012 WL 1268623 at *12.  Paragraph 2 of the agreements immediately authorizes and requests actions by government officials pertaining to the patents.  Ex. E ¶ 2; Ex. F ¶ 2.  Indeed, paragraph 5 of the agreements expressly provides that the agreement "shall be deemed a full legal and formal equivalent of any assignment, content to file or like documents that may be require in any country for any purpose and more particularly in proof of the right of the Assignee…" Ex. E ¶ 5; Ex. F ¶ 5.  Also like the agreement in <u>C.R. Daniels</u>, the existence of language in paragraph 6 of the agreements requiring the assignors to take reasonable efforts to execute any additional papers for securing and maintaining rights does not indicate that the immediate assignment contemplated in the agreements was "invalid or incomplete." <u>Compare</u> <u>C.R. Daniels</u>, 2012 WL 1268623 at *12, to Ex. E ¶ 4 and Ex. F ¶ 4; <u>see also DDB Techs</u>, 517 F.3d at 1286-87; <u>BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.</u>, No. 09-00181, DAE-KSC, 2011 U.S. Dist. LEXIS 56665, AT *60 (D. Hawaii May 25, 2011)

(holding language to execute further documents in context of trade secrets did not mean assignment was not effective).

        **2.**        *CTP Acquired Right, Title and Interest Prior to the First Lawsuit Filing Date.*

      Defendants assert that Banta assigned any and all rights to the Asserted Patents to R.R. Donnelly on May 24, 2013.  Memo. at 6; Ex. G.  Defendants also admit that no later than May 24, 2013, R.R. Donnelly had legal title and substantial rights in the patents.  Memo. at 6.  It cannot be disputed that this date is weeks prior to the first lawsuit filing date of the consolidated cases.[3]  Because all right, title and interest to the Asserted Patents transferred immediately and automatically to Media Innovations, and then from Media Innovations to CTP upon R.R. Donnelly's acquiring right, title and interest on May 24, 2013, CTP had standing at all relevant times for these consolidated cases.

        **3.**        *This Present Case is Nothing Like <u>Abraxis</u>.*

      Defendants incorrectly assert that the facts of the present case are similar to the <u>Abraxis</u> case decided by the Federal Circuit.  There are at least two significant facts in <u>Abraxis</u> that distinguish it from the present case.

      First, unlike the present case, the assignments from AZ-UK to Abraxis were not transfers of expectant interests and did not automatically assign rights even when a *nunc pro tunc* of the patents-at-issue were executed by Astra and AZ-AB.  The Asset Purchase Agreement ("APA") between AZ-UK and Abraxis provided that AZ–UK "shall or shall cause one or more of its Affiliates to, Transfer to the Purchaser, and the Purchaser shall purchase and accept from the Seller or its Affiliates, as applicable, all

---

[3] Although Defendants  assert that the lawsuits in this consolidated action were filed between June 14, 2013 and July 13, 2015 (<u>see</u> Memo. at 1), Defendants neglect to inform the Court that Taylor Publishing Company, one of the defendants joining the Joint Motion, filed the first lawsuit in this litigation, a declaratory judgment actions involving the Asserted Patents, on July 13, 2013 in <u>Taylor Publishing Company v. CTP Innovations, LLC</u>, Case No. 3:13-cv-02222, in the United States Court for the Northern District of Texas.

of the right, title and interests of the Seller and its Affiliates in" the patents-in-suit. Abraxis Bioscience, Inc. v. Navinta LLC, 625 F.3d 1359, 1361 (Fed. Cir. 2010).  In order to enact the assignment under the APA, a second action was required, namely, causing the assignment to occur through a separate assignment document.  Following the execution of the APA, AZ–UK and Abraxis executed a written Intellectual Property Assignment Agreement ("IP Assignment Agreement") on June 28, 2006 purportedly assigning the asserted patents to Abraxis.  Id.  The "Further Assurances" provision of the IP Assignment Agreement stated, in pertinent part, that "Seller will ... execute ... any and all further ... assignments ... as necessary to ... vest in Buyer any of the Transferred Intellectual Property." Id. at 1361. Due to this additional step of requiring a separate assignment document, the Federal Circuit found that the IP Assignment Agreement did not contain an "immediate transfer of 'expectant interests' to Abraxis and, therefore, the *nunc pro tunc* assignment did not create automatically vested rights in the patents-at-issue.  Id. at 1366. For title to patents-at-issue to vest in Abraxis, a further assignment by AZ–UK was required by the "Further Assurances" provision of the June 28, 2006 IP Assignment Agreement.  Id.  In sum, the "Further Assurances" provision's "all further…assignments" language created a promise to assign instead of a present conveyance.

In the present case, as described above, the "to be assigned hereunder" (Ex. E ¶ 6; Ex. F ¶ 6) does not require an additional step of executing a separate assignment document.  There is no "shall cause" or requirement for "further assignments" equivalent language in the assignment agreements between R.R. Donnelly and Media Innovations and Media Innovations and CTP. There is only present conveyance with no additional steps required.  The language in paragraph 1 of the assignment agreements conveys right, title and interest to the expectant interest.  Although Defendants will undoubtedly attempt to cast the language in paragraph 3 of the assignment agreements as additional

steps, the language in paragraph 3 does not require additional steps to complete the transfer of right, title, and interest to any of the patents identified on Schedule A of the assignment agreements.  Instead, paragraph 3 only requires cooperation for ministerial matters related to dealing with governmental entities.  Such ministerial acts do not constitute an "agree to assign."  C.R. Daniels, 2012 WL 1268623 at *12 ("This language merely required the inventors to provide assurances that they would assist their employers with efforts to patent their future inventions. It does not indicate that the immediate assignment contemplated by the employment agreements was invalid or incomplete"); DDB Techs, 517 F.3d at 1286-87 (finding automatic assignment through "Employee agrees to and hereby grant and assign … his entire right, title, and interest in.." even though agreement also contained language "Employee agrees to execute specific assignments and do anything else properly requested by [Schlumberger], at any time during or after employment with [Schlumberger], to secure such rights."); BlueEarth Biofuels, 2011 U.S. Dist. LEXIS 56665 at *60.

Second, the assignment in Abraxis was executed after the plaintiff filed the lawsuit.  Abraxis, 625 F.3d at 1366.  Abraxis freely contended that the assignment after filing was intended to retroactively provide standing in the ongoing case.  Id.  Conversely, in the present case, there has been no retroactive assignment executed after the filing of the case.  All of the assignments at issue (Exs. E, F, and G) were executed and completed **prior** to the first lawsuit filing date of any of the consolidated cases.  Both the Federal Circuit and the Western District of Pennsylvania have held that a *nunc pro tunc* assignment executed prior to the lawsuit filing date is sufficient to confer standing.  Mas-Hamilton Group v. LaGard, Inc., 156 F.3d 1206, 1211 (Fed. Cir. 1998); Sunrise Med. HHG, Inc. v. AirSep Corp., 95 F. Supp. 2d 348, 437 (W.D. Pa. 2000).  Moreover, this is consistent with the Federal Circuit determination in Abraxis that standing is determined "on the day [plaintiff] filed the action."  Abraxis, 625 F.3d at

1366.  Where, as here, all assignments were completed prior to filing, there can be no concern that a plaintiff will sue only to acquire legal title to rights asserted later (in essence a speculative gamble), which is the crux of the rationale behind the <u>Abraxis</u> decision.

### 4.    *This Case Fits Within the Exception in <u>Abraxis</u>.*

Defendants' Joint Motion fails to address the narrow exception.  If the Court ultimately agrees that R.R. Donnelly failed assign right, title and interest to the Asserted Patents to Media Innovations and then to CTP, CTP is still has valid standing.  The Federal Circuit in <u>Abraxis</u> expressly recognized the following exception: "A party may sue for past infringement transpiring before it acquired legal title if a written assignment expressly grants the party a right to do so."  <u>Abraxis</u>, 625 F.3d at 1367.  Ultimately, the Federal Circuit determined that Abraxis was never granted the right to sue for past infringement and, therefore, the exception did not apply.

The present case, however, does fit squarely within the exception.  In the assignment agreements, Media Innovations and then CTP received transfer of "the right to sue, counterclaim, and recover for the past, present and future infringement of the rights assigned or to be assigned" pertaining to the Asserted Patents.  <u>See</u> Ex. E ¶6; Ex. F ¶6; Ex. G ("…including any and all causes of action, and rights to damages and profits, due or accrued, relating to the foregoing, including the right to sue and recover for, and the right to profits and damages due or accrued arising out of or in connection with any and all past, present or future infringements or dilutions").  On this basis alone, CTP has standing as a matter of law that must cause denial of the Joint Motion.

**5.**      ***Nunc Pro Assignments Occurring Prior to the Filing Date Effect Valid Transfer Rights.***

To the extent that Court finds that the assignments agreements do not contain a present conveyance of an expectant interest, the *nunc pro tunc* assignment by Banta solves any break in the title chain because the *nunc pro tunc* assignment occurred three weeks prior to the first lawsuit filing date.

Although the Federal Circuit has found that *nunc pro tunc* agreements executed after commencement of litigation are invalid and do not confer standing retroactively, the Federal Circuit and least one court in this Circuit have found *nunc pro tunc* assignments executed *prior* the filing of a lawsuit, not as a supplemental assignment after litigation has commence to retroactively solve standing, are valid.   In <u>Mas-Hamilton Group v. LaGard, Inc.</u>, 156 F.3d 1206 (Fed. Cir. 1998), Federal Circuit found that a *nunc pro tunc* assignment of rights to sue for past infringement that was executed prior to the filing of a lawsuit was sufficient for standing purposes:

> While it is true that in <u>Enzo</u>, we held that "*nunc pro tunc* assignments are not sufficient to confer <u>retroactive</u> standing," 134 F.3d at 1093, 45 USPQ2d at 1371 (emphasis added), that is not the scenario here. In the case at bar, standing was not deficient at the time the suit was filed, nor at the time that the appeal was filed. Hence operation of the supplemental assignment specifying the grant of the right to sue for past infringement is not being used to cure deficient standing.

156 F.3d at 1211 (emphasis on "retroactive" in original).   Similarly, and directly analogous to the alleged break in title in the present case, the Western District of Pennsylvania held "[a] *nunc pro tunc* assignment filed *before* the filing date of the action with an effective assignment date before the action does effect a valid transfer of rights sufficient to confer standing" in the context of remedying a purported break in chain of patent title.   <u>Sunrise Med. HHG</u>, 95 F. Supp. 2d at 437 (citing <u>Mas-Hamilton Group</u>, 156 F.3d at 1211; <u>Gaia Techs. Inc. v. Reconversion Techs. Inc.</u>, 93 F.3d 774, 779-80 (Fed. Cir. 1996)).   In <u>Sunrise</u>, the defendant asserted (1) there was a break in the chain of title to U.S. Patent No.

11

4,457,303 (the "'303 patent"; (2) the break could not be corrected via a *nunc pro tunc* assignment executed prior to the filing date of the lawsuit; and (3) therefore, according to defendant, the plaintiff lacked proper standing.  The court in <u>Sunrise</u> rejected the defendant's argument in its entirety and held

> *Nunc pro tunc* agreements entered into after the commencement of litigation are invalid and do not work to confer standing retroactively. *Gaia*, 93 F.3d at 779 ("The only possible saving grace for Gaia is the *nunc pro tunc* assignment of patent and trademark rights that was executed on October 24, 1994, but was made effective as of August 4, 1991, prior to Gaia's filing of the instant suit.... This agreement is not sufficient to confer standing on Gaia retroactively."). On the other hand, a *nunc pro tunc* assignment filed before the filing date of the action with an effective assignment date before the action does effect a valid transfer of rights sufficient to confer standing. *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211, 48 U.S.P.Q.2d 1010 (Fed.Cir.1998); *Gaia*, 93 F.3d at 779-80 (Fed.Cir.1996) (quoting <u>Procter & Gamble</u>, 917 F.Supp. at 310).
>
> Here, it is clear from the record that the *nunc pro tunc* assignments were executed in 1991, dkt. no. 84, at 32, long before this suit was filed in 1999. There is therefore nothing invalid about the assignments and no gap in the chain of title of the '303 patent. Accordingly, Sunrise, as the assignee of the '303 and '224 patents, has standing to pursue a civil remedy for patent infringement against AirSep.

<u>Id</u>. at 437.

The acceptance of *nunc pro tunc* assignments prior to the filing date of a lawsuit makes sense under traditional contract principles. The well-settled rule of contract interpretation is that parties have the legal power to make agreements retroactively effective as of an earlier date. <u>See, e.g.</u> <u>American Cyanamid Co. v. Ring</u>, 248 Ga. 673, 674, 286 S.E.2d 1, 3 (1982) ("It is elemental that contracting parties may agree to give retroactive effect...to their contracts as they see fit.").  Because the power to ascribe retroactive effect is "elemental" and because Congress did not see fit to expressly limit effective patent assignments to only those written instruments that purport to be effective on or after the date of their execution, the correct interpretation of 35 U.S.C. § 261 is that Congress intended to permit

patentees full freedom to contract to assign their patent rights as of any date they may choose, as long as they do so in writing. <u>Perrin v. United States</u>, 444 U.S. 37, 42 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.").

In the present case, Defendants assert that there was a break in chain of title between Banta and R.R. Donnelly. To the extent such break occurred (which is disputed), Banta fixed the break by executing the assignment agreement on May 24, 2013. Ex. G at 4. In the assignment, Banta assigned any rights (including, without limitation, title to the Asserted Patents and rights to sue for all past, present, and future infringements) that existed in the Asserted Patents for the period from January 3, 2013 to the date of assignment. This assignment, coupled with the R.R. Donnelly assignment to Media Innovations, indicate a clear intent between Banta and R.R. Donnelly for R.R. Donnelly to have rights in the Asserted Patents that would enable R.R. Donnelly to convey such rights to a future assignee. There would be no reason for R.R. Donnelly to execute the assignment to Media Innovations unless there was a clear agreement and expectation between R.R. Donnelly and Banta for R.R. Donnelly to acquire the Asserted Patents and transfer them to an assignee. As Defendants point out, R.R. Donnelly owns 100% of Banta such that it could and did in fact make the transfer of the Asserted Patents occur. Indeed, Paul Rodriguez, who signed the assignment agreement between R.R. Donnelly and Media Innovations also executed the attestation on the Banta assignment. All of the clerical aspects, namely, ensuring the necessary transfers were in writing, occurred well in advance of the earliest filing date. Accordingly, there is no break in the chain of title that would deny standing. No further execution of assignments is needed. To do so would ignore the practical considerations of a just, speedy, and inexpensive

13

determination of this action solely for CTP to refile its complaints in cases that have been pending for years over a matter that was resolved prior to any of the original lawsuits.

## B. Defendants' "Prejudice" Assertion Is Unavailing.

Defendants are afraid of the exposure of these lawsuits. Defendants or their proxies (whether industry association, equipment manufacturers, or motley crews of Defendants) have completely and very publicly failed to invalidate the claims of the Asserted Patents in six separate *inter partes* review proceedings.[4] Indeed, PTAB has refused to institute proceedings (the very first step of the process) to invalidate claims 4-9 of the '349 patent on three separate occasions. Facing the daunting task of near certain liability determinations, and without any real ability to attack the validity of the patents if (or, as CTP would conjecture, when) their *Alice* motion fails, Defendants suddenly assert that R.R. Donnelly is a necessary party if, for no other reason, than CTP might not be able to pay an award under 35 U.S.C. § 285 if Defendants somehow defeat CTP's infringement claims and prove that defeating such claims gives rise to an exceptional case. See Memo. at 12. The fact that Defendants do not like the adversary at hand cannot be considered "prejudice" under any standard thus adopted by any court in the United States. Indeed, litigants rarely like who has sued them. Moreover, there is no law that requires a litigant to be able to satisfy a contrary determination. To do so would bar virtually all citizens access to the court. Furthermore, given their deficient track record on invalidity positions after spending hundreds of thousands of dollars on failed *inter partes* review proceedings, Defendants have no more likely chance of succeeding against R.R. Donnelly than they do against CTP. Defendants' complaint of "prejudice" is meritless.

---

[4] The appeal of the only PTAB decision filing claims unpatentable (claims 1-9 of the '155 patent) is ongoing,

### III.    <u>CONCLUSION</u>

For the foregoing reasons, CTP respectfully requests the Court deny the Joint Motion in its entirety.

Respectfully submitted,

/s/ Samuel F. Miller
Samuel F. Miller, TN BPR No. 22936
Maia T. Woodhouse, TN BPR No. 30438
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
Baker Donelson Center
211 Commerce Street, Suite 800
Nashville, Tennessee 37201
Telephone: (615) 726-5753
Fax: (615) 744-5753
Email: smiller@bakerdonelson.com
            mwoodhouse@bakerdonelson.com

L. Clint Crosby, GA Bar No. 197877
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
Monarch Plaza, Suite 1600
3414 Peachtree Road, N.E.
Atlanta, Georgia 30326
Telephone: (678) 406-8702
Fax: (678) 406-8802
Email: ccrosby@bakerdonelson.com

*Attorneys for CTP Innovations, LLC*

## <u>CERTIFICATE OF SERVICE</u>

On April 8, 2016, the foregoing document was electronically filed.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. mail, postage prepaid.  Parties may access this filing through the Court's electronic filing system.

<u>/s/ Samuel F. Miller</u>
Samuel F. Miller

16