**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**BALTIMORE DIVISION**

| | |
|---|---|
| IN RE CTP INNOVATIONS, LLC PATENT LITIGATION ACTIONS | Case No. 14-md-02581-MJG (Lead Action) |
| CTP INNOVATIONS, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>AMERICAN PRINTING COMPANY, INC.,<br><br>        Defendant. | Case No. 14-cv-03890-MJG |
| CTP INNOVATIONS, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>ARANDELL CORPORATION,<br><br>        Defendant. | Case No. 15-cv-01693-MJG |
| CTP INNOVATIONS, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>CENVEO CORPORATION,<br><br>        Defendant. | Case No. 15-cv-03124-MJG |

CTP INNOVATIONS, LLC,

        Plaintiff,

v.

COMMAND WEB OFFSET COMPANY, INC.

        Defendant.

Case No. 15-cv-01470-MJG

---

CTP INNOVATIONS, LLC,

        Plaintiff,

v.

DIRECTMAIL.COM,

        Defendant.

Case No. 15-cv-01975-MJG

---

CTP INNOVATIONS, LLC,

        Plaintiff,

v.

EBSCO INDUSTRIES, INC.,

        Defendant.

Case No. 14-cv-03884-MJG

---

CTP INNOVATIONS, LLC,

        Plaintiff,

v.

ENNIS, INC.,

        Defendant.

Case No. 15-cv-02391-MJG

CTP INNOVATIONS, LLC,

      Plaintiff,

v.

F.C.L. GRAPHICS, INC.,

      Defendant.

Case No. 15-cv-01550-MJG

---

CTP INNOVATIONS, LLC,

      Plaintiff,

v.

GEO GRAPHICS, INC.,

      Defendant.

Case No. 14-cv-03888-MJG

---

CTP INNOVATIONS, LLC,

      Plaintiff,

v.

INDEXX, INC.,

      Defendant.

Case No. 14-cv-03889-MJG

---

CTP INNOVATIONS, LLC,

      Plaintiff,

v.

JET PRINTING, LLC,

      Defendant.

Case No. 14-cv-03893-MJG

CTP INNOVATIONS, LLC,

      Plaintiff,

v.

JOURNAL GRAPHICS, INC.,

      Defendant.

Case No. 15-cv-03123-MJG

---

CTP INNOVATIONS, LLC,

      Plaintiff,

v.

MIDLAND INFORMATION RESOURCES,

      Defendant.

Case No. 15-cv-02016-MJG

---

CTP INNOVATIONS, LLC,

      Plaintiff,

v.

PUBLICATION PRINTERS CORPORATION,

      Defendant.

Case No. 15-cv-01469-MJG

---

CTP INNOVATIONS, LLC,

      Plaintiff,

v.

SANDY ALEXANDER, INC.,

      Defendant.

Case No. 15-cv-01471-MJG

CTP INNOVATIONS, LLC,

        Plaintiff,

v.

SCHUMANN PRINTERS, INC.,

        Defendant.

Case No. 15-cv-01813-MJG

---

CTP INNOVATIONS, LLC,

        Plaintiff,

v.

SPECIALTY PROMOTIONS, INC.,

        Defendant.

Case No. 15-cv-01692-MJG

---

TAYLOR PUBLISHING COMPANY,

        Plaintiff,

v.

CTP INNOVATIONS, LLC,

        Defendant.

Case No. 14-cv-03894-MJG

---

CTP INNOVATIONS, LLC,

        Plaintiff,

v.

TIMES PRINTING CO., INC.,

        Defendant.

Case No. 15-cv-02052-MJG

CTP INNOVATIONS, LLC,

        Plaintiff,

v.

TREND OFFSET PRINTING SERVICES, INC.,

        Defendant.

Case No. 15-cv-02389-MJG

---

CTP INNOVATIONS, LLC,

        Plaintiff,

v.

VALASSIS COMMUNICATIONS, INC.,

        Defendant.

Case No. 15-cv-01807-MJG

---

CTP INNOVATIONS, LLC,

        Plaintiff,

v.

VERSA PRESS, INC.,

        Defendant.

Case No. 15-cv-02682-MJG

---

CTP INNOVATIONS, LLC,

        Plaintiff,

v.

WALTON PRESS INC.,

        Defendant.

Case No. 14-cv-03887-MJG

| | |
|---|---|
| CTP INNOVATIONS, LLC, | Case No. 14-cv-03886-MJG |
| Plaintiff, | |
| v. | |
| WORLDWIDE TICKETS AND LABELS, INC., | |
| Defendant. | |
| CTP INNOVATIONS, LLC, | Case No. 15-cv-01646-MJG |
| Plaintiff, | |
| v. | |
| WORZALLA PUBLISHING COMPANY, | |
| Defendant. | |

**DEFENDANTS' CONSOLIDATED REPLY IN SUPPORT OF THEIR RULE 12(b)(1)
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION DUE TO
PLAINTIFF'S LACK OF STANDING**

# TABLE OF CONTENTS

I.   R.R. DONNELLEY STILL HOLDS ALL RIGHTS AND TITLE IN
     THE ASSERTED PATENTS ............................................................................1

     A.   The Transfer of Rights and Title in the Asserted Patents from
          R.R. Donnelley to Media and then CTP Was Not Immediate or
          Automatic ................................................................................................2

     B.   *Abraxis* Applies To This Case ...............................................................6

     C.   The *Nunc Pro Tunc* Assignment Does Not Retroactively Grant
          Standing Even If Made by the Time Suit Was Filed ...........................10

II.  CONCLUSION ............................................................................................12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraxis Bioscience, Inc. v. Navinta LLC*,
   625 F.3d 1359 (Fed. Cir. 2010)................................................................4, 7, 8, 10

*Arachnid, Inc. v. Merit Indus., Inc.*,
   939 F.2d 1574 (Fed. Cir. 1991).......................................................................8, 9

*C.R. Daniels, Inc. v. Naztec Int'l Grp., LLC*,
   No. ELH-11-01624, 2012 WL 1268623 (D. Md. Apr. 13, 2012)...........................5

*Crown Die & Tool Co. v. Nye Tool & Mach. Works*,
   261 U.S. 24 (1923).........................................................................................9

*Filmtec Corp. v. Allied-Signal Inc.*,
   939 F.2d 1568 (Fed Cir. 1991)........................................................................4

*Gaia Techs., Inc. v. Reconversion Techs., Inc.*,
   93 F.3d 774 (Fed. Cir. 1996).........................................................................12

*Glynne v. Wilmed Healthcare*,
   699 F.3d 380 (4th Cir. 2012) .......................................................................10

*Mas-Hamilton Grp. v. LaGard, Inc.*,
   156 F.3d 1206 (Fed. Cir. 1998)..................................................................11, 12

*RAD Data Commc'ns, Inc. v. Patton Elecs. Co.*,
   882 F. Supp. 351 (S.D.N.Y. 1995).................................................................2

*Speedplay, Inc. v. Bebop, Inc.*,
   211 F.3d 1245 (Fed. Cir. 2000).......................................................................5

CTP's opposition relies almost entirely on the proposition that the original Assignment from R.R. Donnelley to Media assigned an "expectant interest" and therefore transferred title to the Asserted Patents automatically once R.R. Donnelley later obtained the rights it did not own at the time of the original assignment.  [Lead Action, ECF No. 361 ("CTP Response") at 1.]  But this is wrong – the assignment at issue did not include language sufficient to create an expectant interest and was not effective to create a subsequent "automatic" assignment.  CTP's argument in support of an expectant interest twists the plain language of the critical Assignment #2, and wrongfully asserts that the phrase "rights, title, and interest" was specially defined in the Assignment to include an expectant interest in the Asserted Patents when the Assignment says no such thing.  Indeed, the fact that R.R. Donnelley later deemed it necessary to insert (ineffective) *nunc pro tunc* language in the final assignment received from Banta Corporation confirms that R.R. Donnelley had not previously assigned an "expectant" interest as CTP now contends.

Because R.R. Donnelley is the owner of the Asserted Patents, CTP lacks constitutional standing to maintain the present lawsuits against Defendants.  Thus, CTP's original and amended Complaints must be dismissed pursuant to Rule 12(b)(1).

## I.      R.R. DONNELLEY STILL HOLDS ALL RIGHTS AND TITLE IN THE ASSERTED PATENTS

The assignment history is reiterated below in the following table for reference:

| # | Date | Assignor | Assignee |
|---|------|----------|----------|
| 1 | 09/21/1999 | All inventors | Banta Corporation |
| 2 | 02/12/2013 | R.R. Donnelley & Sons Company | Media Innovations, LLC |
| 3 | 03/05/2013 | Media Innovations, LLC | CTP Innovations, LLC |
| 4 | 05/24/2013 | Banta Corporation | R.R. Donnelley & Sons Company |

### A.     The Transfer of Rights and Title in the Asserted Patents from R.R. Donnelley to Media and then CTP Was Not Immediate or Automatic

R.R. Donnelley continues to hold all rights and title in the Asserted Patents because Assignments #2 and #3 did not automatically assign the rights or title obtained by R.R. Donnelley in Assignment #4 to Media and CTP.  The R.R. Donnelley to Media assignment (Assignment #2) recites that R.R. Donnelley "*is* the owner of *all* rights, title and interest in" the Asserted Patents.  [Lead Action, ECF No. 354-6 ("Assignment #2") at 4 (emphasis added).]  This statement was false when made and is by itself grounds to nullify the assignment outright.  *RAD Data Commc'ns, Inc. v. Patton Elecs. Co.*, 882 F. Supp. 351, 353 (S.D.N.Y. 1995) ("Since Develcon had nothing to assign, the purported assignment from Develcon to plaintiff of the Develcon patents is a nullity.").

Moreover, while completely false at the time, this clear present-tense language of the preamble *presumes* that R.R. Donnelley already held title at that time -- not that it was *expecting* to acquire title at some later time.  [Assignment #2 at 4.]  In other words, and contrary to CTP's assertion, paragraph 1 of Assignment #2 does not "convey[] right, title and interest to [an] *expectant* interest."  [CTP Response at 8 (emphasis added).]  Rather, it purports to convey *current* rights and title to Media, which R.R. Donnelley simply did not have.

Indeed, Assignment #2 contains absolutely no language—and understandably so—assigning "expectant rights or title" in the Asserted Patents themselves.  CTP mischaracterizes paragraph 6 of Assignment #2 when it says that "[t]he agreements define 'rights, title and interest' in the Patents" in paragraph 6.  [CTP Response at 5.]  Paragraph 6 is not a definitional provision.  Paragraph 6 states:

> All of the rights, title and interest in and to the Patents sold, transferred, assigned and set over to Assignee hereunder include all income, royalties, damages and payments now or hereafter due or payable with respect thereto, and all causes of action (whether in

law or equity) and the right to sue, counterclaim and recover for
the past, present and future infringement of the rights assigned or
to be assigned hereunder.

First, contrary to the assertion in CTP's brief, the language of this paragraph does not,
under any reasonable interpretation, expressly "*define*" the phrase "rights, title and interest."
More significantly, read in context, the "assigned or to be assigned hereunder" phrase
contemplates no automatic assignment of *rights* or *title* in the Asserted Patents themselves.
Rather, it contemplates future assignments of *litigation rights* like "income, royalties, damages
and payments now or hereafter due or payable with respect" to the patents allegedly conveyed.
[Assignment #2 ¶ 6.]  These are not expectant interests of substantial rights or title in the
Asserted Patents.

Indeed, the error in CTP's reading of Paragraph 6 is confirmed by Paragraph 3 of the
assignment which specifically acknowledges that R.R. Donnelley "*will* take" reasonable efforts
to execute all papers and perform all acts necessary to secure rights and title in the Asserted
Patents to Media.  [Assignment #2 ¶ 3 ("Assignor will take reasonable efforts to execute all
papers, take all rightful oaths, and do all acts which may be reasonably necessary for securing
and maintaining rights to the Patents in any country and for vesting title thereto in Assignee, its
successors, assigns and legal representatives or nominees.").]  These are promises from R.R.
Donnelley to Media that it will take *further efforts* to secure rights and title in the Asserted
Patents to Media "which may be reasonably necessary."  [Assignment #2 ¶ 3.]  These are not, as
CTP describes them, "ministerial matters."  [CTP Response at 9.]  Assuming Assignments #2
and #3 are not nullities, to effect valid transfer of title and rights under paragraph 3, R.R.
Donnelley needed to fulfill its promise to execute valid assignments to Media when it eventually
obtained valid title itself.  This is in line with *Abraxis*: "Because the APA is a promise by AZ–
UK to assign the relevant patents to Abraxis when AZ–UK obtains legal title, under our 'promise

3

to assign' cases, *a subsequent written agreement is necessary* to consummate the assignment."
*Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1365 (Fed. Cir. 2010) (emphasis
added). Yet, here, *no* subsequent assignment has been made by R.R. Donnelley to Media;
accordingly, no transfer of title has occurred to this date.

CTP's reliance on *Filmtec* to support its theory that R.R. Donnelley transferred an
expectant interest to Media is unavailing. In that case, the Court was considering an employment
agreement and whether that employment agreement expressly granted rights in any *future
invention* (not patent) made by the employee (Cadotte) to the employer (MRI). *Filmtec Corp. v.
Allied-Signal Inc.*, 939 F.2d 1568, 1573 (Fed Cir. 1991). If so, MRI would have an expectant
interest in the *future inventions* of Cadotte. *Id.* Once the invention is made and a patent
application is filed, the title would transfer to the assignee MRI. *Id.* at 1572. Cadotte would no
longer have title, so any assignment made by the employee would be a nullity. *Id.* Thus, when
Cadotte later attempted to assign the patent to his own company (FilmTec), the assignment was
invalid and FilmTec lacked standing to bring the action under scrutiny. *Id.* ("[I]f Cadotte granted
MRI rights in inventions made during his employ, . . . then Cadotte had nothing to give to
FilmTec and his purported assignment to FilmTec is a nullity. Thus, ***FilmTec would lack both
title to the '344 patent and standing to bring the present action.***" (emphasis added)). Just like
Cadotte, R.R. Donnelley had nothing to give Media in Assignment #2 (and Media nothing to
give CTP in Assignment #3). Perhaps because of R.R. Donnelley's purchase of Banta, R.R.
Donnelley believed that it was the true "owner of all rights, title and interest in and to" the
Asserted Patents. [Assignment #2 at 4.] But it was not. Therefore, R.R. Donnelley's purported
"assignment" of what it thought were its current rights in the Asserted Patents—but not any
future rights—is a nullity just like Cadotte's assignment to FilmTec.

4

Like *Filmtec*, *Speedplay* and *C.R. Daniels* are similarly unavailing for CTP.  *Speedplay* also involved an employee agreement to assign over *inventions,* not existing *patents*, defined as "any intellectual property conceived or developed by Bryne within the scope of his employment and during the term of the agreement."  *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1253 (Fed. Cir. 2000).  Unlike R.R. Donnelley's assignment to Media, the agreement in *Speedplay* (1) explicitly conveyed title in the future inventions and (2) was not merely a promise to assign those future inventions.  *Id.  C.R. Daniels* involved an employee agreement to assign over inventions as well.  The Court found that "the phrase '***without further consideration***' is of key importance in the analysis, as it indicates that the agreements contemplated that 'no further act would be required once an invention came into being; the transfer of title would occur by operation of law.'"  *C.R. Daniels, Inc. v. Naztec Int'l Grp., LLC*, No. ELH-11-01624, 2012 WL 1268623, at *11 (D. Md. Apr. 13, 2012) (citing *FilmTec*, 939 F.2d at 1568) (emphasis added).  Assignment #2 contains no such language.  In fact, Assignment #2 explicitly contemplates that R.R. Donnelley "will take reasonable efforts to execute all papers, take all rightful oaths, and do all acts which may be reasonably necessary for ***securing and maintaining rights*** to the Patents in any country and for ***vesting title*** thereto in" Media.  [Assignment #2 ¶ 3 (emphasis added).] These are not "ministerial tasks" like completing papers that would help the employer "in the prosecution of applications for patent thereon" that the *C.R. Daniels* court did not feel rose to the level of further assurances.  *C.R. Daniels*, 2012 WL 1268623, at *13.  Instead, they are papers, oaths, and acts for *securing rights* and *vesting title*.

To reiterate, since R.R. Donnelley did not actually own the Asserted Patents when Assignment #2 was executed and was not attempting to assign "expectant" rights or title in the Asserted Patents, Assignment #2 should be nullified.  However, even assuming its validity, the

clear language of paragraph 3 demonstrates that the parties contemplated the necessity of further

acts to consummate the assignment of rights and title in the Asserted Patents in the event that the

rights and title were not secured by the execution of Assignment #2. In other words, if

Assignment #2 is not a nullity on its face, another assignment from R.R. Donnelley to Media

needed to be executed per the requirements of paragraph 3.

Finally, the most telling evidence that Assignment #2 did not automatically and

immediately assign title in the Asserted Patents to Media and CTP is R.R. Donnelley's own

behavior. When R.R. Donnelley finally obtained title to the Asserted Patents in Assignment #4,

R.R. Donnelley specifically incorporated a *nunc pro tunc* provision to lead off the agreement in

an attempt to retroactively predate Assignments #2 and #3. [Lead Action, ECF No.354-8

("Assignment #4") at 3.] If title to the Asserted Patents automatically and immediately

transferred to Media and CTP under the language in Assignments #2 and #3, respectively, there

would be no need to include a *nunc pro tunc* provision in Assignment #4. As discussed in

Defendants' opening brief, such a *nunc pro tunc* provision is ineffective as a matter of law;

however, R.R. Donnelley's inclusion of such language belies CTP's argument that "expectant"

rights, title, and interest were conveyed automatically by Assignment #2.

### B. *Abraxis* Applies To This Case

As explained in Defendants' opening memorandum, the Federal Circuit *Abraxis* case

squarely applies to this case. [Lead Action, ECF No. 354-1 at 6-7.] Both of CTP's attempts to

distinguish the case are unavailing.

First, CTP argues that the assignments in *Abraxis* "were not transfers of expectant

interests and did not automatically assign rights" to the assignee. [CTP Response at 7.] As

explained above, this does not distinguish *Abraxis* because the assignments in this multi-district

litigation also do not automatically assign rights and expectant interests. CTP cites to the "shall

6

or shall cause" language and "Further Assurances" provision requiring that "Seller will . . . execute . . . any and all . . . further assignments . . . as necessary to . . . vest in Buyer" as evidence that there was no immediate transfer of any interests or title in *Abraxis*. [*Id.* at 7-8.] But that same language (minus the "Further Assurances" heading), appears in Assignment #2. Assignment #2 states "that Assignor will take reasonable efforts to execute all papers" and "do all acts which may be reasonably necessary for securing and maintaining rights . . . and for vesting title." [Assignment #2 ¶ 3.] Thus, rather than distinguishing *Abraxis*, CTP demonstrates its similarity to the facts of these cases.

Second, CTP argues that an assignment in *Abraxis* was executed after Abraxis filed the lawsuit. [CTP Response at 9.] This "difference" to the instant cases is merely a red herring. While it is true that the November 12, 2007 agreement in *Abraxis* was executed after the lawsuit began on March 15, 2007, it was the break in the chain of assignments *before* the lawsuit began—like in the instant cases—that doomed Abraxis's standing. The assignments made by the time the lawsuit began match CTP's situation as shown directly below[1]:

| # | Date | Assignor | Assignee | Date | Assignor | Assignee |
|---|------|----------|----------|------|----------|----------|
| 1 | 09/21/1999 | All inventors | Banta | 10/16/1986 | Inventor | Astra L |
| 2 | 02/12/2013 | R.R. Donnelley | Media | 06/28/2006 | AZ-UK | Abraxis |
| 3 | 03/05/2013 | Media | CTP | | | |
| 4 | 05/24/2013 | Banta | R.R. Donnelley | 03/15/2007 | Astra L | AZ-UK |
| - | 06/14/2013 | *Lawsuits begin* | | 03/15/2007 | *Lawsuit begins* | |

In the instant actions and *Abraxis*, the inventors assigned the patents to an original assignee (Banta and Astra L, respectively). The assignor entity (i.e., R.R. Donnelley and AZ-UK) then prematurely assigned rights and title it did not have to the plaintiff (i.e., CTP [through

---

[1] Only the asserted patent originally assigned to Astra L is charted. The other asserted patents transferred from AZ-AB to AZ-UK have the same break in the chain of title. *Abraxis*, 625 F.3d at 1361-62.

Media] and Abraxis).  Finally, before the lawsuits began, the original assignee remembered to assign the patents to the assignor entity, using a *nunc pro tunc* provision in a last ditch attempt to predate and cure the ineffective, premature assignment.  Based on these assignments, the Federal Circuit found that "there was no valid written assignment to Abraxis. . . . Without the transfer of legal title of the patents, Abraxis had no standing to bring this infringement action."  *Id.* at 1366.  The Federal Circuit ultimately held that "the action must be dismissed because Abraxis lacked standing **on the day it filed the action**."  *Id.* at 1367 (emphasis added).

Finally, CTP misunderstands what it calls an "exception" to *Abraxis.*  [CTP Response at 10.]  The "exception" is nothing more than the unexceptional idea that an assignee can acquire, by proper express assignment, the right to sue for infringements which predate the assignment.  *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1578 n.7 (Fed. Cir. 1991); *see also Abraxis*, 625 F.3d at 1367.  In that situation, the assignee is also granted the right of action to sue for past infringements that occurred when the assignor held title.  *See Arachnid*, 939 F.2d at 1578 n.7.  Here, paragraph 6 of Assignment #2 provides Media with the right to sue for past infringement "of the rights assigned or to be assigned hereunder."  [Assignment #2 ¶ 6.]  Yet, the "rights assigned or to be assigned hereunder" were a nullity at the time of Assignment #2 because R.R. Donnelley itself lacked the right to sue for past infringement at the time of Assignment #2.  Simply stated, R.R. Donnelley had not been assigned *any* rights in the patents at the time of Assignment #2.  Thus, because R.R. Donnelley had no right to sue for past infringement, it could not assign that non-existent right to Media either.

Regardless of whether Assignment #2 is a nullity and even if the "to be assigned" language is interpreted to grant an expectant interest in the right to sue for past infringements, CTP still does not have constitutional standing.  The grant of a right to sue for past infringement

is ***not*** an exception to ***constitutional standing*** but rather an exception to the rule that a patentee

only has rights to sue for infringements that occurred while the patentee held title or all

substantial rights.  The Supreme Court has held since 1923 that rights in past infringements and

other non-substantial rights without title to the patent do not confer standing:

> Counsel for plaintiff cites Hayward v. Andrews (C. C.) 12 Fed. 786, to maintain
> the contrary and to sustain the right of the assignee of claims for past
> infringements to maintain suit. The case cited is not in point, the assignee in that
> case held the legal title to the patent.
>
> The sole exception to the rule that only he who is the owner of the patent at the
> time of the infringement can sue for damages to which Professor Robinson refers
> is when such owner ***assigns the patent and also*** the claim for past infringements
> to the same person. In such a case, as the title and ownership of the claims are
> united, it is held that the owner may sue. . . .
>
> Both at law and in equity, either the owner of the patent at the time of the past
> infringement, or the subsequent owner of the patent who is at the same time the
> assignee of the claims for past infringement, must be a party to a suit for damages
> for the past infringement. If the owner of the patent when the infringements took
> place has assigned his patent to one, and his claims for damages for infringement
> to another, then the latter cannot sue at law at all but must compel his assignor of
> the claims to sue for him.

*Crown Die & Tool Co. v. Nye Tool & Mach. Works*, 261 U.S. 24, 43-44 (1923) (emphasis

added); *see also Arachnid*, 939 F.2d at 1578 n.7 ("The exception referred to by Robinson is

where the assignment of a patent ***is coupled*** with an assignment of a right of action for past

infringements." (emphasis added)).  Therefore, if the past infringement right of action is assigned

without assignment of title or substantial rights, *only if and when* title or all substantial rights are

transferred to assignee is the assignee able to sue for infringement during the assignor's

ownership.  Without title or all substantial rights, the assignee of the right in past infringements

still lacks constitutional standing.  *See Crown Die*, 261 U.S. at 43-44.

C.      The *Nunc Pro Tunc* Assignment Does Not Retroactively Grant Standing Even If Made by the Time Suit Was Filed

In *Abraxis*, two assignments contained *nunc pro tunc* provisions and both were ineffectual to confer standing.  The March 15, 2007 assignments from Astra L and AZ-AB to AZ-UK (akin to Assignment #4 in the instant cases) made by the time suit was filed had their *nunc pro tunc* provision rendered "irrelevant" by the Federal Circuit.  *Abraxis*, 625 F.3d at 1365.  "Even if given retroactive effect, the March 15, 2007 assignments do not automatically assign the patents to Abraxis; a subsequent written agreement was necessary."  *Id.*  The only subsequent written assignment in *Abraxis* was the November 12, 2007 agreement, to which the Federal Circuit also denied *nunc pro tunc* effect as well because a defect in constitutional standing cannot be cured retroactively.  *Id.* at 1366.

The *nunc pro tunc* assignment, Assignment #4 from Banta to R.R. Donnelley, should meet the same fate regarding constitutional standing as in *Abraxis*.  First, despite being executed prior to filing suit, the *nunc pro tunc* assignment between Banta and R.R. Donnelley does nothing to change the fact that an expectant interest in the Asserted Patents was not conveyed from R.R. Donnelley to Media and Media to CTP in assignments # 2 and 3, as discussed above.  Second, *nunc pro tunc* (which literally means "now for then") provisions are used for the purpose of correcting prior clerical errors; they are not the legal equivalent of a time machine for the purpose of retroactively recording events that never occurred in the first place.  *See Glynne v. Wilmed Healthcare*, 699 F.3d 380, 383-84 (4th Cir. 2012) (holding that *nunc pro tunc* "may not be used to retroactively record an event that never occurred or have the record reflect a fact that never existed").  Yet that is exactly how CTP urges the Court to interpret Assignment #4 in this case.

10

CTP's reliance on *Mas-Hamilton* to support its argument is also flawed.  In *Mas-Hamilton*, there was no dispute that the patent holder was the owner of the patent-in-suit the declaratory judgment action was filed.  *Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998).  Rather, the dispute focused on whether the patent holder maintained standing to pursue the appeal because the patent holder transferred all interests in the patent to another entity during the pendency of the case.  *Id.* at 1210.  The *nunc pro tunc* assignment made after initiating the lawsuit only applied to the right to sue for past infringement, not to the transfer of title in the patent itself.  *Id.* at 1210-11.  Therefore, the *nunc pro tunc* assignment in *Mas-Hamilton* was not made to confer retroactive standing because "standing was not deficient at the time the suit was filed."  *Id.* at 1211.  CTP's reliance on *Mas-Hamilton* for the proposition that a *nunc pro tunc* assignment can cure a standing deficiency at the time the suit was filed is misplaced.

In contrast, the *nunc pro tunc* provision in Assignment #4 (like the *nunc pro tunc* provision in the March 15, 2007 Astra-L to AZ-UK assignment in *Abraxis*) sought to confer Banta's "entire right, title, and interest in, to, and under" the Asserted Patents (required for standing) retroactively on R.R. Donnelley, in an effort to breathe life into the null assignments to Media and CTP (Assignments #2 and #3).  [Assignment #4 at 3.]  But even if Assignment #2 is valid, it imposed an obligation upon R.R Donnelley, as the assignment in *Abraxis* imposed an obligation upon AZ-UK, to take further, additional acts to secure and maintain rights and vest title in the Patents that had not been assigned at the time of Assignment #2's execution.  [Assignment #2 ¶ 3.]  Those subsequent acts were never taken, because no subsequent assignments to Media and CTP were made.

11

CTP's reliance on *Sunrise* is similarly flawed.  First, *Sunrise* is a district court case from the Western District of Pennsylvania that pre-dates the Federal Circuit's *Abraxis* decision.  Thus, Sunrise is of no precedential effect and cannot be relied upon to reach a result contrary to *Abraxis*.  Second, *Sunrise* itself is mistaken as to the law even before *Abraxis*.  For example, *Sunrise* cites *Mas-Hamilton* for its statement that "a *nunc pro tunc* assignment filed before the filing date of the action with an effective assignment date before the action does effect a valid transfer of rights sufficient to confer standing."  [CTP Response at 12.]  But *Mas-Hamilton* does not support that statement.  As described above, standing at the time of the lawsuit was not disputed in *Mas-Hamilton*.  The *nunc pro tunc* assignment was only used for the limited purpose of granting the right to sue for past infringement; it "is *not* being used to cure deficient standing." *Mas-Hamilton*, 156 F.3d at 1211 (emphasis added).  Similarly, the other case relied on in *Sunrise* (*Gaia Techs*) also refutes the *Sunrise* court's notion that a *nunc pro tunc* assignment can confer standing retroactively:

> At trial, Gaia's counsel characterized this [*nunc pro tunc*] assignment as follows:
>
>> The documents are simply a reflection of what the oral agreement was between Banstar and Gaia for a long time. Then we discovered there wasn't any recording of assignments in writing, so we executed, drafted the assignments and made them effective as of the date they were supposed to be effective.
>
> This agreement is not sufficient to confer standing on Gaia retroactively.

*Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 779 (Fed. Cir. 1996).  Under Federal Circuit authority, Assignment #4's *nunc pro tunc* provision is ineffectual to retroactively confer standing and CTP's original and Amended Complaints must be dismissed.

## II.    CONCLUSION

For all the above reasons and the reasons set forth in their opening brief, Defendants respectfully request that this Court dismiss this multi-district litigation for lack of subject matter

jurisdiction and dismiss each of CTP's Complaints and Amended Complaints against each Defendant.

Dated:  April 15, 2016.                    Respectfully submitted,

                                           */s/ Andrew B. Campbell*
                                           Andrew B. Campbell (PHV No. 802757)
                                           WYATT, TARRANT & COMBS, LLP
                                           2525 West End Ave., Suite 1500
                                           Nashville, TN  37203
                                           Telephone:  (615) 244-0020
                                           Facsimile:   (615) 256-1726
                                           acampbell@wyattfirm.com

                                           Stephen C. Hall (PHV No. 802768)
                                           WYATT, TARRANT & COMBS, LLP
                                           500 West Jefferson Street, 26th Floor
                                           Louisville, KY  40202
                                           Telephone:  (502) 562-7355
                                           Facsimile:   (502) 589-0309
                                           schall@wyattfirm.com

                                           *Counsel for American Printing Co., Inc.*


                                           */s/ Thomas P. Heneghan*
                                           Thomas P. Heneghan (PHV No. 803566)
                                           WHYTE HIRSCHBOECK DUDEK S.C.
                                           P.O. Box 1379
                                           Madison, WI  53701-1379
                                           Telephone:  (608) 255-4440
                                           Facsimile:   (608) 258-7138
                                           theneghan@whdlaw.com
                                           mrivera@whdlaw.com

                                           *Counsel for Arandell Corporation, Schumann
                                           Printers, Inc., and Times Printing Co., Inc.*

/s/ Gene S. Winter

Gene S. Winter (MD Bar ID:  804199)
Benjamin C. White (MD Bar ID:  97368)
Jonathan A. Winter (MD Bar ID:  804200)
ST. ONGE STEWARD JOHNSTON &
REENS LLC
986 Bedford Street
Stamford, CT  06905-5619
Telephone:  (203) 324-6155
Facsimile:   (203) 327-1096
gwinter@ssjr.com
bwhite@ssjr.com
jwinter@ssjr.com
litigation@ssjr.com

*Counsel for Cenveo Corporation*

/s/ Eric W. Schweibenz

Eric W. Schweibenz (admitted *pro hac vice*)
Scott A. McKeown (admitted *pro hac vice*)
Christopher Ricciuti (admitted *pro hac vice*)
OBLON, McCLELLAND, MAIER &
NEUSTADT, L.L.P.
1940 Duke Street
Alexandria, VA  22314
Telephone:  (703) 413-3000
Facsimile:   (703) 413-2220
eschweibenz@oblon.com
smckeown@oblon.com
cricciuti@oblon.com

*Counsel for Command Web Offset Company,*
*Inc., Sandy Alexander, Inc., Specialty*
*Promotions, Inc., and Worzalla Publishing*
*Company*

14

*/s/ Steven E. Tiller*

Steven E. Tiller (Bar No. 11085)
Peter J. Davis (Bar No. 14069)
WHITEFORD, TAYLOR & PRESTON, LLP
7 St. Paul Street, Suite 1300
Baltimore, MD  21202-1626
Telephone:  (410) 347-9425
Facsimile:  (410) 223-4325
stiller@wtplaw.com
pdavis@wtplaw.com

*Counsel for Directmail.com*


*/s/ Robert J. Veal*

Robert J. Veal
VEAL INTELLECTUAL PROPERTY, LLC
11555 Medlock Bridge Road, Suite 100
Johns Creek, GA  30097
Telephone:  (678) 653-4758
Facsimile:  (678) 597-1101
rjveal@veal-ip.com

*Counsel for EBSCO Industries, Inc.*


*/s/ Dan Gus*

Dan Gus (State Bar No. 24007288)
GUS & GILBERT LAW FIRM, A
PROFESSIONAL CORPORATION
209 East Main Street
Waxahachie, TX  75165
Telephone:  (214) 960-4116
Facsimile:  (214) 960-4140
dan@gus-gilbert.com

*Counsel for Ennis, Inc.*

*/s/ Michael J. Curley*

Michael J. Curley (AZ Bar No. 025972)
(*Pro Hac Vice* MDL ID No. 803492)
QUARLES & BRADY LLP
One South Church Avenue, Suite 1700
Tucson, AZ  85701
Telephone:  (520) 770-8700
Facsimile:  (520) 770-2206
michael.curley@quarles.com

*Counsel for F.C.L. Graphics, Inc.*

*/s/ Derek S. Neilson*

Derek S. Neilson
MD Bar ID No. 97260 (*pro hac vice*)
ALSTON AND BIRD LLP
2828 North Harwood Street, Suite 1800
Dallas, TX  75201
Telephone:  (214) 922-3400
Facsimile:  (214) 922-3899
derek.neilson@alston.com

Doug Scribner
MD Bar ID No. 802845 (*pro hac vice*)
Emily Chambers
MD Bar ID No. 802810 (*pro hac vice*)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA  30309-3424
Telephone:  (404) 881-7000
Facsimile:  (404) 881-7777
doug.scribner@alston.com
emily.chambers@alston.com

*Counsel for Geo Graphics Inc.*

/s/ Anthony F. Blum

Anthony F. Blum (PHV No. 802725)
David B. Jinkins (PHV No. 802805)
Matthew A. Braunel (PHV No. 802727)
THOMPSON COBURN LLP
One US Bank Plaza
St. Louis, MO 63101-1693
Telephone: (314) 552-6000
Facsimile: (314) 552-7000
ablum@thompsoncoburn.com
djinkins@thompsoncoburn.com
mbraunel@thompsoncoburn.com

*Counsel for Jet Printing, LLC*

/s/ Elizabeth Tedesco Milesnick

Elizabeth Tedesco Milesnick
MILLER NASH GRAHAM & DUNN LLP
Fax: 503-224-0155
E-mail: Elizabeth.milesnick@millernash.com
*Counsel for Journal Graphics, Inc.*

/s/ April A. Price

April A. Price (Maryland Bar No. 803756)
LANE & WATERMAN LLP
220 North Main Street, Suite 600
Davenport, IA 52801
Telephone: (563) 324-3246
Facsimile: (563) 324-1616
aprice@l-wlaw.com

*Counsel for Midland Information Resources
a/k/a Elanders Americas*

17

*/s/ Robert R. Brunelli*

Robert R. Brunelli (admitted *pro hac vice*)
SHERIDAN ROSS P.C.
1560 Broadway, Suite 1200
Denver, CO  80202-5141
Telephone:  (303) 863-9700
Facsimile:   (303) 863-0223
rbrunelli@sheridanross.com
litigation@sheridanross.com

*Counsel for Publication Printers Corporation*


*/s/ John M. Jackson*

John M. Jackson (TX Bar No. 24002340)
(PHV No. 802739)
Nathaniel St. Clair, II (TX Bar No. 24071564)
(PHV No. 802745)
Matthew C. Acosta (TX Bar No. 24032577)
(PHV No. 802740)
Blake T. Dietrich (TX Bar No. 24087420)
(PHV No. 802752)
JACKSON WALKER L.L.P.
2323 Ross, Suite 600
Dallas, TX  75201
Telephone:  (214) 953-6000
Facsimile:   (214) 953-5822
jjackson@jw.com
nstclair@jw.com
macosta@jw.com
bdietrich@jw.com

*Counsel for Taylor Publishing, Worldwide
Tickets and Labels, Inc., Indexx, Inc. and
Versa Press, Inc.*

_/s/ Jonathan P. Hersey_
Jonathan P. Hersey (CA Bar No. 189240)
(PHV No. 803974)
Scott B. Lieberman (CA Bar No. 208764)
(PHV No. 803975)
Neil J. Cooper (CA Bar No. 277997)
(PHV No. 803980)
SLATER HERSEY & LIEBERMAN LLP
18301 Von Karman Avenue, Suite 1060
Irvine, CA  92612
Telephone:  (949) 398-7500
Facsimile:   (949) 398-7501
jhersey@slaterhersey.com
slieberman@slaterhersey.com
ncooper@slaterhersey.com

_Counsel for Trend Offset Printing Services, Inc._


_/s/ Ahmed J. Davis_
Ahmed J. Davis (Bar No. 17812)
FISH & RICHARDSON P.C.
1425 K Street, NW, 11th Floor
Washington, DC  20005
Telephone:  (202) 783-5070
Facsimile:   (202) 783-2331
davis@fr.com

David M. Barkan (CA Bar No. 160825)
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA  94063
Telephone:  (650) 839-5070
Facsimile:   (650) 839) 5071
barkan@fr.com

_Counsel for Valassis Communications, Inc._

*/s/ Robert W. Hughes, Jr.*

Robert W. Hughes, Jr. (GA Bar No. 376311)
(PHV No. 802755)
ROBERT W. HUGHES & ASSOCIATES, PC
390 West Crogan Street, Suite 230
Lawrenceville, GA  30046
Telephone:  (770) 469-8887
Facsimile:   (678) 690-6095
robby@hughespclaw.com

*Counsel for Walton Press, Inc.*

20

## <u>PROOF OF SERVICE</u>

I hereby certify that a true and correct copy of the attached **Defendants' Consolidated Reply In Support of Their Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction Due to Plaintiff's Lack of Standing** was served by means of the Court's CM/ECF system on all counsel of record who have consented to electronic service on this 15th day of April, 2016.

    /s/ *Ahmed J. Davis*
Ahmed J. Davis