IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE: CTP INNOVATIONS, LLC, PATENT LITIGATION | MDL No. 14-MD-2581 |
| TAYLOR PUBLISHING COMPANY v. CTP INNOVATIONS, LLC | 14-cv-3894-MJG |
| CTP INNOVATIONS, LLC v. EBSCO INDUSTRIES INC. | 14-cv-3884-MJG |
| CTP INNOVATIONS, LLC v. WORLDWIDE TICKETS AND LABELS, INC. | 14-cv-3886-MJG |
| CTP INNOVATIONS, LLC v. WALTON PRESS, INC. | 14-cv-3887-MJG |
| CTP INNOVATIONS, LLC v. GEO GRAPHICS INC. | 14-cv-3888-MJG |
| CTP INNOVATIONS, LLC v. INDEXX INC. | 14-cv-3889-MJG |
| CTP INNOVATIONS, LLC v. AMERICAN PRINTING COMPANY | 14-cv-3890-MJG |
| CTP INNOVATIONS, LLC v. JET PRINTING, LLC | 14-cv-3893-MJG |
| CTP INNOVATIONS, LLC v. PUBLICATION PRINTERS CORPORATION | 15-cv-1469-MJG |
| CTP INNOVATIONS, LLC v. COMMAND WEB OFFSET COMPANY, INC. | 15-cv-1470-MJG |
| CTP INNOVATIONS, LLC v. SANDY ALEXANDER, INC. | 15-cv-1471-MJG |
| CTP INNOVATIONS, LLC v. F.C.L. GRAPHICS, INC. | 15-cv-1550-MJG |

| | | |
|---|---|---|
| | ) | |
| CTP INNOVATIONS, LLC v. | ) | |
| WORZALLA PUBLISHING COMPANY | ) | 15-cv-1646-MJG |
| | ) | |
| CTP INNOVATIONS, LLC v. | ) | |
| SPECIALTY PROMOTIONS, INC. | ) | 15-cv-1692-MJG |
| | ) | |
| CTP INNOVATIONS, LLC v. | ) | 15-cv-1693-MJG |
| ARANDELL CORPORATION | ) | |
| | ) | |
| CTP INNOVATIONS, LLC v. | ) | |
| VALASSIS COMMUNICATIONS, INC. | ) | 15-cv-1807-MJG |
| | ) | |
| CTP INNOVATIONS, LLC v. | ) | |
| SCHUMANN PRINTERS, INC. | ) | 15-cv-1813-MJG |
| | ) | |
| CTP INNOVATIONS, LLC v. | ) | |
| DIRECTMAIL.COM | ) | 15-cv-1975-MJG |
| | ) | |
| CTP INNOVATIONS, LLC v. | ) | |
| MIDLAND INFORMATION RESOURCES | ) | 15-cv-2016-MJG |
| | ) | |
| CTP INNOVATIONS, LLC v. | ) | |
| TIMES PRINTING CO., INC. | ) | 15-cv-2052-MJG |
| | ) | |
| CTP INNOVATIONS, LLC v. | ) | |
| TREND OFFSET PRINTING SERVICES | ) | 15-cv-2389-MJG |
| INC. | ) | |
| | ) | |
| CTP INNOVATIONS, LLC v. | ) | 15-cv-2391-MJG |
| ENNIS, INC. | ) | |
| | ) | |
| CTP INNOVATIONS, LLC v. | ) | 15-cv-2682-MJG |
| VERSA PRESS, INC. | ) | |
| | ) | |
| CTP INNOVATIONS, LLC v. | ) | |
| JOURNAL GRAPHICS INC. | ) | 15-cv-3123-MJG |
| | ) | |
| CTP INNOVATIONS, LLC v. | ) | |
| CENVEO CORPORATION | ) | 15-cv-3124-MJG |
| | ) | |

*        *        *        *        *        *        *        *        *

MEMORANDUM & ORDER RESOLVING MOTIONS

The Court has before it the following motions:

Defendants' Consolidated Motion to Dismiss Under 35 U.S.C. Section 101 [ECF No. 343];

Defendants' Consolidated Rule 12 Motion to Dismiss or, Alternatively, for Judgment on the Pleadings [ECF No. 345];

Defendants' 12(b)(6) Motion to Dismiss Willful Infringement Claims [ECF No. 346][1]; and

Defendants' Joint Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction due to Plaintiff's Lack of Standing [ECF No. 354],

together with the materials submitted relating thereto.

The Court has held a hearing and has had the benefit of the arguments of counsel.

## I. BACKGROUND

Plaintiff, CTP Innovations, LLC ("CTP") is a non-practicing patent assertion entity. In March 2013, CTP obtained a purported assignment of United States Patent Nos. 6,611,349 ("the '349 Patent") and 6,738,155 ("the '155 Patent") (collectively, "the Patents in Suit") from Media Innovations, LLC ("Media"). The Patents in Suit pertain to systems and methods relating to the printing industry.

Thereafter, CTP contacted many printing companies stating that they may have infringed the Patents in Suit and offering a "fully paid-up, one-time license" including "past, present, and

[1] Not all Defendants joined this motion.

future uses of the technology." Compl. Ex. C at 3, ECF No. 1-3 in MJG-14-3894. In the one letter of this type on the record, CTP offered a license for $75,000 if agreement was reached in two weeks and $95,000 if agreement was reached in three weeks. Id.

Not all recipients of CTP's letter accepted the offer. Beginning in 2013, CTP has sued more than 75 printing companies for infringement of the Patents in Suit. In addition, one printing company filed suit against CTP seeking a declaratory judgment of non-infringement, and CTP counterclaimed for infringement. Taylor Publishing Company ("Taylor") v. CTP Innovations, LLC, MJG-14-3894.

While many of these cases settled, by December 12, 2014, nine remained pending. On that date, the United States Judicial Panel on Multidistrict Litigation ("MDL") issued its Transfer Order [ECF No. 1] consolidating the then-pending actions and transferring them for pretrial purposes to this Court. In 2015, more than 20 additional tag-a-long cases were filed and subsequently transferred to this Court under the MDL.

At present, the instant MDL proceeding consists of 26 cases filed in 18 districts. In addition, CTP has stated an intention to file as many as 200 additional tag-a-long cases.[2]

[2] Tr. 33:23-24, Dec. 15, 2015, ECF No. 290 in MJG-14-2581.

## II. SUMMARY

As discussed herein, the Court shall grant Defendants' Joint Rule[3] 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction due to Plaintiff's Lack of Standing [ECF No. 354].

CTP did not, prior to filing any of the pending cases, obtain ownership of a right to sue for infringement of the Patents in Suit. Accordingly, CTP lacked the necessary constitutional standing to sue for patent infringement of the Patents in Suit. "A court may exercise jurisdiction only if a plaintiff has standing to sue on the date it files suit." Abraxis Bioscience, Inc. v. Navinta LLC, 625 F.3d 1359, 1364 (Fed. Cir. 2010). "Standing is a constitutional requirement pursuant to Article III and it is a threshold jurisdictional issue." Id. at 1363.

The Court's holding that it lacks jurisdiction over CTP's infringement claims, moots Defendant's motions other than the Joint Motion seeking dismissal pursuant to Rule 12(b)(1) as well as Taylor's claim for a declaratory judgment of non-infringement.[4]

[3] All "Rule" references herein are to the Federal Rules of Civil Procedure.

[4] If the matter were not moot, the Court would have held the Patents in Suit invalid as not claiming patentable subject matter.

## III. LEGAL STANDARD

The plaintiff bears the burden of proving jurisdiction to survive a Rule 12(b)(1) motion to dismiss. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Generally, whether a court has subject matter jurisdiction over a patent case is determined by the law of the regional circuit[5] because it is a "procedural question[] not unique to patent law." Univ. of Utah v. Max-Planck-Gesellschaft zur Forderung der Wissenschaften E.V., 734 F.3d 1315, 1319 (Fed. Cir. 2013).

However, standing to sue for patent infringement flows from the patent statutes. Israel Bio-Eng'g Project v. Amgen Inc., 475 F.3d 1256, 1264 (Fed. Cir. 2007) (citing 35 U.S.C. § 281, which provides that "[a] patentee shall have remedy by civil action for infringement of his patent."). Therefore, subject matter jurisdiction in the instant case implicates Federal Circuit law on standing. See, e.g., Paradise Creations, Inc. v. UV Sales, Inc., 315 F.3d 1304, 1308 (Fed. Cir. 2003)("Whether a party has standing to sue in federal court is a question of federal law."); Bushnell, Inc. v. Brunton Co., 659 F. Supp. 2d 1150, 1163 n. 15 (D. Kan. 2009)(citing Madey v. Duke Univ., 307 F.3d 1351, 1358 (Fed. Cir. 2002)).

---

[5] The cases in the instant MDL were filed in nine different geographical circuits.

The standing requirement imposes both constitutional and prudential limitations on federal court jurisdiction. Morrow v. Microsoft Corp., 499 F.3d 1332, 1338 (Fed. Cir. 2007). The constitutional component of standing arises from the "case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Constitutional standing is jurisdictional and must be present on the date a suit is filed. WiAV Solutions LLC v. Motorola, Inc., 631 F.3d 1257, 1263–64 (Fed. Cir. 2010). "[T]he touchstone of constitutional standing in a patent infringement suit is whether a party can establish that it has an exclusionary right in a patent that, if violated by another, would cause the party holding the exclusionary right to suffer legal injury." Id. at 1265.

If a plaintiff does not own valid legal title to the patent at the time of filing suit, it does not have standing to bring the lawsuit, and the Court is without subject matter jurisdiction over the case. See Gaia Techs., Inc. v. Reconversion Techs., Inc., 93 F.3d 774, 777 (Fed. Cir. 1996), amended on reh'g in part, 104 F.3d 1296 (Fed. Cir. 1996).

## IV. DISCUSSION

As discussed herein, the Court holds that CTP did not have legal title or the necessary "substantial rights" in either of

the Patents in Suit at the time the lawsuits were filed (between June 14, 2013 and July 13, 2015). From May 24, 2013 to the present, the Patents in Suit have been owned by R.R. Donnelley & Sons Company ("R.R. Donnelley"). The Court rejects CTP's contention that it had received a valid assignment of rights in the Patents before the time of the first lawsuit filing and, therefore, had valid legal title and standing to pursue its infringement claims.

## A. Standing to Sue for Infringement

"Only a patentee may bring an action for patent infringement." Abbott Point of Care Inc. v. Epocal, Inc., 666 F.3d 1299, 1302 (Fed. Cir. 2012). The Patent Act defines the term "patentee" to include "not only the patentee to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. § 100(d). Thus, the right to sue infringers, normally the prerogative of the inventor(s), can be transferred to another who has been given legal title to the patent. See United States v. General Elec. Co., 272 U.S. 476, 489 (1926); Sicom Sys. Ltd. v. Agilent Techs. Inc., 427 F.3d 971, 976 (Fed. Cir. 2005). When a patentee has transferred all substantial rights of the patent, the transferee will be deemed the effective patentee under the statute and will have standing

to bring suit. See Ortho Pharm. Corp. v. Genetics Inst. Inc., 52 F.3d 1026, 1030 (Fed. Cir. 1995). The court determines whether the party alleging ownership has received "all substantial rights." A123 Sys., Inc. v. Hydro–Quebec, 626 F.3d 1213, 1218 (Fed. Cir. 2010).

To determine the legal effect of an agreement to transfer patent rights, a court "must ascertain the intention of the parties and examine the substance of what was granted." Id. (quoting Aspex Eyewear, Inc. v. Miracle Optics, Inc., 434 F.3d 1336, 1340 (Fed. Cir. 2006)).

"[S]tate law, not federal law, typically governs patent ownership." Akazawa v. Link New Tech. Int'l, Inc., 520 F.3d 1354, 1357 (Fed. Cir. 2008); see also Diamond Coating Techs., LLC v. Hyundai Motor Am., 823 F.3d 615, 618 (Fed. Cir. 2016)("We treat an agreement granting patent rights as a contract and interpret its terms consistent with the choice of law provision in the agreement in question."). However, where there is a conflict between federal law and state law, federal law preempts state law. See, e.g., Altria Group, Inc. v. Good, 555 U.S. 70, 76 (2008). For example, federal law preempts state law with respect to the question "whether a patent assignment clause creates an automatic assignment or merely [a future] obligation to assign," as that question "is intimately bound up with the

question of standing in patent cases." DDB Techs., LLC. v. MLB Advanced Media, L.P., 517 F.3d 1284, 1296 (Fed. Cir. 2008). Also, the Federal Circuit has made clear that 35 U.S.C. § 261 "requires that all assignments of patent interest[s] be in writing." Sky Techs. LLC v. SAP AG, 576 F.3d 1374, 1379 (Fed. Cir. 2009).[6]

B. Did CTP Have Standing To Sue?

The pertinent events are shown in the following chronology:

| **Date** | **Event** | **Rights Owner** |
|---|---|---|
| 9/21/1999 | Inventors assign patent rights to Banta Corporation ("Banta") | Banta Corporation |
| In 2007 | R.R. Donnelley acquires Banta (not its assets) | Banta Corporation |
| 2007 - 2013 | Banta operates as a subsidiary of R.R. Donnelley | Banta Corporation |
| 2/12/2013 | R.R. Donnelley (not Banta) executes assignment of rights to Media Innovations, LLC | Banta Corporation |
| 3/5/2013 | Media executes assignment of rights to CTP Innovations, LLC | Banta Corporation |
| 5/24/2013 | Banta executes assignment of rights to R.R. Donnelley nunc pro tunc to 1/3/2013 | R.R. Donnelley & Sons Company |
| 6/14/2013 | CTP files first[7] of suits at issue | R.R. Donnelley & Sons Company |

6 The Court notes that there are also methods to transfer ownership other than by assignment, and such methods may not be subject to the § 261 written requirement. See Sky Techs., 576 F.3d at 1380 (describing a transfer of ownership by operation of law under intestacy).

7 On June 13, 2013, Taylor filed a declaratory judgment complaint against CTP, who, on June 27, 2013, filed a counterclaim for patent infringement.

The essential question presented is whether the May 24, 2013 assignment of rights from Banta Corporation ("Banta") (then the owner of the patent rights) to R.R. Donnelley nunc pro tunc[8] to January 2013, retroactively effected a February 2013 assignment from R.R. Donnelley to Media and a March 2013 assignment from Media to CTP. The Court holds that it did not.

On September 21, 1999, the inventors of the Patents in Suit assigned title and all substantive rights in the patents to Banta. Assignments to Banta, Exs. A, B, ECF Nos. 354-2, 354-3; Assignment Abstracts, Exs. A, B, ECF Nos. 347-1, 347-2. This action gave Banta ownership of the rights to the Patents in Suit.

In January 2007, R.R. Donnelley acquired Banta – but not its assets. Company Bio, Ex. C, ECF No. 354-4. Banta continued to operate as a subsidiary corporation under the umbrella of R.R. Donnelley management. Id.; 2013 Form 10-K Annual Report 162, Ex. D, ECF No. 354-5. R.R. Donnelley did not become an owner of Banta's patents in 2007 when it acquired Banta. "A corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary." Dole Food Co. v. Patrickson, 538 U.S. 468, 475

---

[8] The Latin term "nunc pro tunc" meaning "now for then," refers to the court's inherent power to give retroactive legal effect. Black's Law Dictionary (10th ed. 2014).

(2003). "Common corporate structure does not overcome the requirement that even between a parent and a subsidiary, an appropriate written assignment is necessary to transfer legal title from one to the other." Abraxis, 625 F.3d at 1366.

On February 12, 2013, R.R. Donnelley purported to assign the rights in the Patents in Suit to Media and recorded that transfer with the United States Patent and Trademark Office ("USPTO"). Assignment to Media, Ex. E, ECF No. 354-6. However, R.R. Donnelley did not own the rights it purported to transfer. And "nemo dat quod non habet," i.e., one cannot give what one does not have. See Mitchell v. Hawley, 83 U.S. 544, 550 (1872). Hence, Banta continued to own the rights to the Patents in Suit.

On March 5, 2013, Media purported to assign the rights to the Patents in Suit to CTP and recorded the purported assignment with the USPTO. Assignment to CTP, Ex. F, ECF No. 354-7. However, since Media had not obtained the rights from R.R. Donnelley, it could not transfer the rights to CTP. Thus, Banta continued to own all rights in the Patents in Suit.

On May 24, 2013, Banta executed a written assignment of the Patents in Suit, nunc pro tunc as of January 3, 2013, to R.R. Donnelley, not to CTP. Assignment to R.R. Donnelley, Ex. G, ECF No. 354-8. Certainly, Banta had the ability to, and did, transfer the rights to the Patents in Suit to R.R. Donnelley on

May 24, 2013. R.R. Donnelley then had the ability immediately to transfer those rights to CTP. Had R.R. Donnelley done so, CTP would have owned the rights prior to filing the instant lawsuits. Alternatively, on May 24, 2013, Banta could have transferred the patent rights to Media, and Media immediately could have assigned those rights to CTP and provide CTP standing to file the instant law suits. And, most simply, on May 24, 2013, Banta (then owning the patent rights) could have assigned the rights directly to CTP. However, Banta took none of these courses of action. Rather, Banta sought to retroactively provide CTP with the patent rights by means of a nunc pro tunc assignment of the rights to R.R. Donnelley.

CTP contends that Banta's May 24, 2013 execution of a nunc pro tunc assignment of the rights to the Patents in Suit to R.R. Donnelley was effective to retroactively close the gaps in the chain of title between R.R. Donnelley and Media and between Media and CTP. Certainly, contracting parties may agree to give retroactive effect to their agreements as between themselves. American Cyanamid Co. v. Ring, 286 S.E. 2d 1, 3 (1982). However, a nunc pro tunc agreement cannot be used to rewrite history so as to retroactively provide standing to sue for patent infringement. "[N]unc pro tunc assignments are not sufficient to confer retroactive standing." Enzo APA & Son, Inc.

v. Geapag A.G., 134 F.3d 1090, 1093 (Fed. Cir. 1998). "As a general matter, parties should possess rights before seeking to have them vindicated in court." Id. (quoting Procter & Gamble Co. v. Paragon Trade Brands, Inc., 917 F. Supp. 305, 310 (D. Del. 1995)). See also Gaia Techs., 93 F.3d at 780 (vacating verdict that the asserted patents were infringed because the nunc pro tunc agreement was insufficient to cure the lack of standing existing when the complaint was filed).[9]

In Abraxis, the United States Court of Appeals for the Federal Circuit was presented with a situation somewhat analogous to the instant case. 625 F.3d 1359. On April 26, 2006, corporate affiliates of AstraZeneca owned the rights to the patents at issue. On that date, AstraZeneca entered into an asset purchase agreement whereby it agreed to cause its affiliates to transfer the patent rights to Abraxis. On June 28, 2006, AstraZeneca – not then the owner of the patent rights

[9] In circumstances other than those involving the retroactive creation of standing to sue for patent infringement, nunc pro tunc assignments can be valid. See, e.g., Ethicon, Inc. v. U.S. Surgical Corp., 135 F.3d 1456, 1467 n.8 (Fed. Cir. 1998) (acknowledging that certain "retroactive licenses of patent rights have been enforced" for patents with sole owners); High Point SARL v. T-Mobile USA, Inc., 640 F. App'x 917, 920 (Fed. Cir. 2016)(upholding a sublicense executed after the patent had expired); Canon Inc. v. Tesseron Ltd., 146 F. Supp. 3d 568, 576-77 (S.D.N.Y. 2015) (holding that patent law did not bar retroactive licenses); Gipson v. Mattox, 511 F. Supp. 2d 1182, 1190 (S.D. Ala. 2007) (allowing a plaintiff to cure a technical defect in the assignment post-filing since one of the plaintiffs clearly had standing when suit was filed).

- executed an agreement purportedly assigning the asserted patents to Abraxis.[10] As noted by the Federal Circuit, "[t]here was a break in the chain of title, however, because the asserted patents were still owned by [the affiliates], neither of which had assigned the rights in the asserted patents to [AstraZeneca]." Id. at 1361. Therefore, AstraZeneca "did not have legal title when it executed the June 28, 2006 IP Assignment Agreement and it did not obtain legal title to the patents until March 15, 2007." Id. at 1365.

On March 15, 2007, Abraxis filed suit and, on the same day, the affiliates executed assignments of the patents to AstraZeneca – not to Abraxis. AstraZeneca did not, however, then assign the patents to Abraxis.

On November 12, 2007, some eight months after filing suit, AstraZeneca executed an "Intellectual Property Assignment Agreement," confirming the assignment of all of AstraZeneca's rights in the patents. The Agreement stated that AstraZeneca and Abraxis considered Abraxis "to own all rights, title, and interest to the asserted patents, including the right to sue for patent infringement no later than June 28, 2006." Id. at 1362.

The Abraxis court did not give the March 15, 2007 assignments to AstraZeneca retroactive effect to June 28, 2006.

---

10 AstraZeneca also agreed to execute any further agreements to vest the patent rights in Abraxis.

Moreover, the court stated that "[e]ven if given retroactive effect, the March 15, 2007 assignments do not automatically assign the patents to Abraxis; a subsequent written agreement was necessary. The only subsequent written agreement between [AstraZeneca] and Abraxis is the November 12, 2007 Intellectual Property Assignment Agreement." Id. at 1365.

The Abraxis court found the purportedly retroactive November 12, 2007 assignment from AstraZeneca to be "a clear recognition by Abraxis that [the assignee, AstraZeneca] did not hold legal title and therefore could not have transferred the patents without a properly executed assignment. It was a futile attempt by the parties to correct a critical error by a nunc pro tunc assignment." Id. at 1365-66. By the same rationale, the purportedly retroactive May 24, 2013 assignment from Banta can be viewed as recognizing that the assignee, R.R. Donnelley, did not have legal title to the Patents in Suit when it purportedly assigned those rights to Media.

CTP seeks to avoid the holding in Abraxis by virtue of the fact that the nunc pro tunc assignment in the instant case occurred prior to the filing of the law suit, citing Mas-Hamilton Group v. LaGard, Inc., 156 F.3d 1206 (Fed. Cir. 1998).[11]

---

[11] CTP also seeks to rely upon the district court decision in Sunrise Med. HHG, Inc. v. AirSep Corp., 95 F. Supp. 2d 348, 437 (W.D. Pa. 2000). With all due respect, the Court finds the

In Mas-Hamilton, however, standing was not deficient at the time the lawsuit was filed. Rather, the retroactive assignment in Mas-Hamilton was a supplemental assignment of the right to sue for past infringement to an assignee that – prior to the filing of the suit – had standing to sue for infringement. As stated by the Mas-Hamilton court:

> While it is true that in Enzo, we held that “nunc pro tunc assignments are not sufficient to confer retroactive standing,” that is not the scenario here. In the case at bar, standing was not deficient at the time the suit was filed, nor at the time that the appeal was filed. Hence operation of the supplemental assignment specifying the grant of the right to sue for past infringement is not being used to cure deficient standing.

Id. at 1211 (quoting Enzo, 134 F.3d at 1093)(second emphasis added).

Finally, CTP argues that the assignments from R.R. Donnelley to Media and from Media to CTP were for an “expectant interest” and, thereby, title was transferred automatically upon the ultimate transfer of ownership from Banta to R.R. Donnelley. CTP cites cases involving employees who assign rights to future inventions. See, e.g., FilmTec Corp. v. Allied-Signal Inc., 939 F.2d 1568, 1572 (Fed. Cir. 1991) (“If an assignment of rights in an invention is made prior to the existence of the invention,

---

Sunrise court to have misunderstood the decision in Mas-Hamilton.

this may be viewed as an assignment of an expectant interest.”); Speedplay, Inc. v. Bebop, Inc., 211 F.3d 1245 (Fed. Cir. 2000). However, the language of the assignments at issue is clear present-tense language based on the assignor’s already owning title – not based upon expecting to acquire title in the future. For example, the assignments to Media and CTP both state: “Assignor is the owner of all rights, title and interest in [the Patents],” and “Assignor hereby sells, transfers, assigns and sets over to Assignee all rights, title and interest . . . in and to the Patents. . . .” Assignment to Media, Ex. E, ECF No. 354-6; Assignment to CTP, Ex. F, ECF No. 354-7 (emphasis added).

In sum, the Court holds that CTP did not own the rights to sue for infringement of the Patents in Suit at the time it commenced filing the instant lawsuits.

## V. CONCLUSION

For the foregoing reasons:

1. Defendants’ Joint Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction Due to Plaintiff’s Lack of Standing [ECF No. 354 in 14-md-2581] is GRANTED.

| Individual Case Nos. | ECF No. |
|---|---|
| 14-cv-3894-MJG | 136 |
| 14-cv-3884-MJG | 88 |
| 14-cv-3886-MJG | 129 |
| 14-cv-3887-MJG | 104 |
| 14-cv-3888-MJG | 124 |

| Individual Case Nos. | ECF No. |
|---|---|
| 14-cv-3889-MJG | 122 |
| 14-cv-3890-MJG | 128 |
| 14-cv-3893-MJG | 103 |
| 15-cv-1469-MJG | 64 |
| 15-cv-1470-MJG | 63 |
| 15-cv-1471-MJG | 67 |
| 15-cv-1550-MJG | 67 |
| 15-cv-1646-MJG | 61 |
| 15-cv-1692-MJG | 68 |
| 15-cv-1693-MJG | 58 |
| 15-cv-1807-MJG | 54 |
| 15-cv-1813-MJG | 58 |
| 15-cv-1975-MJG | 50 |
| 15-cv-2016-MJG | 42 |
| 15-cv-2052-MJG | 46 |
| 15-cv-2389-MJG | 67 |
| 15-cv-2391-MJG | 55 |
| 15-cv-2682-MJG | 38 |
| 15-cv-3123-MJG | 38 |
| 15-cv-3124-MJG | 52 |

2. All cases, with the exception of Taylor Publishing Company's Declaratory Judgment action, shall be dismissed for lack of jurisdiction.

   a. In Taylor Publishing Company v. CTP Innovations, LLC, MJG-14-3894, Taylor Publishing Company's claim for declaratory judgment of non-infringement shall be dismissed as moot.

   b. In Taylor Publishing Company v. CTP Innovations, LLC, MJG-14-3894, the counterclaim for patent infringement by CTP Innovations, LLC [ECF No. 6] shall be dismissed for lack of jurisdiction.

3. Judgments shall be issued by separate Order.

4. Defendants' Consolidated Motion to Dismiss Under 35 U.S.C. Section 101 [ECF No. 343] is DENIED AS MOOT.

5. Defendants’ Consolidated Rule 12 Motion to Dismiss or, Alternatively, for Judgment on the Pleadings [ECF No. 345] is DENIED AS MOOT.

6. Defendants’ 12(b)(6) Motion to Dismiss Willful Infringement Claims [ECF No. 346] is DENIED AS MOOT.

SO ORDERED, on Tuesday, November 29, 2016.

/s/

Marvin J. Garbis
United States District Judge